# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

Fahmi Ahmed MOHARAM,     )
    )
      Plaintiff,     )
    )
         v.     )       Case No. 21-cv-2607 (JDB)
    )
FEDERAL BUREAU OF INVESTIGATION;     )
TERRORIST SCREENING CENTER; *et al.*,     )
    )
      Defendants.     )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

I.     STATUTORY AND REGULATORY BACKGROUND ................................................. 2

    A.    The Terrorist Screening Dataset, the No Fly List, and the Selectee List. .............. 4

    B.    TSA's Use of the TSDS and Other Watchlists to Secure Aviation ....................... 5

    C.    Redress Procedures for All Travelers Delayed or Denied Boarding ..................... 6

    D.    Enchanced Redress Procedures for U.S. Persons Who Are Denied
        Boarding. ........................................................................................................... 7

II.    ADMINISTRATIVE AND PROCEDURAL BACKGROUND ...................................... 8

LEGAL STANDARDS ...................................................................................................... 12

DISCUSSION ................................................................................................................... 13

I.     THE COURT LACKS JURISDICTION OVER EACH OF PLAINTIFF'S
      CLAIMS. ...................................................................................................................... 13

    A.    The Court of Appeals has Exclusive Jurisdiction Over Each of Plaintiff's
        Claims. ............................................................................................................. 13

    B.    Plaintiff's Claims Are Not Ripe Because He Has Not Exhausted
        Administrative Remedies by Completing the DHS TRIP Process. ..................... 16

II.    PLAINTIFF ALSO FAILS TO STATE A CLAIM ....................................................... 20

    A.    Count I (Procedural Due Process) Should Be Dismissed. .................................. 20

    B.    Count II (Vagueness) Should Be Dismissed. ..................................................... 25

    C.    Count III (Substantive Due Process) Should Be Dismissed. ............................... 28

    D.    Count IV (APA) Should Be Dismissed. ............................................................. 31

III.   IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS MATTER
      PENDING RESOLUTION OF THE DHS TRIP PROCESS ........................................... 32

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................................................ 16

*Abdelfattah v. U.S. Dep't of Homeland Sec.,*
    787 F.3d 524 (D.C. Cir. 2015) ............................................................................... 18

*Aeronautical Repair Station Ass'n, Inc. v. FAA,*
    494 F.3d 161  (D.C. Cir. 2007) .............................................................................. 32

*Agee v. Baker,*
    753 F. Supp. 373 (D.D.C. 1990) ............................................................................ 18

*Al Haramain Islamic Found. v. Dep't of Treasury,*
    686 F.3d 965 (9th Cir. 2012) ........................................................................... 24, 25

*Alvin v. Suzuki,*
    227 F.3d 107 (2d Cir. 2000) ................................................................................... 18

*Am. Petroleum Inst. v. EPA,*
683 F.3d 382, 387 (D.C. Cir. 2012) ........................................................................ 17

*Americopters, LLC v. FAA,*
    441 F.3d 726 (9th Cir. 2006) ........................................................................... 15, 16

*Amerijet Int'l, Inc. v. DHS,*
    43 F. Supp. 3d 4 (D.D.C. 2014) ............................................................................. 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................ 12

*Atherton v. D.C. Office of Mayor,*
    567 F.3d 672 (D.C. Cir. 2009) ............................................................................... 18

*Bazzi v. Lynch,*
    Case No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016) ..................... 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 12

*Beydoun v. Lynch,*
    Case No. 14-cv-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016) ................. 15

*Beydoun v. Sessions,*
    871 F.3d 459 (6th Cir. 2017) ................................................................. 14

*Blitz v. Napolitano,*
    700 F.3d 733 (4th Cir. 2012) ............................................................... 5, 6

*Califano v. Aznavorian,*
    439 U.S. 170 (1978) ......................................................................... 21, 29

*Carmody v. Bd. of Trustees of the Univ. of Ill.,*
    747 F.3d 470 (7th Cir. 2014) .................................................................. 20

*Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury,*
    559 F.3d 595 (7th Cir. 2009) ................................................................. 21

*Clinton v. Jones,*
    520 U.S. 681 (1997) ............................................................................... 33

*Collins v. City of Harker Heights, Tex.,*
    503 U.S.115 (1992) ................................................................................ 29

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) ............................................................... 21

*Council of & for the Blind of Delaware Cty. Valley, Inc. v. Regan,*
    709 F.2d 1521, 1532 (D.C. Cir. 1983) .................................................. 32

*Cronin v. FAA,*
    73 F.3d 1126 (D.C. Cir. 1996) ............................................................... 16

*D.B. v. Cardall,*
    No. 15-1993, 2016 WL 3387884 (4th Cir. June 20, 2016) ................... 28

*Dearth v. Lynch,*
    791 F.3d 32 (D.C. Cir. 2015) ................................................................. 21

*Doe v. Pompeo,*
    451 F. Supp. 3d 100 (D.D.C. 2020*), denied mot. to amend*, 2020 WL 306443
    (D.D.C. June, 9, 2020) ........................................................................... 18

*Ege v. DHS,*
    784 F.3d 791 (D.C. Cir. 2015) ..................................................... 14, 15.16

*Elhady v. Kable,*
    993 F.3d 208 (4th Cir. 2021) ......................................... 7, 21, 23, 27

*Farhat v. Jopke,*
    370 F.3d 580 (6th Cir. 2004) ................................................................. 20

*Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. Dist. of Columbia,*
    502 F. Supp. 3d 45 (D.D.C. 2020) *appeal filed* No. 21-7059 (D.C. Cir. June 7, 2021) ..... 28, 29

*Garcia v. Vilsack,*
    563 F.3d 519, 522 (D.C. Cir. 2009) ....................................................................... 32

*Gilbert v. Homar,*
    520 U.S. 924 (1997) .......................................................................................... 22

*Gilmore v. Gonzales,*
    435 F.3d 1125 (9th Cir. 2006) .................................................................. 16, 19, 21

*Goldstein v. FDIC,*
    Case No. ELH-11-1604, 2014 WL 69882 (D. Md. Jan. 8, 2014) ............................... 4

*Graham v. Connor,*
    490 U.S. 386 (1989) .......................................................................................... 28

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) .......................................................................................... 25

*Gustave–Schmidt v. Chao,*
    226 F. Supp. 2d 191 (D.D.C. 2002) ...................................................................... 3

*Haig v. Agee,*
    453 U.S. 280 (1981) ...................................................................................... 21, 22

*Hanlester Network v. Shalala,*
    51 F.3d 1390 (9th Cir. 1995) .............................................................................. 26

*Heartwood v. EPA,*
    Case No. 05-cv-535 (RBW), 2006 WL 8449556 (D.D.C. Mar. 22, 2006) .............................. 33

*Hinton v. Corrections Corporation. of America,*
    624 F. Supp. 2d 45 (D.D.C. 2009) ...................................................................... 12

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................ 24

*Hutchins v. District of Columbia,*
    188 F.3d 531 (D.C. Cir. 1999) ............................................................................ 30

*In re Aiken Cnty.,*
    645 F.3d 428 (D.C. Cir. 2011) ............................................................................ 16

*Jerome Stevens Pharms., Inc. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005) .......................................................................... 12

*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) ........................................................................ 19, 24

*Johnson v. Comm'n on Presidential Debates*,
   202 F. Supp. 3d 159 (D.D.C. 2016) *aff'd*, 869 F.3d 976 (D.C. Cir. 2017 ............................. 3,4

*Jordan v. Fisher*,
   823 F.3d 805 (5th Cir. 2016) .......................................................................... 28

*Karake v. DHS*,
   672 F. Supp. 2d 49 (D.D.C. 2009) ...................................................................... 17

*Kashem v. Barr*,
   941 F.3d 358 (9th Cir. 2019) ....................................................................... *passim*

*Khadr v. United States*,
   529 F.3d 1112 (D.C. Cir. 2008) ........................................................................ 12

*Kimberlin v. Quinlan*,
   774 F. Supp. 1 (D.D.C. 1991) *rev'd on other grounds*, 6 F.3d 789 (D.C. Cir. 1993 ............... 28

*Kremer v. Chem. Constr. Corp.*,
   456 U.S. 461 (1982) ................................................................................... 20

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................... 33

*Latif v. Holder*,
   686 F.3d 1122 (9th Cir. 2012) ........................................................................ 14

*Latif v. Lynch*,
   Case No. 3:10-cv-00750 (BR), 2016 WL 1239925 (D. Or. Mar. 28, 2016) ........................... 7, 26

*Ligon v. LaHood*,
   614 F.3d 150 (5th Cir. 2010) ......................................................................... 16

*Matar v. TSA*,
   910 F.3d 538 (D.C. Cir. 2018) ........................................................................ 13

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ................................................................................... 22

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) ................................................................................... 17

*Medina v. Dist. of Columbia*,
   517 F. Supp. 2d 272 ................................................................................... 20

*Miller v. Reed*,
   176 F.3d 1202 (9th Cir. 1999) ............................................................... 21

*Mohamed v. Holder*,
   266 F. Supp. 3d 868 (E.D. Va. 2017) ............................................... 22, 30

*Mokdad v. Lynch*,
   804 F.3d 807 (6th Cir. 2015) ................................................................ 15

*Mora v. City of Gaithersburg*,
   519 F.3d 216 (4th Cir. 2008) ................................................................ 20

*Morrissey v. Brewer*,
   408 U.S. 471 (1971) ............................................................................. 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................... 31

*Mt. Wilson FM Broadcasters, Inc. v. FCC*,
   884 F.2d 1462 (D.C. Cir. 1989) ............................................................ 33

*Muhammad v. Kelly*,
   Case No. 1:07-cv-1022, 2008 WL 4360996 (E.D. Va. 2008) ................. 26

*Nat. Council of Resistance of Iran v. Dep't of State*,
   251 F.3d 192 (D.C. Cir. 2001) .............................................................. 24

*Nat'l Park Hosp. Ass'n v. United States Dep't of Interior*,
   *538 U.S.* 803 (2003) ............................................................................. 16

*Olivares v. TSA*,
   819 F.3d 454 (D.C. Cir. 2016) .............................................................. 13

*Ostergren v. Cuccinelli*,
   615 F.3d 263 (4th Cir. 2010) ................................................................ 16

*Palko v. Connecticut*,
   302 U.S. 319 (1937) ............................................................................. 29

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
   467 U.S. 717 (1984) ............................................................................. 32

*Posters 'N' Things, Ltd. v. United States*,
   511 U.S. 513 (1994) ............................................................................. 25

*Pub. Citizen Health Rsch. Grp. v. FDA*,
   740 F.2d 21, 31 (D.C. Cir. 1984) .......................................................... 17

*Rafeedie v. INS*,
   880 F.2d 506 (D.C. Cir. 1989) ........................................................................................... 18

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
   758 F.3d 296, 317 (D.C. Cir. 2014) .................................................................................. 19

*Range v. Douglas*,
   763 F.3d 573 (6th Cir. 2014) ............................................................................................ 28

*Reno v. Flores*,
   507 U.S. 292 (1993) ........................................................................................................... 29

*Roberts v. Napolitano*,
   798 F. Supp. 2d 7 (D.D.C. 2011) *aff'd,* 463 F. App'x 4 (D.C. Cir. 2012) ............................. 13

*Scherfen v. DHS*,
   Case No. 3:cv-08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) ....................................... 13

*Shearson v. Holder*,
   725 F.3d 588 (6th Cir. 2013) ............................................................................................ 17

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................. 12

*Stern v. Regency Towers, LLC*,
   886 F. Supp. 2d 317 (S.D.N.Y. 2012) ................................................................................ 18

*Tabbaa v. Chertoff*,
   509 F.3d 89 (2d Cir. 2007) ................................................................................................. 3

*Toca Producers v. FERC*,
   411 F.3d 262 (D.C. Cir. 2005) .......................................................................................... 30

*Tooley v. Bush*,
   No. 06–306, 2006 WL 3783142 (D.D.C.2006),  *aff'd in part, reversed in part, on other grounds,* 586 F.3d 1006 (D.C. Cir. 2009) ........................................................................... 13

*Town of Southold v. Town of East Hampton*,
   477 F.3d 38 (2d Cir. 2007) ................................................................................................ 21

*Tri-Cnty. Paving, Inc. v. Ashe Cnty.*,
   281 F.3d 430 (4th Cir. 2002) ............................................................................................ 20

*United States v. Abdi*,
   498 F. Supp.2d 1048 (S.D. Ohio 2007) ............................................................................ 26

*United States v. Arvizu,*
  534 U.S. 266 (2002)......................................................................... 23

*United States v. Sokolow,*
  490 U.S. 1 (1989).............................................................................. 23

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982)......................................................................... 24

*Wayte v. United States,*
  470 U.S. 598 (1985)................................................................... 22, 23

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n,*
  347 F. Supp. 3d 1 (D.D.C. 2018), 788 F. App'x 5 (D.C. Cir. 2019) ...... 17

*Withrow v. Larkin,*
  421 U.S. 35 (1975)........................................................................... 25

*Zinermon v. Burch,*
  494 U.S. 113 (1990)......................................................................... 20

## Statutes

5 U.S.C. § 702 ...................................................................................... 30

5 U.S.C. § 706 ...................................................................................... 31

6 U.S.C. § 111 ........................................................................................ 2

6 U.S.C. § 211 ........................................................................................ 2

10 U.S.C. 2801(c)(4) ............................................................................ 26

18 U.S.C. § 2331(1) .............................................................................. 26

19 U.S.C. § 482 ...................................................................................... 3

19 U.S.C. § 1455 .................................................................................... 3

19 U.S.C. § 1459 .................................................................................... 3

19 U.S.C. § 1461 .................................................................................... 3

19 U.S.C. § 1467 .................................................................................... 3

19 U.S.C. § 1499 ........................................................................................... 3

19 U.S.C. § 1581 ........................................................................................... 3

19 U.S.C. § 1582 ........................................................................................... 3

28 U.S.C. § 533 ............................................................................................. 3

49 U.S.C. § 114 .................................................................................... *passim*

49 U.S.C. § 44,903 ........................................................................................ 3

49 U.S.C. § 46,110 .............................................................................. *passim*

49 U.S.C. § 49110 ....................................................................................... 13

## Regulations

28 C.F.R. § 0.85 ........................................................................................... 3

49 C.F.R. Pt. 1520.5 ..................................................................................... 5

49 C.F.R. Pt. 1560 ........................................................................................ 6

49 C.F.R. Pt. 1560.101 ................................................................................. 6

49 C.F.R. Pt. 1560.105 ................................................................................. 6

49 C.F.R. § 1560.205 .................................................................................... 7

## Other Authorities

Christopher M. Piehota, Statement before the House Homeland Security Committee,
Subcommittee on Transportation Security (Sept. 18, 2014),
http://docs.house.gov/meetings/HM/HM07/20140918/102636/HHRG-113-HM07-Wstate-
PiehotaC-20140918.pdf (last visited Jan. 13, 2022) ....................................................4

## INTRODUCTION

Congress has tasked the Transportation Security Administration ("TSA") with establishing policies and procedures to identify individuals who may be a threat to civil aviation or national security.  TSA relies in part upon the No Fly List—a subset of the consolidated Terrorist Screening Dataset ("TSDS") maintained by the Terrorist Screening Center ("TSC")—to screen passengers attempting to fly on United States commercial aircraft, or any commercial flight to, from, over, or within the United States.[1]  As Congress directed, TSA has in place procedures that allow individuals to seek redress for delayed or denied boarding resulting from TSA's screening program, as well as for complaints regarding other travel-related difficulties, by filing an inquiry with the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP").

When Plaintiff Fahmi Ahmed Moharam ("Plaintiff"), a naturalized U.S. citizen, was denied boarding on a flight to the United States, the U.S. Government facilitated his travel back to the United States by air.  When Plaintiff sought redress, DHS TRIP provided confirmation that he was on the No Fly List, the criteria under which he was placed, and an unclassified, non-privileged statement of the reasons for his placement, to the extent possible, consistent with national security and law enforcement concerns.  In that ongoing administrative proceeding, Plaintiff has asked for additional time to pursue this lawsuit before the agency makes a final determination.  But that request gets the appropriate process backwards:  this Court should not involve itself in the ongoing administrative proceeding, especially because any final decision to maintain No Fly List placement would only be subject to judicial review in the Court of Appeals.

Specifically, this Court lacks jurisdiction over Plaintiff's procedural and substantive challenges to the DHS TRIP process because Plaintiff has failed to exhaust administrative

---

[1] Until very recently, the TSDS was known as the Terrorist Screening Database or the "TSDB," *see* DEX3 (Declaration of Jason Herring) ¶ 5, and the terms are used interchangeably in this memorandum and the accompanying exhibits.

remedies.  Moreover, all claims challenging TSA's decision to deny an individual boarding

constitute petitions to "amend, modify, or set aside" a TSA "order" pursuant to 49 U.S.C.

§ 46110 ("§ 46110"), as to which exclusive jurisdiction rests with an appropriate Court of

Appeals.

  The Complaint also fails to state a claim.  With respect to Plaintiff's procedural due

process claim (Count I), Plaintiff has not identified any constitutionally protected liberty interest,

and the ongoing DHS TRIP redress process is constitutionally adequate.  Plaintiff's vagueness

challenge (Count II) fails because the criteria for placement on the No Fly List are not

unconstitutionally vague.  Plaintiff also fails to allege a plausible substantive due process claim

(Count III) because he has not established the deprivation of a fundamental liberty interest.

Finally, Plaintiff's Administrative Procedure Act ("APA") claim challenging the DHS TRIP

process (Count IV) and his inclusion on the No Fly List is largely coextensive with his

procedural due process claim, and should accordingly be dismissed for the same reasons.

Plaintiff fails to state any additional claim under the APA.

  The Court should therefore dismiss this action for lack of jurisdiction and for failure to

state a claim.  In the alternative, the Court should stay this action pending final adjudication of

Plaintiff's DHS TRIP application.

## **BACKGROUND**

## I.  **STATUTORY AND REGULATORY BACKGROUND**

  Several different components of the federal government work together to secure the

United States and its borders and aviation system from terrorist threats.  The Department of

Homeland Security ("DHS") is charged with "prevent[ing] terrorist attacks within the United

States," 6 U.S.C. § 111(b)(1)(A), and "reduc[ing] the vulnerability of the United States to

terrorism," *id.* § 111(b)(1)(B); *see also id.* § 202(1) (charging DHS with the responsibility of

"[p]reventing the entry of terrorists and the instruments of terrorism into the United States.").

Within DHS, TSA is responsible for securing all modes of transportation, with a focus on preventing terrorist attacks against civil aviation and other methods of transportation. *See* 49 U.S.C. § 114(d). TSA is further responsible for day-to-day federal security screening operations for passenger air transportation, 49 U.S.C. § 114(e)(1), and for developing "policies, strategies, and plans for dealing with threats to transportation security," *id.* § 114(f)(3). TSA may "issue . . . such regulations as are necessary to carry out [its] functions," *id.* § 114(l)(1), as well as "prescribe regulations to protect passengers and property on an aircraft," *id.* § 44903(b).[2]

The FBI investigates and analyzes intelligence relating to both domestic and international terrorist activities, *see* 28 U.S.C. § 533, 28 C.F.R. § 0.85(l). The FBI also administers the TSC, a multi-agency Executive organization established by Presidential Directive in 2003 and tasked with, *inter alia*, "consolidat[ing] the Government's approach to terrorism screening and provid[ing] for the appropriate and lawful use of Terrorist Information in screening processes." Homeland Security Presidential Directive ("HSPD") 6 (Sept. 16, 2003), https://fas.org/irp/offdocs/nspd/hspd-6.html (last visited Jan. 13, 2022); *see also* "Overview of the U.S. Government's Watchlisting Process and Procedures as of January 2018" ("Watchlisting Overview"), DEX1;[3] DEX3 & Ex. A (authenticating Overview document); Christopher M.

---

[2] Also within DHS, U.S. Customs and Border Protection ("CBP") has authority to inspect all those who are entering the United States. CBP exercises authority under numerous statutes to search persons and goods at the nation's border. *See, e.g.*, 19 U.S.C. §§ 482, 1455, 1459, 1461, 1467, 1499, 1581, 1582. These authorities include, but are not limited to, inspections for the purpose of preventing terrorist attacks. *See, e.g.*, 6 U.S.C. § 211(g)(3)(a); *Tabbaa v. Chertoff*, 509 F.3d 89, 97 (2d Cir. 2007) (describing antiterrorism mission of CBP and DHS).

[3] The Watchlisting Overview document, which was released by the U.S. Government in January 2018 following an inter-agency review process, provides an official, authorized description of watchlisting policies and procedures. The Overview is referenced in the Complaint, *see* Compl. ¶¶ 20-23, ECF No. 1, and the Court may properly take judicial notice of this public document, as well as the remainder of Defendants' exhibits, with the exception of the portions of the declarations relevant to jurisdictional arguments only. *See, e.g.*, *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)  (at the motion to dismiss stage, courts may consider "documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice"); *Johnson v. Comm'n on Presidential*

Piehota, Statement before the House Homeland Security Committee, Subcommittee on

Transportation Security (Sept. 18, 2014), at 1-2 ("Piehota Statement").[4]

### A. The Terrorist Screening Dataset, the No Fly List, and the Selectee List

Inclusion in the TSDS results from a multi-step assessment, based on analysis of

available intelligence and investigative information about the individual.  DEX1 at 3.  The FBI

receives, reviews, and forwards to the TSC "nominations" of individuals with a nexus to

domestic terrorism for inclusion in the TSDB.  *Id.*  The National Counterterrorism Center, a

component of the Office of the Director of National Intelligence, does the same for nominations

of individuals with a nexus to international terrorism.  *Id.*  TSC then determines whether those

nominations will be accepted.  *Id.*  In order for a KST nomination to be accepted, it must include

enough identifying information to allow screeners to determine whether the individual they are

screening is a match to a record in the TSDS, and enough information to satisfy a reasonable

suspicion that the individual is a KST.  *Id.*  The "reasonable suspicion" standard for inclusion in

the TSDS as a KST is satisfied only where there exists "articulable intelligence or information

which, based on the totality of the circumstances and, taken together with rational inferences

from those facts, creates a reasonable suspicion that the individual is engaged, has been engaged,

or intends to engage, in conduct constituting[,] in preparation for, in aid or furtherance of, or

related to, terrorism and/or terrorist activities."  *Id*. at 4.

The No Fly List, the Selectee List, and the Expanded Selectee List are subsets of the

TSDS.  Inclusion on the No Fly List or the Selectee List requires satisfaction of additional

criteria distinct from, and over and above, those required for designation as a KST and inclusion

---

*Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) ("[J]udicial notice may be taken of public
records and government documents available from reliable sources."), *aff'd*, 869 F.3d 976 (D.C.
Cir. 2017); *Goldstein v. FDIC*, Civ. A, No. ELH-11-1604, 2014 WL 69882, at *9 (D. Md. Jan. 8,
2014) ("[A] court may take judicial notice of a public document without converting the motion
into one for summary judgment.").

[4] *Available at* http://docs.house.gov/meetings/HM/HM07/20140918/102636/HHRG-113-
HM07-Wstate-PiehotaC-20140918.pdf (last visited Jan. 13, 2022).

in the TSDS generally.  *Id.*  To place an individual on the No Fly List, there must be credible

information showing the individual presents a threat of committing an act of terrorism with

respect to an aircraft, the homeland, U.S. facilities or interests abroad, or is a threat of engaging

in or conducting a violent act of terrorism and is operationally capable of doing so.  *Id.*  For

security reasons, the criteria for inclusion on the Selectee List are not public.  *Id.*  Importantly,

and as set forth below, while TSC maintains the TSDS, TSA is responsible for implementing the

No Fly, Selectee, and Expanded Selectee subsets of this database through its Secure Flight

Program.

The Government generally does not disclose whether an individual is in the TSDS.  Such

status is protected by the law enforcement privilege, and the identities of those on the No Fly,

Selectee, and Expanded Selectee Lists are further protected as Sensitive Security Information

("SSI").  *See* 49 U.S.C. § 114(r); 49 C.F.R. § 1520.5(b)(9)(ii); *Blitz v. Napolitano*, 700 F.3d 733,

737 n.5 (4th Cir. 2012).  However, as described below, No Fly List status is disclosed to U.S.

citizens and lawful permanent residents (collectively, "U.S. persons") who have been denied

boarding a commercial aircraft because of their presence on the No Fly List and thereafter

properly seek redress through DHS TRIP.

### B. TSA's Use of the TSDS and Other Watchlists to Secure Aviation

One of TSA's primary responsibilities is to ensure aviation security, including by

implementing the No Fly, Selectee, and Expanded Selectee Lists. Congress has directed TSA to

"assess threats to transportation," to "develop policies, strategies, and plans for dealing with

threats to transportation security," to "enforce security-related regulations and requirements,"

and to "oversee the implementation, and ensure the adequacy, of security measures at airports."

49 U.S.C. § 114(f)(2), (3), (7), (11).  Congress has further directed TSA to "perform[] . . . the

passenger prescreening function of comparing passenger information to the automatic selectee

and no fly lists and utilize all appropriate records in the consolidated and integrated terrorist

watchlist maintained by the Federal Government in performing that function."  *Id.*

§ 44903(j)(2)(C)(ii).  This mandate requires TSA, "in consultation with other appropriate Federal agencies and air carriers," *id.* § 114(h)(3), "to use information from government agencies to identify [travelers] who may be a threat to civil aviation or national security," *id.* § 114(h)(3)(A), and to "prevent [those] individual[s] from boarding an aircraft, or take other appropriate action with respect to that individual," *id.* § 114(h)(3)(B); *id.* § 114(h)(1).

TSA carries out its responsibilities in part through the "Secure Flight" program.  *See* 49 C.F.R. Pt. 1560.  Under Secure Flight, covered aircraft operators request the full name, gender, date of birth, and other information from passengers, and submit the data to TSA.  *Id.* § 1560.101(a)(1), (b).  TSA uses the information to identify individuals "on Federal government watch lists who seek to travel by air."  *Id*. § 1560.1(b).  An aircraft operator may not issue a boarding pass to an individual "until TSA informs the covered aircraft operator of the results of watch list matching for that passenger," and, if TSA so directs, the aircraft operator "may issue a boarding pass to that individual [but] must identify the individual for enhanced screening, in accordance with procedures approved by TSA."  *Id*. § 1560.105(b)(2).  TSA prohibits individuals on the No Fly List from boarding flights on U.S. carriers as well as flights into, out of, over, or within U.S. airspace, and permits individuals on the Selectee and Expanded Selectee Lists to enter the sterile area of an airport or board an aircraft only after undergoing enhanced security screening.  DEX1 at 2.

### C.  Redress Procedures for All Travelers Delayed or Denied Boarding

Congress directed TSA to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system." 49 U.S.C. § 44903(j)(2)(C)(iii)(I); *see also id.* §§ 44903(j)(2)(G)(i), 44926(a).  Under these authorities, TSA has promulgated regulations governing the DHS TRIP process.  49 C.F.R. §§ 1560.201-1560.207.  Under these regulations,

travelers may initiate this redress process by submitting a redress inquiry form.  *See id*.

§ 1560.205(b); http://www.dhs.gov/trip (last visited January 10, 2022).

If the traveler's name is a match or near match with a name in the TSDS, "TSA, in

coordination with the TSC and other appropriate Federal law enforcement or intelligence

agencies, if necessary, will review all the documentation and information requested from the

individual, correct any erroneous information, and provide the individual with a timely written

response." 49 C.F.R. § 1560.205(d).  For travelers seeking redress, at the end of its review, DHS

TRIP responds with a determination letter, the contents of which vary based on the

circumstances, but which generally advise the traveler of any corrections that may have been

made as a result of DHS TRIP's review.  *See generally Elhady v. Kable*, 993 F.3d 208, 215 (4th

Cir. 2021) (describing redress process for individuals experiencing travel-related difficulties).

**D.  Enhanced Redress Procedures for U.S. Persons Who Are Denied Boarding**

In 2015, TSA adopted revised DHS TRIP procedures applicable to a U.S person who is

denied boarding due to No Fly status and files a redress inquiry.  *See generally Latif v. Lynch*,

3:10-cv-00750 (BR), 2016 WL 1239925, at *5 (D. Or. Mar. 28, 2016) (describing process,

information disclosed, and resulting order issued by TSA Administrator), *aff'd, Kashem v. Barr*,

941 F.3d 358, 366 (9th Cir. 2019); DEX1 at 7-10 (same); DEX2 (Declaration of Stanley

Mungaray), ¶¶ 5-10.  If it is determined that a U.S. person who invokes these procedures and

meets all requirements is appropriately on the No Fly List, DHS TRIP will inform him of such

status and of the opportunity to seek additional information.  DEX1 at 7-10; DEX2 ¶ 5.  If the

individual takes this opportunity, DHS TRIP will provide the individual with the No Fly List

criterion or criteria on which his placement was based and, to the extent possible consistent with

national security and law enforcement interests, a summary of the factual basis for the No Fly

List determination.  DEX1 at 7-10; DEX2 ¶ 6.  The amount and type of information provided

will vary on a case-by-case basis, depending on the facts and circumstances.[5]  DEX1 at 7-10;

DEX2 ¶ 6.  The individual then has an opportunity to submit to DHS TRIP any information that

he considers potentially relevant to his No Fly List status.  DEX1 at 9; DEX2 ¶¶ 6-7.

Where TSC concludes that the individual should remain on the No Fly List, it will

provide a recommendation to the TSA Administrator.  DEX1 at 9; DEX2 ¶¶ 7-8.  The TSA

Administrator reviews the information on the individual's placement, including both TSC's

recommendation and any information the individual submitted, and will either issue a final order

removing the individual from, or maintaining him on, the No Fly List, or remand the matter back

to TSC with a request for additional information or clarification.  DEX1 at 9; DEX2 ¶ 8.  If TSA

issues a final order, the order will state (to the extent possible consistent with national security

and law enforcement interests) the basis for the decision, and will further notify the individual of

the ability to seek judicial review pursuant to 49 U.S.C. § 46110.  DEX1 at 9; DEX 2 ¶¶ 9-10.

Such TSA orders are subject to judicial review exclusively in the Court of Appeals.  49 U.S.C.

§ 46110.

## II.    ADMINISTRATIVE AND PROCEDURAL BACKGROUND

For the purposes of this section, Defendants refer to Plaintiff's allegations without

conceding their accuracy or completeness.  Plaintiff alleges that he was denied boarding on a

flight from Saudi Arabia to the United States in or around October 2017.  *See* Compl. ¶ 50.

According to Plaintiff, State Department employees provided him with guidance regarding

returning to the United States and facilitated his travel back to the United States a few weeks

---

[5] In some circumstances, it may not be possible to provide an unclassified summary given
the national security and law enforcement interests at stake.

later.  *Id*. ¶¶ 56-62.[6]  Plaintiff alleges that he has since been denied boarding on a domestic flight.

*Id*. ¶ 52.

On October 29, 2017, Plaintiff submitted a redress inquiry through DHS TRIP.  Compl.

¶ 61; DEX2, Ex. A.  In accordance with the above-described redress policy, DHS TRIP

conducted a review of any applicable records in consultation with other federal agencies, and by

letter dated February 14, 2018, DHS TRIP informed Plaintiff that he was "on the U.S.

Government's No Fly List because [he was] identified as an individual who 'may be a threat to

civil aviation or national security.' 49 U.S.C. § 114(h)(3)(A)."  DEX2, Ex. B; Compl. Ex. A.

The letter further described the redress procedures available to Mr. Moharam.  *Id*.  By letter

dated March 13, 2018, Plaintiff through counsel requested "an administrative review" of his

status and additional information about his placement on the No Fly List.  DEX2, Ex. C; Compl.

Ex. B.

DHS TRIP subsequently informed TSC, which notified NCTC and any relevant agencies

that Plaintiff requested additional information, and requested creation of an unclassified or

declassified summary.  *See* DEX2 ¶ 15.  The nominating agency or agencies then reviewed the

original derogatory information, any new information (including exculpatory information), and

information supplied by Plaintiff, and made "every effort to compose an unclassified or

declassified summary based on the totality of available information, intending for the summary

to include as much information as possible and be reasonably calculated to permit Plaintiff to

respond, taking into account the national security and law enforcement interests at stake."  *Id*.

¶¶ 15-18.  TSC authorized DHS TRIP to release an unclassified summary to Plaintiff; TSA

conducted further intelligence and legal review of the summary, and further interagency

consultation resulted.  *Id*. ¶¶ 18-20.

---

[6] The U.S. Government has processes available for U.S. persons who experience travel
difficulties in returning home from abroad, including in cases where such difficulties may relate
to the No Fly List.  Plaintiff refers to this process as a "one time waiver".

By letter dated February 20, 2020, DHS TRIP provided Plaintiff with the criteria under which he was placed on the No Fly List, and an unclassified, non-privileged statement of the reasons for his placement, to the extent possible, consistent with national security and law enforcement concerns.  *See* Compl. Ex. C; DEX2, Ex. D.  Specifically, the Government determined that Mr. Moharam is "an individual who represents a threat of engaging in or conducting a violent act of terrorism and [is] operationally capable of doing so."  *Id*.  The letter further described the factual basis and reasoning behind that determination, to the extent possible.  Specifically, the letter stated that the Government has concerns about Mr. Moharam's "activities during frequent and extended travel to Yemen between 2011 and 2017," and noted that the Government's concerns were not assuaged even considering the information provided at Mr. Moharam's interview.  *Id*.  The letter also encouraged Plaintiff to respond and provide relevant information within 60 days, and informed him of the opportunity to seek additional review.  *Id*.  Plaintiff then requested access to classified information; however, in consultation with TSC, DHS TRIP denied that request because it does not disclose classified information and because no further information beyond that included in the unclassified summary could be provided to Plaintiff or his counsel without endangering national security and law enforcement interests.  DEX2 ¶¶ 23-25.

Plaintiff did not provide relevant information within 60 days and instead requested three subsequent extensions for time to respond—thus delaying his response deadline to October 19, 2020, then to April 19, 2021, and finally to October 19, 2021.  DEX2 ¶ 22.  DHS TRIP granted each of Plaintiff's requests for extension, and Plaintiff still had not substantively responded to the unclassified summary when this lawsuit was filed 1 year and 8 months later, on October 6, 2021.  *See* Compl.  Plaintiff's counsel thereafter responded to DHS TRIP by letter dated October 19, 2021.  DEX 2, Ex. E.  Specifically, Plaintiff provided an affidavit that, in addition to providing other information, described generally his travel to Yemen during the identified

timeframe and denied any involvement with terrorism, including denial of specific types of terrorism involvement. *Id*. The letter from counsel, however, also requested a fourth extension of time, such that his deadline to respond to the unclassified summary would be tolled pending resolution of this litigation. *Id*. DHS TRIP denied the request to toll the deadline to respond but granted a short additional extension to the extent he wished to supplement his October response. DEX2 ¶ 27. On January 7, 2022, Plaintiff's counsel responded with additional substantive information, including an updated affidavit from Plaintiff and two additional affidavits (one from his spouse, and one from a purported expert on Yemen). *Id*. Ex. F.

The DHS TRIP redress process remains ongoing. Plaintiff's January 7, 2022 submission, provided to TSA only six business days ago, requires additional review and consideration. *Id*. ¶¶ 28-29. Consistent with that process, the DHS TRIP redress process may result in a final determination of the TSA Administrator maintaining Plaintiff on, or removing Plaintiff from, the No Fly List. *Id*.

The Complaint raises three constitutional claims and one APA claim against multiple federal agency components. Count I alleges that Defendants violated Plaintiff's due process rights by including Plaintiff on the No Fly List without notice and without a constitutionally adequate mechanism to challenge his inclusion. Compl. ¶¶ 75-80. Count II alleges that the criteria for inclusion on the No Fly List are unconstitutionally vague as applied to Plaintiff. *Id*. ¶¶ 81-84. Count III alleges that Plaintiff's inclusion on the No Fly List violates his substantive due process rights because it "infringes on Mr. Moharam's fundamental liberty right to travel." *Id*. ¶¶ 85-89. Count IV alleges a violation of the APA because he was not provided with adequate notice and an opportunity to be heard and because "Defendants have no rational basis to suspect Mr. Moharam of presenting a threat to commercial aviation or national security." *Id*. ¶¶ 90-95. The Complaint seeks, *inter alia*, declaratory and injunctive relief, including removal

from the No Fly List and TSDS, or in the alternative, additional notice and an opportunity to be heard.  *Id.*, Prayer for Relief.

## **LEGAL STANDARDS**

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's subject-matter jurisdiction.  *E.g.*, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  If the plaintiff is unable to do so, the Court must dismiss the action.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  When resolving a motion made under Rule 12(b)(1), a court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  For purposes of a Rule 12(b)(6) motion, the "complaint" also includes matters incorporated therein.  *E.g.*, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' . . . or documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." (citations omitted)).

## **DISCUSSION**

## I.     **THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS.**

Both procedural and substantive challenges to Plaintiff's placement on the No Fly List
must be brought in the Court of Appeals under 49 U.S.C. § 46110.  And Plaintiff's claims are not
ripe until he exhausts administrative remedies.

### A.  **The Court of Appeals has Exclusive Jurisdiction Over Plaintiff's Claims.**

Section 46110 provides for exclusive jurisdiction in the Courts of Appeals to review
orders issued "in whole or in part" by TSA.  49 U.S.C. § 49110(a); *see, e.g., Kashem*, 941 F.3d at
390-91 (finding TSA order on No Fly List placement reviewable in the Court of Appeals); *see
also Olivares v. TSA*, 819 F.3d 454, 462 (D.C. Cir. 2016) (holding that Court of Appeals could
review TSA decision identifying plaintiff as a security risk); *Matar v. TSA*, 910 F.3d 538, 542
(D.C. Cir. 2018) (reviewing DHS TRIP petition and rejecting on other grounds); *Roberts v.
Napolitano*, 798 F. Supp. 2d 7, 10 (D.D.C. 2011) (dismissing challenge to TSA order), *aff'd,* 463
F. App'x 4 (D.C. Cir. 2012); *cf. Scherfen v. DHS*, No. 3:CV-08-1554, 2010 WL 456784, at *10-
13 (M.D. Pa. Feb. 2, 2010) (outcome of DHS TRIP process pertaining to watchlist placement
subject to review in Court of Appeals); *Tooley v. Bush*, No. 06–306, 2006 WL 3783142, at *26
(D.D.C. 2006) (similar), *aff'd in part, reverse in part, on other grounds*, 586 F.3d 1006 (D.C.
Cir. 2009).  This includes any challenge to the TSA order that will resolve Mr. Moharam's
placement or removal from the No Fly List, and any challenge to the adequacy of DHS TRIP.
The interagency redress process administered by TSA is ongoing and will culminate in an order
of TSA, issued pursuant to 49 U.S.C. § 46110.  Moreover, only TSA has the ultimate authority to
deny boarding on aircraft.  Any other agency action identified by Plaintiff is inextricably
intertwined with a TSA order.

At the conclusion of the redress process, TSA will issue a final order maintaining or
removing Mr. Moharam with respect to the No Fly List, and that order is subject to review only

in a Court of Appeals.  In *Ege v. DHS*, briefed and argued prior to the 2015 revision of DHS

TRIP procedures for U.S. persons on the No Fly List, the Court of Appeals for the D.C. Circuit

held that a plaintiff should pursue a challenge to his purported No Fly List status in district court.

784 F.3d 791 (D.C. Cir. 2015).  The D.C. Circuit reasoned that TSC is "the sole entity with both

. . . classified [intelligence] information . . . . and the authority to remove" names from the No

Fly List and TSDB.  *Id*. at 793.  But this holding was premised on the prior version of the

redress procedures, where TSA did not hold the ultimate decisionmaking authority, and followed

the Ninth Circuit's decision in *Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2012).  Under the

current redress procedures, however, those circumstances have changed.  As the Ninth Circuit

acknowledged in a subsequent opinion in the same matter, the result of the revised redress

process is that the "TSA Administrator ultimately issues the final order either removing the

complainant from the No Fly List or maintaining him or her on the list."  *See Kashem,* 941 F.3d

at 366, 391; DEX1 at 9, DEX2 ¶¶ 8-10.  Accordingly, the Ninth Circuit squarely held that

Section "46110 grants the courts of appeals . . . exclusive jurisdiction over the plaintiffs'

substantive due process claims."  *Kashem,* 941 F.3d at 390-91.  Here, Mr. Moharam directly

challenges the substantive placement decision of TSA.  *See* Compl. ¶¶ 77, 83, 87, 91.  Mr.

Moharam has not completed this process, but the redress process remains ongoing and concludes

with the TSA Administrator issuing a final order.  DEX2 ¶ 29.[7]  Thus, there is no question that

TSA orders are at issue here, which per statute and in accordance with the Ninth Circuit's

reasoning in *Kashem,* must be reviewed exclusively in the Courts of Appeals.  Accordingly, any

challenge to his placement on the No Fly List (i.e., at least Count III and part of Count IV)

should be dismissed for lack of subject matter jurisdiction.

Additionally, all challenges to the DHS TRIP procedures, at least for No Fly List redress

for U.S. persons, are properly directed to the Court of Appeals.  Congress specifically assigned

---

[7] Plaintiff submitted new substantive information to DHS TRIP just six business days
before this filing.  DEX2 Ex. F.

this function to TSA.  49 U.S.C. § 44903(j)(2)(C)(iii)(I).  And Plaintiff directly challenges

procedures devised and applied by TSA in the revised redress process, *see, e.g.*, Compl. ¶¶ 78-

79, and seeks "a legal mechanism that affords him adequate notice of the reasons for his

placement . . . and a meaningful opportunity to contest his continued inclusion," *id.*, Request for

Relief.  These procedures are implemented by TSA, pursuant to explicit statutory authority, and

the TSA administrator makes the ultimate decision as well.  *See* DEX1, at 7-10; DEX2 ¶¶ 2-10.

As the Sixth Circuit recognized, "Congress has specifically directed" TSA to establish a redress

process, and "TSA has issued regulations carrying out its responsibilities[.]" *Mokdad v. Lynch*,

804 F.3d 807, 811 (6th Cir. 2015); *see supra* pp. 6-9; DEX2 ¶¶ 2-10.  By extension, the court

explained that, to the extent a plaintiff "challenges the adequacy of the redress process, his

claims amount to a challenge to a TSA order." *See Mokdad*, 804 F.3d at 811; *see also Beydoun v.*

*Lynch*, No. 14-cv-13812, 2016 WL 3753561, at *3-4 (E.D. Mich. July 14, 2016) (dismissing

alleged Selectee's claims for failure to join TSA as a necessary party because the Complaint

essentially challenged DHS TRIP); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240, at *3-5

(E.D. Mich. Aug. 30, 2016) (same); both *aff'd on other grounds sub nom. Beydoun v. Sessions*,

871 F.3d 459 (6th Cir. 2017).  Thus, because Plaintiff challenges the adequacy of DHS TRIP

redress procedures, he challenges an order of TSA, and must bring that challenge directly in an

appropriate Court of Appeals pursuant to § 46110.  Any challenge to the adequacy of the

procedures employed with respect to his purported No Fly List placement (i.e., Counts I and II,

and part of IV) should be dismissed for lack of subject matter jurisdiction.

Finally, *all* claims that are "inescapably intertwined" with orders that fall within § 46110

are subject to the statute's channeling effect, including claims with respect to interlocutory

administrative decisions, such as any challenge with respect to the adequacy of the DHS TRIP

notice letter.  *See Ege*, 784 F.3d at 796 (noting that "courts use the 'inescapably intertwined'

doctrine to review a claim not expressly included in a jurisdictional grant"); *Americopters, LLC*

*v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir.

2006); *see also Ligon v. LaHood*, 614 F.3d 150, 154-57 (5th Cir. 2010) (discussing the

"inescapably intertwined" doctrine, giving the term "order" within the meaning of § 46110

"expansive construction," and collecting cases); *see, e.g., Amerijet Int'l, Inc. v. DHS*, 43 F. Supp.

3d 4, 14 (D.D.C. 2014).[8]  As a result, all claims are subject to § 46110 and should be dismissed.

### B.  Plaintiff's Claims Are Not Ripe Because He Has Not Exhausted Administrative Remedies by Completing the DHS TRIP Process.

Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial

power and from prudential reasons for refusing to exercise jurisdiction." *In re Aiken Cty.*, 645

F.3d 428, 433 (D.C. Cir. 2011).  The ripeness doctrine prevents the court from premature

adjudication and protects "agencies from judicial interference until an administrative decision

has been formalized." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49 (1967).  A case is not ripe

when "problems such as the inadequacy of the record . . . or ambiguity in the record . . . will

make [the] case unfit for adjudication on the merits." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288

(4th Cir. 2010).  Typically, the two primary factors considered by a court in determining ripeness

are "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of

withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S.

803, 808 (2003) (citations omitted); *see also Cronin v. FAA*, 73 F.3d 1126, 1130 (D.C. Cir. 1996)

(finding due process claims not ripe for review).  In particular, when an administrative process is

ongoing and there remains an opportunity for the plaintiff to achieve his desired result through

that process—thereby avoiding the need for judicial review—courts will frequently find a

dispute unripe:

---

[8] In *Ege*, the D.C. Circuit rejected an argument that the "inescapably intertwined"
doctrine could draw in claims against additional parties, such as TSC.  *See* 784 F.3d 791, 796
(D.C. Cir. 2015).   But Plaintiff here, in light of the current redress procedures, could seek full
and complete relief, including additional process and/or removal from the No Fly List, from
TSA.

> Courts decline to review "tentative" agency positions because doing so "severely compromises the interests" the ripeness doctrine protects: "The agency is denied full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding, the integrity of the administrative process is threatened by piecemeal review of the substantive underpinnings of a rule, and judicial economy is disserved because judicial review might prove unnecessary if persons seeking such review are able to convince the agency to alter a tentative position.

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 740 F.2d 21, 31 (D.C. Cir. 1984)).

The exhaustion doctrine, similarly, is premised on "the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *see, e.g., William Loveland Coll. v. Distance Educ. Accreditation Comm'n,* 347 F. Supp. 3d 1, 15 (D.D.C. 2018) (finding due process claim not ripe where plaintiff failed to exhaust administrative remedies), *aff'd,* 788 F. App'x 5 (D.C. Cir. 2019); *Karake v. DHS*, 672 F. Supp. 2d 49, 54 (D.D.C. 2009) (finding due process claim not ripe where administrative proceeding was pending). "[E]ven where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *McCarthy*, 503 U.S. at 145. Exhaustion is particularly appropriate where the underlying issue involves the agency's "discretionary power" or "special expertise." *Id.*

Applying these principles, the Sixth Circuit dismissed the claims of a traveler who failed to exhaust her administrative remedies through DHS TRIP. *See Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013). The Sixth Circuit reasoned that an exhaustion requirement in this context promotes judicial efficiency, encourages administrative accuracy, and creates an administrative record. *See id.* at 594-95. Other courts have similarly required plaintiffs to complete the revised DHS TRIP procedures before conducting judicial review of their TSDS claims. *See Mokdad v. Holder*, No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015); *see also Latif v.*

*Holder*, No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2104); *Fikre v.*

*FBI*, No 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan 14, 2015); *Tarhuni v. Holder*, No. 3:13-cv-

001, Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23, 2014).[9] The same approach

should be followed here with respect to Plaintiff, who has not completed the redress process.

While Defendants acknowledge that the redress has been pending for some time, at the time this

case was filed, Plaintiff still had not responded to the February 2020 notice letter, Plaintiff had

instead requested extensions for responding to that letter that cumulatively totaled twenty

months. *See* DEX2 ¶¶ 22, 26-28.  Plaintiff submitted his first substantive response on October

19, 2021, at which time he sought a fourth extension. *Id.* ¶ 26.  After DHS TRIP provided

additional time for supplementation, Plaintiff submitted a second substantive response very

recently, on January 7, 2022, and DHS TRIP now requires further time to consider that

submission. *Id.* ¶¶ 28-29.

At the conclusion of the DHS TRIP process, the TSA Administrator either remands the

case back to TSC with a request for additional information or clarification or, alternatively,

issues a final order removing the individual from the No Fly List or maintaining him on the List

(and providing a written narrative decision explaining the application of the No Fly List

standards, to the extent possible).  DEX2 ¶ 9.  If Plaintiff is removed from the No Fly List, there

will be no need for judicial review at all because Plaintiff will have obtained his desired relief.  If

Plaintiff is maintained on the No Fly List, that decision of the TSA Administrator would be the

---

[9] In this district, there is some case law suggesting that a plaintiff can challenge an unconstitutional process before it is fully applied to her, at least where there is no doubt as to the outcome and significant hardship may ensue absent a facial review. *See, e.g., Doe v. Pompeo*, 451 F. Supp. 3d 100, 116 (D.D.C. 2020), *denied mot. to amend*, 2020 WL 306443 (D.D.C. June, 9, 2020) (relying on *Rafeedie v. INS*, 880 F.2d 506 (D.C. Cir. 1989)).  Defendants do not concede the outcome in those cases, but in any event, they are readily distinguishable.  Here, TSA has not yet reached a decision as to placement or removal, nor decided what information to rely on.  And Plaintiff faces no hardship from simply going through the administrative process, which could well yield the desired result.

appropriate decision for review—explaining placement based on the full record before the agency.  None of the issues presented by Plaintiff should be resolved by a Court before that administrative process has completed.  And there is no material hardship to the parties in waiting to consider the agency action until after the process has played out, particularly given Plaintiff's own requested extensions during that process.  At the conclusion of the administrative process, Plaintiff's claims would be ripe for presentation to the appropriate Court of Appeals.[10]

Even if the Court does not require exhaustion on all claims, at a minimum Count I (Plaintiff's procedural due process claim) should be dismissed for the closely related reason that Plaintiff has failed to avail himself fully of the procedures available.  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014) ("[T]wo sister circuits [have] declared that there can be no claim of a due process violation if a plaintiff voluntary foregoes the due process procedures provided him.").  In general, "in order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him." *Alvin v. Suzuki*, 227 F.3d 107, 116 (2d Cir. 2000); *see, e.g., Agee v. Baker*, 753 F. Supp. 373, 387

---

[10] Review of the administrative record would likely include *ex parte*, *in camera* review of the classified and law enforcement sensitive information.  Ample precedent supports *ex parte, in camera* review in national security cases involving an administrative record containing sensitive law enforcement or classified material. In similar cases arising under 49 U.S.C. § 46110, the Courts of Appeals have relied on information presented *ex parte* and *in camera* in order to adjudicate the merits of plaintiffs' challenges.  For example, in *Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004), the D.C. Circuit reviewed a challenge to the revocation of airmen's certificates pursuant to a determination that the individuals posed a security risk, and its review included "*ex parte in camera* review of the classified intelligence reports." *Id.* at 1181; *see also id.* at 1182 ("The court has inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function.").  And in *Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006), the Ninth Circuit reviewed SSI materials *in camera* in order to conclude that the district court lacked jurisdiction over certain challenges that should have been filed in the Court of Appeals. *See id.* at 1133; *cf. Kashem*, 941 F.3d at 389-90 (holding, in the context of a challenge to the No Fly List procedures, that plaintiffs in the civil context do not require access to classified information in order to litigate their claims).

(D.D.C. 1990).[11]  Thus, "[t]he availability of [government] procedures is fatal" to a procedural due process claim where plaintiffs have not exhausted the relevant procedures.  *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008).  Here, Plaintiff has not availed himself of the procedures he is challenging, making dismissal of the procedural claims proper.

## II.      PLAINTIFF ALSO FAILS TO STATE A CLAIM.

If the Court determines that it has subject matter jurisdiction, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for relief.

### A.  Count I (Procedural Due Process) Should Be Dismissed.

Plaintiff's procedural due process claim, Count I, should be dismissed because Plaintiff has not alleged the deprivation of a cognizable liberty interest at all, and in any event, is being afforded all the process that is due.  "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections."  *Abdelfattah v. DHS*, 787 F.3d 524, 538 (D.C. Cir. 2015) (quoting *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)).

1.  <u>Plaintiff Has Not Been Deprived of a Liberty Interest</u>.

As an initial matter, Plaintiff has not alleged a deprivation of the right to travel simply because he has been unable to board flights.  The Second, Fifth, and Ninth Circuits have recognized that a traveler does not have a constitutional right to the most convenient form of

---

[11] *See also, e.g.*, *Carmody v. Bd. of Trustees of the Univ. of Ill.*, 747 F.3d 470, 479 (7th Cir. 2014); *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("The fact that Mr. Kremer failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy."); *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 324 (S.D.N.Y. 2012); *Medina v. Dist. of Columbia*, 517 F. Supp. 2d 272, 281-82 n. 7 (D.D.C. 2007). In analyzing what process is available, a court "must consult the entire panoply of predeprivation and postdeprivation process provided by the [government]." *Tri-Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002) (internal quotations and citations omitted); *cf. Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (finding that a procedural due process violation "is not complete unless and until the [government] fails to provide due process").

travel, such as traveling by airplane as opposed to car. *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (holding that there is no constitutional right to the most convenient form of travel); *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) (holding that there is no "right to travel by airplane"); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (holding there is no "right to drive" and that "burdens on a single mode of transportation do not implicate the right to interstate travel"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (holding that "travelers do not have a constitutional right to the most convenient form of travel"); *cf. Elhady v. Kable*, 993 F.3d 208, 222 (4th Cir. 2021) ("Many courts have held that individuals do not have a protected liberty interest to travel via a particular mode of transportation.").

As to international travel, the ability to travel by plane is only a limited aspect of an individual's liberty interest in international travel, which is itself a lesser right than interstate travel. The Supreme Court has held that "the freedom to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981). The freedom to travel internationally is "no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment," and is "subordinate to national security . . . considerations." *Id.* at 306-07; *Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978) (Government action that infringes the right to travel abroad will be upheld unless it is "wholly irrational."); *see also Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 604 (7th Cir. 2009) ("The Supreme Court affords great deference to restrictions on international travel so long as they are justified by a rational foreign policy consideration."); *Dearth v. Lynch*, 791 F.3d 32, 38 n.1 (D.C. Cir. 2015) (claimed violation of right to international travel "trigger[s] nothing more than rational-basis scrutiny").

Here, regardless of his No Fly List-status, Plaintiff retains the ability to travel internationally using less convenient means than a direct flight from the United States. And, the Government facilitated his travel back to the United States after he was first denied boarding,

Compl. ¶ 62.  Plaintiff does not otherwise allege that he lacks the ability to travel domestically or internationally by means other than air travel.  Accordingly, whether Plaintiff frames his injury as a deprivation of the right to interstate travel or as a deprivation of the liberty interest in international travel, Plaintiff has not identified the deprivation of a liberty interest sufficient to support his "right to travel" claim.

      2.  <u>DHS TRIP Provides Constitutionally Adequate Process.</u>

In any event, even assuming that Plaintiff has alleged the deprivation of a protected liberty interest, the DHS TRIP process provides constitutionally adequate process.  "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (citation omitted). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1971)).

In evaluating the adequacy of procedures, the Court should consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest," including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.  *Homar*, 520 U.S. at 931-32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, assuming *arguendo* that Plaintiff has identified a constitutionally protected interest in travel specifically by air, the private interest in that right is limited, given the availability of other modes of travel.  In contrast, "[t]here is obviously a compelling government interest in preventing terrorist attacks against commercial aviation."  *Mohamed v. Holder*, 266 F. Supp. 3d 868, 880 (E.D. Va. 2017); *see also Haig*, 453 U.S. at 307 ("[N]o governmental interest is more compelling than the security of the Nation."); *see also Wayte v. United States*, 470 U.S. 598, 612

(1985) ("Unless a society has the capability and will to defend itself from the aggressions of others, constitutional protections of any sort have little meaning."); *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021) ("[T]he Government's interest in combating terrorism is an urgent objective of the highest order." (citation omitted)).

Through the DHS TRIP procedures, U.S. citizens and lawful permanent residents who are denied boarding and meet certain requirements (like Mr. Moharam) are provided redress procedures that include written notice of their status on the No Fly List (if indeed they are on the No Fly List), notice of the specific criteria under which they were placed on the No Fly List, and an unclassified summary of the reasons for inclusion, with the amount and type of information varying on a case-by-case basis depending on the facts and circumstances and the national security and law enforcement interests at stake. *See supra* pp. 7-9. And an individual can be placed or maintained on the No Fly List only if they meet both the reasonable suspicion standard for general inclusion in the TSDS, as well as one of the four separate No Fly List criteria, which require presently known, articulable evidence, and not a mere guess or hunch. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (reasonable suspicion cannot be based on "an inchoate and unparticularized suspicion or 'hunch'"); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (reasonable suspicion requires a "particularized and objective basis" including rational inferences drawn from specialized training). After receiving notice of his or her No Fly List status, including an unclassified summary if appropriate, an affected person may submit any information, materials or exhibits he or she believes are relevant, including exculpatory information, and may seek further administrative review. At the conclusion of the administrative process, the individual will be notified of the TSA Administrator's final decision. DEX1 at 7-10; DEX2 ¶¶ 5-10. If the individual remains on the No Fly List, he or she may seek judicial review of that decision. Judicial review likely will include examination of the record, and review of the Government's *ex parte*, *in camera* explanation of why the person was placed on the No Fly List.

These specific procedures, as revised in 2015, were upheld by the Ninth Circuit as applied to U.S. persons on the No Fly List.  *See Kashem*, 941 F.3d at 380.  The court held, *inter alia*, that reasonable suspicion was a constitutionally adequate standard, that the process provided adequate disclosure of the underlying information despite withholding classified evidence, and that a live hearing was not required.  *Id.* at 380-90.

The complaint here suggests that Mr. Moharam is dissatisfied with elements of the DHS TRIP process, including the level of detail provided about the reasons for his inclusion on the No Fly List, Compl. ¶¶ 69, 70, lack of a live hearing, Compl. ¶ 73, that his counsel has been unable to view classified material, Compl. ¶ 71, and that the decisionmaker will not be "impartial," Compl. ¶ 72.  Several of these arguments have already been considered and rejected by the Ninth Circuit as a matter of law.  *See Kashem*, 941 F.3d at 379-80 (rejecting plaintiffs' arguments that procedural due process required a live hearing, disclosure of evidence, or access by plaintiffs' lawyers with security clearances to classified information for the No Fly List redress procedures).  Other cases in the national security context further support the adequacy of the DHS TRIP procedures.  For example, several have upheld procedures lacking a live hearing. *See, e.g.*, *Nat. Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001) (live hearing not required for designation as foreign terrorist organization and plaintiff may respond "in written form"); *Holy Land Found. For Relief and Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (same, for specially designated global terrorist); *Jifry v. FAA*, 370 F.3d 1174, 1184 (D.C. Cir. 2004 (same, for revocation of airman certificate due to security threat). And, several have upheld procedures where all reasons are not disclosed to petitioners and where classified material is not disclosed to petitioners.  *See, e.g.*, *Holy Land Found.*, 333 F.3d at 164 (considering an entity's designation as a "specially designated global terrorist" and holding that due process "required the disclosure of only the unclassified portions of the administrative record" (quotation omitted)); *Al Haramain Islamic Found. v. Dep't of Treasury*, 686 F.3d 965,

970, 982 (9th Cir. 2012) (finding that an individual could be designated as a "specially designated global terrorist," leading to a block on property and interests in property, and that "the government may use classified information, without disclosure, when making designation determinations").  Plaintiff's suggestion that the DHS TRIP procedures deny him an impartial decisionmaker, Compl. ¶ 72, is somewhat opaque.  At the close of the DHS TRIP process, the TSA Administrator will determine whether to maintain Plaintiff on or remove Plaintiff from the No Fly List.  It is unclear why Plaintiff objects to the impartiality of the TSA Administrator, or how Plaintiff intends to carry his burden to "overcome a presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  And even setting aside the role of the TSA Administrator, an individual can seek judicial review in an Article III court as the final step in the DHS TRIP process.  Because Plaintiff will receive constitutionally adequate process, his procedural due process claims should be dismissed.[12]

### B.  Count II (Vagueness) Should Be Dismissed.

Plaintiff's vagueness claim should be dismissed because the No Fly List criteria are sufficiently clear as to the standard for inclusion on the No Fly List.

A law is unconstitutionally vague if it does not provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The law need not attain "mathematical certainty," *id.* at 110, but need only provide "relatively clear guidelines," *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994).  For "enactments with civil rather than criminal penalties," like the No Fly List, courts "express[] greater tolerance" with vagueness because "the consequences of imprecision are qualitatively less severe."  *Vill. of Hoffman Estates v. Flipside, Hoffman*

---

[12] Given that Mr. Moharam has not yet received full process because he filed this suit before completing the DHS TRIP procedures, the more appropriate course would be to stay this case pending completion of that process.  *See infra* Part III.  Notably, Mr. Moharam does not argue that he was entitled to predeprivation notice before he was denied boarding.  The post-deprivation process is ongoing, and thus he has not been deprived of due process.  *See supra* Part I.B.

*Estates, Inc.*, 455 U.S. 489, 498-99 (1982); *see Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995).

The No Fly List criteria refer to individuals posing a threat of committing an act of domestic or international terrorism (as defined by federal statute).  Specifically, a person may only be included in the No Fly List if the person poses:

> (1) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of piracy, or a threat to airline, passenger, or civil aviation security);
>
> (2) a threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland;
>
> (3) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or,
>
> (4) a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

DEX1 at 4.  Again, both a district court and the Ninth Circuit upheld these precise criteria as not unconstitutionally vague because "the violent acts of terrorism that underpin the criteria are well-defined and readily understandable by individuals of 'common intelligence.'"  *Latif v. Lynch*, No. 3:10-CV-00750-BR, 2016 WL 1239925, at *12 (D. Or. Mar. 28, 2016), *aff'd Kashem*, 941 F.3d at 368.  This conclusion is further buttressed by the multiple courts that have rejected the argument that statutes similarly defining or penalizing terrorist acts are unconstitutionally vague. *See Muhammad v. Kelly*, No. 1:07-cv-1022, 2008 WL 4360996 at *12 (E.D. Va. 2008) (unpublished); *United States v. Abdi*, 498 F. Supp.2d 1048, 1066 (S.D. Ohio 2007).

With respect to the vagueness claim, Plaintiff asserts that "[t]he only justification given to Mr. Moharam for his placement on the No Fly List is unspecified government concerns regarding his travels to Yemen from 2011 to2017 [sic]. It is thus impossible to ascertain what conduct Mr. Moharam has engaged in that the government considers relevant to the No Fly List

criteria."  Compl. ¶ 84.  Yet the information provided to Mr. Moharam is constitutionally

sufficient, and it has clearly not been "impossible" for him to understand the Government's

concerns or respond.  DHS TRIP informed Mr. Moharam on February 14, 2018 that he was "on

the U.S. Government's No Fly List because [he was] identified as an individual who 'may be a

threat to civil aviation or national security.' 49 U.S.C. § 114(h)(3)(A)."  DEX2, Ex. B; Compl.

Ex. A.  By further letter of February 20, 2020, DHS TRIP informed Plaintiff that he had been

determined to be "an individual who represents a threat of engaging in or conducting a violent

act of terrorism and . . . [was] operationally capable of doing so" in particular.  DEX2, Ex. D.

That same letter informed Mr. Moharam that the cause of the Government's concern included his

activities during his frequent and extended travel to Yemen between 2011 and 2017, and that

those concerns had not been addressed by the information he provided in an interview in 2017 in

Jeddah.  *Id*.  Mr. Moharam has therefore been informed of the No Fly List criteria used for his

placement, as well as of the disclosable portions of the underlying information on which the

Government relied.  Mr. Moharam has twice submitted substantive responses containing

additional information about his travel to Yemen and his experiences at a school in Yemen,

DEX2, Exs. E & F, demonstrating that he comprehends the general topic of the Government's

concerns.  And to the extent he is effectively demanding that he be given more specific

information about the reasons for his placement on the No Fly List, that demand has nothing to

do with whether the No Fly List criteria themselves are unconstitutionally vague.  And in any

event, the demand is self-defeating: the Due Process Clause does not require that suspected

terrorists be given the precise details of how the Government has come to suspect that they are

terrorists.  *See, e.g.*, *Elhady*, 993 F.3d at 215 (noting that "the government will not publicly

disclose how an individual came to be included" in the TSDS because "[d]oing so could alert

terrorists to the tactics used by the government to detect them"); *Kashem*, 941 F.3d at 382

("Where national security concerns arise . . . an exact statement of reasons may not always be

possible.").  If anything, Plaintiff's fact-specific complaints about the quality of the process he has received thus far, and his ability to respond to the Government's submissions during that process, only underscore why judicial review here is premature and should instead await the outcome of the ongoing administrative process, as discussed above.

### C.  Count III (Substantive Due Process) Should Be Dismissed.

Plaintiff also brings a substantive due process claim that mirrors Plaintiff's procedural due process claim in arguing that the government has wrongfully impinged on a liberty interest by placing him on the No Fly List.  Compl. ¶¶ 85-89.  As an initial matter, where substantive due process claims are coextensive with other constitutional claims, the appropriate legal framework is provided by the more specific constitutional provision.  *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *Kimberlin v. Quinlan*, 774 F. Supp. 1, 8 (D.D.C. 1991) (plaintiff's substantive due process claim depends upon and is coextensive with his First Amendment claim) *rev'd on other grounds*, 6 F.3d 789 (D.C. Cir. 1993).  Accordingly, procedural due process presents a more defined framework for analyzing and balancing the private interest in travel by air against the government's interest in national security, and the Court should dismiss this claim for the reasons previously set forth.  *See* Part II.A, *supra*.

A further problem is present because the set of liberty interests protected by substantive due process is much narrower than that protected by procedural due process.  *See, e.g.*, *Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. District of Columbia*, 502 F. Supp. 3d 45, 60-61 (D.D.C. 2020), *appeal filed* No. 21-7059 (D.C. Cir. June 7, 2021); *see also, e.g.*, *D.B. v. Cardall*, No. 15-1993, 2016 WL 3387884, at *13 (4th Cir. June 20, 2016); *Jordan v. Fisher*, 823 F.3d 805, 812-13 (5th Cir. 2016); *Range v. Douglas*, 763 F.3d 573, 588 n.6 (6th Cir. 2014).

First, a substantive due process claim requires the plaintiff identify a protected right that is "fundamental." *See Fraternal Ord. of Police*, 502 F. Supp. 3d at 60-61 ("Substantive due process protects a narrow class of interests: those 'implicit in the concept of ordered liberty,' *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), and 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Reno v. Flores*, 507 U.S. 292, 303 (1993)[.]"). Second, "[e]ven if a plaintiff pleads that a government action affects a protected interest," substantive due process guards against "only the most egregious official conduct" that "shock[s] the contemporary conscience." *Id*. (citations omitted). "Given this narrow scope of the doctrine, courts are generally 'reluctant to expand the concept of substantive due process,' as there are few clear 'guideposts for responsible decisionmaking.'" *Id*. (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

Here, Plaintiff's substantive due process claim should be dismissed because Plaintiff has not been deprived of a fundamental right. Plaintiff alleges that he has been denied "his freedom to travel to, from, and within the United States, as well as over U.S. air space." Compl. ¶ 86. Plaintiff has not, of course, been restricted in his ability to travel—whether within the United States or internationally—by means other than air travel. As discussed above, the ability to travel by airplane is not a protected liberty interest for the purpose of a procedural due process claim, *see supra* Part II.A.1, much less falling within the narrower category of interests protected by substantive due process. As described in relation to procedural due process, the freedom to travel *outside* the United States is "no more than an aspect of the 'liberty' protected by the Due Process Clause," and "subordinate to national security . . . considerations," *id*. at 306-07; and indeed may be wholly denied, *id*. *See also Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978) (Government action that infringes the right to travel abroad will be upheld unless it is "wholly irrational").

With respect to the freedom to travel interstate, while under appropriate circumstances the freedom to travel interstate may be fundamental, the origins of this right "reflect a concern over state discrimination against outsiders rather than concerns over the general ability to move about." *Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (*en banc*).  And Mr. Moharam has not been deprived of the right to travel interstate or to migrate between states—at most, his ability to do so by one particular mode of travel (air travel) has been restricted.  But he may still travel from one state to another by any means available, including car, train, boat, or otherwise, and Mr. Moharam has alleged no inability or unwillingness to do so.  Moreover, as numerous courts have found, there is no right to travel by the most convenient means of transportation. *See supra* Part II.A.1.  Indeed, this intuition is supported by the numerous extant restrictions that might affect a person's ability to travel interstate by any particular means, like airport security screening, state driver's license requirements, emissions testing standards, or subway or bus fares, which are not generally subject to heightened scrutiny.

But even if the Court identified a fundamental right at stake, Mr. Moharam's placement on the No Fly List would still pass scrutiny because the Government's actions have not been egregious, let alone so egregious as to shock the conscience. *See Mohamed v. Holder*, 266 F. Supp. 3d 868, 883 (E.D. Va. 2017) (finding that the No Fly List is "necessary and sufficiently narrowly tailored to achieve a compelling government interest and therefore does not violate Plaintiff's substantive due process rights").[13]  The government's operation of the No Fly List, as well as its criteria for placing individuals on the No Fly List, bears a close relationship to the aim of preventing terrorism.  As Mr. Moharam is aware, his inclusion on the No Fly List resulted from the Government's assessment that he was "an individual who represents a threat of

---

[13] Although it ultimately rejected the substantive due process claim, the *Mohamed* Court held that being on the No Fly List "significantly interferes with the fundamental right to travel." 266 F. Supp. 3d at 879. The Government respectfully disagrees with that decision for the reasons outlined above.

engaging in or conducting a violent act of terrorism and [was] operationally capable of doing so" based on, among other things, information about his extended and frequent travel to Yemen between 2011 and 2017.  DEX2, Ex. D.  Mr. Moharam has been informed of these reasons and given a chance to substantively respond, which he has done, and which the Government will appropriately consider in determining whether to maintain him on the No Fly List.  Particularly given the Government's ongoing consideration of the factual information Mr. Moharam has submitted, he cannot plausibly establish that the Government's actions shock the conscience.  *Cf.* 49 U.S.C. § 114(h)(3) (directing TSA "to identify individuals . . . who *may* be a threat to civil aviation or national security," and to take appropriate action including "prevent[ing] the individual from boarding an aircraft" (emphasis added)); *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 n.10 (D.C. Cir. 2007) (noting "the public's manifest interest in aviation safety").  Accordingly, Plaintiff's substantive due process claim should be dismissed.

**D.  Count IV (APA) Should Be Dismissed.**

Plaintiff's APA claim challenging the Plaintiff's inclusion on the No Fly List and the DHS TRIP process is largely coextensive with Plaintiff's procedural due process claim.  Plaintiff alleges that "Defendants' actions . . . in including Mr. Moharam on the TSDB and No Fly List are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity and should be set aside as unlawful pursuant to 5 U.S.C. § 706," Compl. ¶ 95, and that Defendants have "fail[ed] to provide him with a constitutionally adequate mechanism to challenge his placement [on the No Fly List]," Compl. ¶ 91.  Accordingly, this claim largely fails for the same reasons as Plaintiff's procedural due process claim, and Plaintiff cannot separately demonstrate that the DHS TRIP process is arbitrary or capricious in violation of the APA.  *See* 5 U.S.C. § 706(2)(A).  If the Court were to consider the due process issue as a separate APA claim, the scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  As long as the

agency action being challenged—here the adequacy of the redress process—has a rational basis, it must be affirmed.  *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). As set forth above, the redress process for the No Fly List is plainly reasonable.

Furthermore, the portion of Count IV that purports to challenge Mr. Moharam's inclusion on the No Fly List itself as an arbitrary and capricious agency action necessarily fails because, as explained above, Plaintiff has failed to exhaust the remedial DHS TRIP procedures that are available to him, as well as because the agency's actions have not been arbitrary or capricious. Moreover, because § 46110 divests this Court of jurisdiction to hear any challenge to the No Fly List determinations at issue here, *see supra* Part 1.A, Plaintiff's APA challenge to his placement on the No Fly List is subject to dismissal.  *See* 5 U.S.C. § 702 (forbidding courts "to grant relief" under the provisions of the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought"); *id.* § 704 (permitting review of final agency action "for which there is no other adequate remedy in a court").  Indeed, even if the Court concludes that Plaintiff may choose to forego judicial review in the Court of Appeals pursuant to § 46110, such judicial review is undoubtedly *available* to Plaintiff at the conclusion of the administrative proceedings with respect to his underlying placement on the No Fly List.  The availability of this alternate redress scheme under § 46110 is therefore sufficient to preclude APA review under § 704, even if it is not Plaintiff's preferred means for challenging his placement.  *See, e.g.*, *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]his court has held that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"); *Council of & for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) ("Even if we agreed that one nationwide suit would be *more effective* than several [individual] suits, that does not mean that the remedy provided by Congress is *inadequate*.").

### III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS MATTER PENDING RESOLUTION OF THE DHS TRIP PROCESS.

Defendants believe that dismissal is appropriate for all the reasons previously stated, but in the alternative, the Court should stay this action pending resolution of the DHS TRIP process. A district court has "broad discretion" in determining whether to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The court must, in an "exercise of judgment," "weigh competing interests and maintain an even balance." *Id*. at 254-55.  Courts often do so in order to permit completion of an ongoing administrative proceeding that could resolve or clarify the issues for judicial review, or otherwise facilitate judicial economy.  The "prudent course for the Court to take with this matter in its current posture is to stay its 'hand until the conclusion of the ongoing administrative proceeding[, which] could . . . avoid a 'piecemeal, duplicative, tactical, and unnecessary appeal which is costly to the parties and consumes limited judicial resources.'" *Heartwood v. EPA*, No. 05CV535 (RBW), 2006 WL 8449556, at *1 (D.D.C. Mar. 22, 2006) (citing *Toca Producers v. FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005)); *Mt. Wilson FM Broadcasters, Inc. v. FCC*, 884 F.2d 1462, 1467 (D.C. Cir. 1989).

Dismissing, or, in the alternative, staying this case will permit completion of the administrative process, and could result in Plaintiff's removal from the No Fly List.  DEX2 ¶¶ 5-10.  Even if Plaintiff is ultimately retained on the No Fly List, the process will result in a final written decision explaining the application of the procedures and standards to Plaintiff, which will facilitate appropriate judicial review in the Court of Appeals. *Id*. ¶ 9.  For the reasons stated above, the Court should dismiss Plaintiff's claims, or in the alternative, stay the case and order Defendants to file a status report on the status of the administrative proceeding in 60 days.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this action, with prejudice.

Dated:  January 18, 2022

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 2760
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov