**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FAHMI AHMED MOHARAM,

      *Plaintiff*,

    v.

FEDERAL BUREAU OF
INVESTIGATION, *et al*.,

           *Defendants*.

Civil Action No. 21-cv-2607-JDB

<u>**PLAINTIFF FAHMI AHMED MOHARAM'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 3

THE ALLEGATIONS IN THE COMPLAINT ................................................................... 4

ARGUMENT ....................................................................................................................... 6

I.   THIS COURT HAS JURISDICTION OVER MR. MOHARAM'S CLAIMS. ................ 6

A.   Mr. Moharam is Not Required to Seek Review in the Court of Appeals
Because There Has Been No Final, Independent Decision by the TSA
Regarding His Placement on the No Fly List. ......................................................... 6

B.   The Court Should Deny Defendants' Motion to Dismiss Based on Mr.
Moharam's Supposed Failure to "Complete" the DHS TRIP Process. ................. 11

1.   There Is No Statutory or Regulatory Requirement That Mr. Moharam
Complete the DHS Trip Process Before Initiating Suit, and the Court
Should Not Impose One. ........................................................................... 11

2.   DHS TRIP Procedures are Unavailable to Mr. Moharam and Are
Inadequate. ............................................................................................... 16

C.   For The Same Reasons, There is No Basis to Stay This Action ............................ 17

II.   MR. MOHARAM SUFFICIENTLY ALLEGED VIOLATIONS OF HIS DUE
PROCESS RIGHTS. ...................................................................................................... 18

A.   Mr. Moharam Sufficiently Pleaded a Procedural Due Process Claim. ................. 18

1.   Indefinitely Barring a U.S. Citizen, like Mr. Moharam, From Air
Travel Infringes on His Liberty Interests. ............................................... 20

2.   The General DHS TRIP Process Cannot Shield Defendants From
Claims That Mr. Moharam, Specifically, Was Not Afforded Due
Process to Challenge His Placement and Retention on the No Fly List. ... 22

B.   Mr. Moharam Sufficiently Pleaded a Substantive Due Process Claim ................. 25

III.   MR. MOHARAM HAS SUFFICIENTLY ALLEGED THAT, AS APPLIED TO
HIM, DEFENDANTS' STATED "JUSTIFICATION" FOR HIS PLACEMENT ON
THE NO FLY LIST IS UNCONSTITUTIONALLY VAGUE. ..................................... 28

IV.   WHETHER DEFENDANTS' ACTIONS WERE ARBITRARY AND CAPRICIOUS
IS A QUESTION OF FACT AND CANNOT BE RESOLVED ON A MOTION TO
DISMISS. ....................................................................................................................... 32

CONCLUSION .................................................................................................................. 35

ny-2322228

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFGE v. Fed. Labor Rels. Auth.*,
 2022 U.S. App. LEXIS 2639 (D.C. Cir. Jan. 28, 2022)......................................................32, 33

*Agee v. Baker*,
 753 F. Supp. 373 (D.D.C. Cir. 1990) ......................................................................... 17 fn. 10

*Alvin v. Suzuki*,
 227 F.3d 107 (3rd Cir. 2000) ......................................................................................16

*Am. Nat. Ins. Co. v. FDIC*,
 642 F.3d 1137 (D.C. Cir. 2011) ....................................................................................3

*Aptheker v. Secretary of State*,
 378 U.S. 500 (1964)......................................................................................................25

*Ass'n of Flight Attendants-CWA v. Huerta*,
 785 F.3d 710 (D.C. Cir. 2015) ......................................................................................6

*Atlas Brew Works, LLC v. Barr*,
 391 F. Supp. 3d 6 (D.D.C. 2019), *aff'd,* 820 F. App'x 4 (D.C. Cir. 2020)..............................3

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)........................................................................................................3

*Carmody v. Bd. of Trustees of Univ. of Ill.*,
 747 F.3d 470 (7th Cir 2014) ....................................................................... 17 fn. 10, 22

*Cramer v. Skinner*,
 931 F.2d 1020 (5th Cir. 1991) ...................................................................................... 22 fn. 13

*Crooker v. Transportation Security Admin.*,
 323 F. Supp. 3d 148 (D. Mass. 2018) ...........................................................................15

*Darby v. Cisneros*,
 509 U.S 137 (1993)...................................................................................................... 11 fn. 7

*EEOC v. St. Francis Xavier Parochial Sch.*,
 117 F.3d 621 (D.C. Cir. 1997)........................................................................................3

*Ege v. U.S. Dep't of Homeland Sec.*,
 784 F.3d 791 (D.C. Cir. 2015) ......................................................................................7

ny-2322228

*El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS*,
   396 F.3d 1265 (D.C. Cir. 2005) ................................................................34

*Elhady v. Kable*,
   391 F. Supp. 3d 562 (E.D. Va. 2019) .........................................................15

*Elhady v. Kable*,
   993 F.3d 208 (4th Cir. 2021) ......................................................... 22 fn. 13

*English v. District of Columbia*,
   815 F. Supp. 2d 254 (D.D.C. 2011), *aff'd*, 717 F.3d 968 (D.C. Cir. 2013) ............................18

*Farhat v. Jopke*,
   370 F.3d 580 (6th Cir. 2004) .......................................................... 17 fn. 10

*Fikre v. FBI*,
   No. 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan. 14, 2015) ................................ 14 fn. 8

*Fikre v. Fed. Bureau of Investigation*,
   142 F. Supp. 3d 1152 (D. Or. 2015) ............................................... 20 fn. 11

*Fort Bend Cty., Texas v. Davis*,
   139 S. Ct. 1843 (2019) ...............................................................................11

*Foucha v. Louisiana*,
   504 U.S. 71 (1992) ......................................................................................26

*Garcia v. Vilsack*
   563 F.3d 519 (D.C. Cir. 2009) ....................................................................34

*Gilmore v. Gonzales*,
   435 F.3d 1125 (9th Cir. 2006) ........................................................ 22 fn. 13

*Haig v. Agee*,
   453 U.S. 280 (1981) (Mem.) ........................................................................21

*Hettinga v. United States*,
   560 F.3d 498 (D.C. Cir. 2009) ....................................................................12

*Hutchins v. D.C.*,
   188 F.3d 531 (D.C. Cir. 1999) ....................................................................25

*Ibrahim v. Dep't. of Homeland Security*,
   No. C 06-00545 WHA, 2012 U.S. Dist. LEXIS 180433, 2012 WL 6652362
   (N.D. Cal. Dec. 20, 2012) ............................................................... 22 fn. 12

*In re Ruffalo*,

iii

390 U.S. 544 (1968) ......................................................................................................1

*Jibreel v. Hock Seng Chin*,
  No. C 13-03470 LB, 2014 WL 12600278 (N.D. Cal. 2014), *report and
  recommendation adopted*, No. 13-CV-03470-JST, 2014 WL 12617420 (N.D.
  Cal. 2014)........................................................................................................ 20 fn. 11

*Karem v. Trump*,
  960 F.3d 656 (D.C. Cir. 2020) ...........................................................................28, 29

*Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019) ......................................................................... *passim*

*Kent v. Dulles*,
  357 U.S. 116 (1958).................................................................................................20

*Khaled El Ali v. Barr*,
  473 F. Supp. 3d 479 (D. Md. 2020) ............................................................... *passim*

*Kovac v. Wray*,
  363 F. Supp. 3d 721 (N.D. Tex. 2019) ........................................................... *passim*

*Kremer v. Chem. Const. Corp.*,
  456 U.S. 461 (1982)................................................................................... 17 fn. 10

*Latif v. Holder*,
  28 F. Supp. 3d 1134 (D. Or. 2014) ........................................................14, 20, 21

*Latif v. Holder*,
  No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2014).............. 14 fn. 8

*Latif v. Lynch*,
  No. 3:10-CV-00750-BR, 2016 WL 1239925 (D. Or. Mar. 28, 2016) ................... 30, 32 fn. 17

*Magassa v. Wolf*,
  No. C19-2036RSM, 2021 U.S. Dist. LEXIS 117510 (W.D. Wash. June 23,
  2021) ....................................................................................................................8, 10

*Mahmood v. U.S. Dep't of Homeland Sec.*,
  No. CV 21-1262 (RC), 2021 WL 5998385 (D.D.C. Dec. 20, 2021).........................................3

*Maniar v. Wolf*,
  2020 U.S Dist. LEXIS 64940 (D.D.C. Apr. 10, 2020) ............................................. 9, 10 fn. 5

*Maniar v. Wolf*,
  No. 1:18-cv-01362-RDM, Notice of Voluntary Dismissal, ECF No. 35
  (D.D.C. Aug. 19, 2020)...........................................................................................9

iv

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)...................................................................................................19

*McCarthy v. Madigan*,
    503 U.S. 140 (1992).......................................................................................11, 12, 13

*MD Pharm., Inc. v. DEA*,
    133 F.3d 8 (D.C. Cir. 1998)....................................................................................32

*Medina v. D.C.*,
    517 F. Supp. 2d 272 (D.D.C. 2007) ............................................................. 17 fn. 10

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) ...................................................................... 22 fn. 13

*Mohamed v. Holder*,
    266 F. Supp. 3d 868 (E.D. Va. 2017) .....................................................................27

*Mohamed v. Holder*,
    995 F. Supp. 2d 520 (E.D. Va. 2014) .............................................................. *passim*

*Mohamed v. Holder*,
    No. 11-1924, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013).....................7

*Moharam v. FBI*,
    No. 20-2569 (TNM), December 20, 2021 Joint Status Report, ECF No. 30................. 16 fn. 9

*Mokdad v. Holder*,
    No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015)............................... 14 fn. 8

*Mokdad v. Lynch*,
    804 F.3d 807 (6th Cir. 2015) ....................................................................................8

*Motor Vehicle Mfrs Assn of U.S. v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29 (1983)..................................................................................................33

*Ralls Corp. v. Comm. on Foreign Investment in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014)................................................................................16

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018)............................................................................................28

*Shearson v. Holder*,
    725 F.3d 588 (6th Cir. 2013) .............................................................................14, 15

*Stern v. Regency Towers, LLC*
    886 F. Supp. 2d 317 (S.D.N.Y. 2012)......................................................... 17 fn. 10

v

*Swarthout v. Cooke,*
   562 U.S. 216 (2011)......................................................................................................18

*Tarhuni v. Holder,*
   8 F. Supp. 3d 1253 (D. Or. 2014) ......................................................... 20, 20 fn. 11

*Tarhuni v. Holder,*
   No. 3:13-cv-001 Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23,
   2014) ...................................................................................................... 14 fn. 8

*Tarhuni v. Sessions,*
   No. 3:13-CV-00001-BR, 2018 WL 3614192 (D. Or. 2018)......................... 20 fn. 11

*Tesoro Refining and Marketing Co. v. FERC,*
   552 F.3d 868 (D.C. Cir. 2009) ...................................................................13

*Town of Southold v. Town of East Hampton,*
   477 F.3d 38 (2d Cir. 2007)................................................................. 22 fn. 13

*United States v. Greene,*
   516 F. Supp. 3d 1 (D.D.C. 2021)...............................................................13

*Washington v. Glucksberg,*
   521 U.S. 702 (1997)....................................................................................25

*Washington v. Harper,*
   494 U.S. 210 (1990)....................................................................................19

*XP Vehicles, Inc. v. Dep't of Energy,*
   118 F. Supp. 3d 38 (D.D.C. 2015).................................................................3

## Statutes

18 U.S.C. § 2331(1) ...................................................................... 30 fn. 16

18 U.S.C. § 2331(5) ...................................................................... 30 fn. 16

49 U.S.C. § 46110(c) ...........................................................................6, 34

Fed. R. Civ. P. 12(b)(1).........................................................................3

Fed. R. Civ. P. 12(b)(6)..........................................................................3

vi

## INTRODUCTION

The government has put Fahmi Ahmed Moharam, a citizen of the United States, in the sort of untenable position that the Due Process Clause was meant to protect against.  Mr. Moharam has been told that he is to remain on the No Fly List unless he is able to refute the government's conclusion that he "represents a threat of engaging in or conducting a violent act of terrorism and [is] operationally capable of doing so."  At the same time, the government has refused to share any information about the facts supporting its conclusion beyond two sentences that refer to unspecified "concerns" the government has regarding Mr. Moharam's travel to Yemen over a six-year period and unspecified "activities" he engaged in during that time.  This has left Mr. Moharam totally in the dark and unable to meaningfully respond to or challenge the basis for the government's conclusions.  Due process would not allow a bar association to revoke an attorney's license to practice law if the only justification it provided was that there were "concerns" about the lawyer's "activities" throughout a six-year period, regardless of the reason the bar association claimed it could not share more information.  *See e.g. In re Ruffalo*, 390 U.S. 544 (1968)*.  And we should not allow it when the government is depriving one of its citizens of his fundamental liberty interest in travel.  Due process and the law demand more.

Mr. Moharam has thus brought this lawsuit, asserting four claims against the defendants: (1) violation of his Fifth Amendment procedural due process rights; (2) violation of his Fifth Amendment due process rights because the criteria for inclusion on the No Fly List, as applied to him, are unconstitutionally vague; (3) violation of his Fifth Amendment substantive due process rights; and (4) violations of the Administrative Procedure Act (the "APA").

Defendants contend that Mr. Moharam's claims fail as a matter of law, arguing that he has not alleged a protected liberty interest and that the Department of Homeland Security

Traveler Redress Inquiry Program ("DHS TRIP") process is "constitutionally adequate." But courts have repeatedly held that indefinite placement on the No Fly List constitutes a deprivation of a citizen's liberty interest in travel. And whether the DHS TRIP process afforded Mr. Moharam a meaningful opportunity to challenge his placement on the No Fly List is a fact-intensive inquiry that cannot be resolved on a motion to dismiss. Holdings from other cases as to whether other plaintiffs were provided constitutionally adequate process in other circumstances do not, and cannot, stand for the proposition that *in this case*, Mr. Moharam's complaint does not properly allege violations of his constitutional rights. Thus, it is irrelevant whether the procedures set forth in statute, rule, or regulation would pass judicial scrutiny on their face. What matters is the procedures actually given to Mr. Moharam, and he has adequately pleaded that they fail to meet the requirements of due process and administrative law. Accordingly, the Court should deny defendants' motion to dismiss for failure to state a claim.

Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction likewise should be denied. As defendants concede, the Administrator of the Transportation Security Administration ("TSA") has made no final determination regarding Mr. Moharam's No Fly List status, so the statute giving the Courts of Appeals jurisdiction of challenges to final decisions of the Administrator does not apply here. Even if there were a final decision, the Terrorist Screening Center (the "TSC")—not the TSA—remains the driving force behind the No Fly List, so that a statute governing review of TSA decisions would still not apply. Mr. Moharam is also not required to complete the DHS TRIP process before bringing suit. No statute, rule, or regulation requires him to exhaust these inadequate administrative procedures— or deprives this court of subject matter jurisdiction if he does not—and the court should not impose one here.

2

Defendants' motion to dismiss should be denied in its entirety.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court must treat the "complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr,* 391 F. Supp. 3d 6, 11 (D.D.C. 2019), *aff'd,* 820 F. App'x 4 (D.C. Cir. 2020) (internal quotation marks omitted). A motion to dismiss under Rule 12(b)(6) "does not test a plaintiff's ultimate likelihood of success on the merits." *Mahmood v. U.S. Dep't of Homeland Sec.,* No. CV 21-1262 (RC), 2021 WL 5998385, at *3 (D.D.C. Dec. 20, 2021) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). The plaintiff must only plead "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). To aid in its ruling, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997).

When ruling on a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) the court must "construe the complaint liberally," affording the plaintiff "the benefit of all inferences that can be derived from the facts alleged . . . and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). The court may also "consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *XP Vehicles, Inc. v. Dep't of Energy,* 118 F. Supp. 3d 38, 56 (D.D.C. 2015) (internal quotation marks omitted).

## THE ALLEGATIONS IN THE COMPLAINT

According to the complaint, Mr. Moharam was, upon information and belief, placed on the No Fly List no later than October 25, 2017, when he was denied the right to fly home to the United States from a religious pilgrimage in Saudi Arabia.  (Complaint, ECF No. 1 ("Compl.") ¶ 50)  Following his interrogation in Jeddah (Compl. ¶ 60), Mr. Moharam submitted an inquiry to DHS TRIP concerning his boarding denial and to learn whether he was on the No Fly List. (Compl. ¶¶ 61, 62)

By letter dated February 14, 2018, DHS TRIP confirmed to Mr. Moharam that he had been placed on the No Fly List.  (Compl. ¶ 63)  On March 13, 2018, Mr. Moharam filed a timely request seeking the reasons for his placement.  (Compl. ¶ 64)  DHS TRIP did not provide a response for nearly two years, during which time no other administrative redress options were available to Mr. Moharam.  (Compl. ¶ 65)

DHS finally responded to Mr. Moharam by letter dated February 20, 2020. (Compl. ¶ 66) The full explanation for Mr. Moharam's placement on the No Fly List was:

> We have determined that you are on the U.S. Government's No Fly List because you have been identified as an individual who "may be a threat to civil aviation or national security."   49 U.S.C. §114(h)(3)(A).  In particular, we have determined that you are an individual who represents a threat of engaging in or conducting a violent act of terrorism and are operationally capable of doing so.

> (Compl. Ex. C)

The letter noted that on March 13, 2018, Mr. Moharam had requested additional information about his placement on the No Fly List and an opportunity to respond to any information provided if he believed that his placement on the No Fly List was in error.  (*Id*.)  In the same letter, DHS also provided an "unclassified summary" to Mr. Moharam, which purportedly "includes reasons supporting your placement on the No Fly List." (*Id*.)  The

4

unclassified summary stated, in full, as follows:

> You are on the U.S. Government's No Fly List because the Government has concerns about your activities during frequent and extended travel to Yemen between 2011 and 2017.  The information you shared during your interview at the U.S. Consulate in Jeddah in November 2017 [sic][1] did not assuage the Government's concerns.  (*Id.*)

DHS further asserted that "[a]dditional reasons for and details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns." (*Id.*)

Although he theoretically has the right to rebut this vague, conclusory rationale, Mr. Moharam has been deprived of documents and information necessary for such a challenge, which the government has withheld on unexplained national security grounds.  He therefore has been forced to pursue litigation under the Freedom of Information Act (the "FOIA") in an attempt to obtain this information.  But after eighteen months, the FOIA litigation has not yielded any meaningful information about his placement on the No Fly List, either.  Instead, Mr. Moharam has received only heavily redacted reports related to the October 29, 2017 interrogation.  (Compl. ¶ 70)  And even though Mr. Moharam's counsel has the appropriate security clearances, counsel was denied access to any classified information concerning the basis for his placement on the list.  (Compl. ¶ 71)

In the interim, since late 2017, Mr. Moharam has been separated from family members residing in Yemen, including his mother (who is in poor health), his wife, and all of his children, except for his oldest son.  (Compl. ¶¶ 53, 54)  He also has suffered financial harm resulting from increased costs to travel within the United States to see his father.  (Compl. ¶ 55)  Overall, Mr.

---

[1] DHS included an incorrect date in its unclassified summary; Mr. Moharam was interviewed at the Jeddah consulate on October 29, 2017.  (Compl. ¶¶ 60, 70)

Moharam has suffered emotional and psychological harm because of his inability to see his family.  (*Id*.)

## ARGUMENT

I.   **THIS COURT HAS JURISDICTION OVER MR. MOHARAM'S CLAIMS.**

   A.   **Mr. Moharam is Not Required to Seek Review in the Court of Appeals Because There Has Been No Final, Independent Decision by the TSA Regarding His Placement on the No Fly List.**

Section 46110(a) of Title 49 of the U.S. Code states that:

> [A] person disclosing a substantial interest in an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administrator . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides.

For purposes of this section, in order for a court of appeals "to entertain a petition under this section, the challenged order must possess the quintessential feature of agency decisionmaking suitable for judicial review: finality."  *Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015) (internal quotation marks omitted).  Where Section 46110 applies, the courts of appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order" issued by the TSA Administrator.  49 U.S.C. § 46110(c); *see also Kashem v. Barr*, 941 F.3d 358, 365 (9th Cir. 2019) (where Section 46110 applies it "grants the courts of appeals exclusive jurisdiction over substantive challenges to No Fly List determinations.")  Section 46110(a) does not provide for review of orders of the TSC in a court of appeals.

But Section 46110 only applies to review of orders of the TSA Administrator. Defendants concede, as they must, that the TSA Administrator has not issued any order regarding Mr. Moharam's placement on the No Fly List.  (Compl. ¶ 3; Memorandum of Law in

Support of Defendants' Motion to Dismiss, ECF No. 20-1 ("Mem.") at 13)  Accordingly,

Section 46110 does not deprive this court of jurisdiction over Mr. Moraham's claims.  *Khaled El*

*Ali v. Barr*, 473 F. Supp. 3d 479, 503 (D. Md. 2020) (holding Section 46110 inapplicable when

none of the plaintiffs had received a final order through DHS TRIP).  In fact, were Mr. Moharam

to file a petition for review at this stage, the court of appeals would dismiss it for lack of a final

order.  But even if the TSA Administrator had issued a final order, Section 46110 does not apply

here because Mr. Moharam's "challenge [to] the adequacy of DHS TRIP procedure itself [] does

not solely implicate the 'independent action' of TSA" given that the TSC is—even under the

current version of the DHS TRIP process—a "'key actor' in deciding who is included on, and

removed from, the No-Fly List."  *Khaled El Ali*, 473 F. Supp. 3d at 503.  Thus, under *Ege v. U.S.*

*Dep't of Homeland Sec.*, 784 F.3d 791, 796 (D.C. Cir. 2015), the Court of Appeals would not be

able to "provide relief" under Section 46110 "by simply amending, modifying, or setting aside

TSA's orders."  *See also*, *Mohamed v. Holder*, No. 11-1924, 2013 U.S. App. LEXIS 26340, at *5

(4th Cir. May 28, 2013) (holding that Section 46110 did not preclude district court jurisdiction

because "resolving substantive and procedural due process challenges to an individual's

inclusion on the No-fly list necessarily requires scrutiny of both the TSC's and the TSA's

actions, and, should a remedy be required, it will likely involve both agencies").

Defendants assert, however, that *any* challenge Mr. Moharam brings at *any* point in the

DHS TRIP process is nevertheless subject to Section 46110.  They argue that *Kashem* stands for

the general proposition that, regardless of whether a final order has been issued, Section 46110

applies, and that the DHS TRIP process has been revised since *Ege*.  (Mem. at 14)  This

argument fails in several respects.

**First**, *Kashem* does not support defendants' position because the plaintiffs in that case,

unlike Mr. Moharam, had all received final orders from the TSA Administrator.  *See Kashem*,

941 F.3d 358 at 368.  Further, even if defendants were correct that Mr. Moharam's substantive

due process claims (Count III) are subject to Section 46110 in light of the revisions to the DHS

TRIP process providing that the TSA Administrator "issue[s] a final order" (Mem. at 14), the

Ninth Circuit in *Kashem* noted that the government did not contest the district court's ruling that

it still had subject matter jurisdiction over the procedural due process claim—which, of course,

Mr. Moharam has asserted here.  *See Kashem*, 941 F.3d 358 at 391, n. 16.[2]

Defendants rely, however, on the Sixth Circuit's decision in *Mokdad v. Lynch*, 804 F.3d

807, 812 (6th Cir. 2015) to argue that "because [Mr. Moharam] challenges the adequacy of the

DHS TRIP redress procedures, he challenges an order of the TSA and must bring that challenge

directly in the appropriate Court of Appeals."  (Mem. at 15)  But *Mokdad* simply does not

support an argument that procedural due process claims are subject to Section 46110.  The issue

in *Mokdad* was whether the TSA was a "required party to [the plaintiff's] litigation about the

adequacy of the redress procedures,'" *Mokdad*, 804 F.3d at 812, and "as other circuits have

observed, the *Mokdad* court expressly 'decline[d] to opine . . . whether § 46110 would deprive

the district court of subject-matter jurisdiction over Mokdad's claims challenging the adequacy

of the redress process, including any broad constitutional claims, if he were to file a new suit

naming TSA as a defendant.'"  *Magassa v. Wolf*, No. C19-2036RSM, 2021 U.S. Dist. LEXIS

117510, at *9 (W.D. Wash. June 23, 2021) (quoting *Mokdad,* 804 F.3d at 812; citing *Kovac v.

Wray*, 363 F. Supp. 3d 721, 743 (N.D. Tex. 2019) and *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290,

1304 (D. Minn. 2018)).  Mr. Moharam has joined the TSA in this action, and so *Mokdad* is

---

[2] There also does not appear to have been a dispute that the district court had jurisdiction of the
vagueness and APA claims in *Kashem*.  *See id.*

inapplicable even if it is good law.  *Magassa*, 2021 U.S. Dist. LEXIS 117510, at *9.

**Second**, the Court of Appeals' holding in *Ege* is fatal to defendants' arguments because the TSC determines what information to provide during the DHS TRIP process and is a key actor in making a determination about a person's continued placement on the No Fly List.  As Judge Moss recently explained in *Maniar v. Wolf*, 2020 U.S Dist. LEXIS 64940 (D.D.C. Apr. 10, 2020), it is not clear "which government official makes the final decision with respect to an aggrieved traveler's request for additional information regarding his inclusion (or putative inclusion) on the No Fly List."  *Maniar*, 2020 U.S Dist. LEXIS 64940, at *13.  Thus, "if that decision is made by the TSC, for example, then this case—which challenges the government's failure to provide the requested information—is, at least arguably, similar to and perhaps controlled by *Ege*."  *Id.*  The government essentially conceded the *Maniar* case when it removed the plaintiff from the No Fly List within four months of Judge Moss's ruling.  *See Maniar v. Wolf*, No. 1:18-cv-01362-RDM, Notice of Voluntary Dismissal, ECF No. 35 (D.D.C. Aug. 19, 2020).  Mr. Moharam, like the plaintiff in *Maniar*, challenges the TSC's role in failing to provide sufficient additional information regarding his inclusion on the No Fly List, thereby making it impossible for Mr. Moharam to meaningfully respond, and violating his constitutional rights under the Due Process Clause of the Fifth Amendment.  (Compl. ¶¶ 66-71)[3]

---

[3] That the TSC has apparently removed individuals from the No Fly List despite a final decision by the TSA Administrator also raises questions about who the final decision-maker is.  *See, e.g.*, *Fikre v. FBI*, No. 13-cv-00899 (D. Or May 9, 2016), ECF No. 98. ("Defendants hereby notify the Court that undersigned counsel recently was advised by the Terrorist Screening Center that Plaintiff has been removed from the No Fly List."); *Long v. Barr*, No. 20-1406 (4th Cir. Sep. 23, 2020), ECF No. 27-1 ("Petitioner was also provided a Declaration from Jason V. Herring, the Deputy Director for Operations of the Terrorist Screening Center, stating that Petitioner 'has been removed from the No Fly List based on an assessment of the currently available information' and that Petitioner 'will not be placed back on the No Fly List in the future based on the currently available information.'")

Further, in contrast to *Maniar*, defendants in this case clearly admit that it was the TSC—not the TSA—that "authorized" the release of the unclassified summary at issue here to Mr. Moharam.[4]  (Mem. at 9, DEX 2 ¶ 18)  Assuming, but not conceding, that the procedure outlined by the government in the Watchlisting Overview documents that they submitted in connection with their motion (DEX 1, DEX 3) were followed (and that they are even properly before the court),[5] the TSC also reviewed any classified intelligence information about Mr. Moharam after Mr. Moharam asked for information regarding his placement on the No Fly List, and determined what, if any, information could be shared with Mr. Moharam (which was, in effect, none).[6] (Compl. ¶¶ 36-37, 40-41)  The TSC "remains the driving force behind the DHS TRIP process," review of orders of the TSC in a court of appeals is not provided for by Section 46110, and Mr. Moharam's challenges to the adequacy of the DHS TRIP process as applied to him is therefore not subject to Section 46110.  *Khaled El Ali*, 473 F. Supp. 3d at 504.

Finally, Mr. Moharam's claims are not "inescapably intertwined" with an order that would be subject to Section 46110.  (Mem. at 15). "Due process constitutional challenges are 'inescapably intertwined' with review of an order if they 'squarely attack the orders issued by the

---

[4] In the event the court does not think that the record is sufficient to establish who is actually responsible for determining whether additional information will be provided and whether Mr. Moharam will remain on the No Fly List, we respectfully request that the court permit jurisdictional discovery in order to ascertain what agency is responsible for making which specific decisions in the DHS TRIP process as it pertains to Mr. Moharam.

[5] As in *Maniar*, at *4-5, Defendants have not properly authenticated these documents—which are not on any agency letterhead—because the declaration to which they are attached does not explain who authored or approved them.

[6] The Watchlisting Overview (DEX 1) makes clear that "TSC determines that an individual seeking redress should remain on the No Fly List."  Although the TSA Administrator "will review the available information" and can accept or reject the TSC's determination, there is no standard or criteria for the TSA Administrator's review of the TSC's determination.  (*See Id.*)

TSA.'" *See Magassa*, 2021 U.S. Dist. LEXIS 117510, at *11 (internal quotation marks omitted).

Because "no final order exists to be challenged," Mr. Moharam's claims cannot be inescapably

intertwined with any order subject to Section 46110.  *Id.*

> ### B.     The Court Should Deny Defendants' Motion to Dismiss Based on Mr. Moharam's Supposed Failure to "Complete" the DHS TRIP Process.
>
> #### 1.     There Is No Statutory or Regulatory Requirement That Mr. Moharam Complete the DHS Trip Process Before Initiating Suit, and the Court Should Not Impose One.

The fact that the DHS TRIP process is still pending does not strip this Court of subject

matter jurisdiction.  The Supreme Court has made clear that a failure to exhaust administrative

remedies does not implicate a court's subject matter jurisdiction unless an exhaustion

requirement is specifically provided by statute.  *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct.

1843, 1850 (2019) ("If the Legislature clearly states that a prescription counts as jurisdictional,

then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but

when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as

nonjurisdictional in character") (internal alterations and citations omitted).  Because defendants

identify no such statutory requirement here, Mr. Moharam's supposed failure to exhaust his

administrative remedies does not deprive this Court of jurisdiction.

It is, of course, within the court's discretion to impose an exhaustion requirement for Mr.

Moharam's constitutional claims.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)

("[W[here Congress has not clearly required exhaustion, sound judicial discretion governs").[7]

---

[7] The court cannot require exhaustion with respect to Mr. Moharam's APA claims because neither the relevant statute nor agency rule impose such a requirement.  As the Supreme Court held in *Darby v. Cisneros*, 509 U.S 137, 154 (1993), "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is

"Whether exhaustion should be required as a prudential matter depends on 'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'"  *Hettinga v. United States*, 560 F.3d 498, 505-06 (D.C. Cir. 2009) (internal citations omitted). "Moreover, '[n]otwithstanding [the institutional interests in exhaustion], federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them.'"  *Id*. at 506 (quoting *McCarthy*, 503 U.S. at 146).

In this case, the court should not require Mr. Moharam to exhaust the DHS TRIP process. The Supreme Court has identified "three broad circumstances" that weigh "heavily" against requiring a plaintiff to exhaust administrative remedies.  *McCarthy*, 503 U.S. at 146.  Exhaustion is not required when it may result in undue prejudice, including from an unreasonable or indefinite time frame for administrative action.  *Id*. at 146 (citing *Gibson v. Berryhill,* 411 U.S. 564, 575, n. 14 (1973)) ("administrative remedy deemed inadequate most often . . . because of delay by the agency") (internal quotation marks omitted).  Further, "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief."  *Id*. at 147 (internal quotation marks omitted).  Examples of such inadequacy include when "the challenge is to the adequacy of the agency procedure itself," or when the agency lacks the authority to grant effective relief.  *Id.* at 148.  And finally, resort to an administrative remedy may be inadequate when the agency is "shown to be biased or has otherwise predetermined the issue before it."  *Id.*  All of these circumstances are present here, and the court should therefore not require exhaustion.

First, no definite time frame is prescribed for defendants to respond to Mr. Moharam's

---

made inoperative pending that review.  Courts are not free to impose an exhaustion requirement as a rule of judicial administration."  (emphasis in original)

latest submission and there is no reason to believe defendants will proceed with evaluating Mr.

Moharam's latest submission with any sense of urgency or that his complaint will not fall (back)

into the "black hole" that is DHS TRIP. *See Khaled El Ali*, 725 F. 3d at 506. Defendants took

nearly two years to respond to Mr. Moharam's request for more information under DHS TRIP

with a two-sentence unclassified summary. (Compl. ¶ 65) Defendants here have not offered any

estimate of when an additional review of Mr. Moharam's DHS TRIP submission would be

complete. Thus, the time frame for additional agency review is "indefinite," which weighs

against requiring exhaustion here. *McCarthy*, 503 U.S. at 147.

Second, Mr. Moharam has expressly challenged the adequacy of the very procedures

defendants would require him to exhaust. These include the defendants' failure to provide

information sufficient to allow Mr. Moharam to respond adequately to the allegations concerning

him or to challenge his placement on the No Fly List (Compl. ¶¶ 67-70) and that the DHS TRIP

process does not provide for an impartial arbiter or a hearing to review his placement on the No

Fly List. (Compl. ¶¶ 70-71) This further weighs against requiring exhaustion here. *See*

*McCarthy*, 503 U.S. at 148.

Third, defendants here have demonstrated the futility of raising these complaints in the

agency context by repeatedly rejecting in them to date, including denying Mr. Moharam's

request that his security-cleared counsel be provided additional information, (Compl. ¶ 71) and

refusing to provide him access to agency documents and information that relate to his placement

on the watchlist. (Compl. ¶ 70) Thus, further resort to the administrative process would be futile

in light of defendants' preconceived position on Mr. Moharam's case. *See McCarthy*, 503 U.S.

at 148; *see also United States v. Greene*, 516 F. Supp. 3d 1, 21 (D.D.C. 2021) ("It is also well

established that resort to the administrative process will generally be considered futile if the

agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter."); *Tesoro Refining and Marketing Co. v. FERC*, 552 F.3d 868, 874 (D.C. Cir. 2009) ("Ordinarily, a party invokes the futility doctrine to prove the worthlessness of an argument before an agency that has rejected it in the past")  That other courts have found plausible similar constitutional claims based on the failure of the DHS TRIP process to provide any meaningful opportunity to challenge an individual's placement on the No Fly List underscores the futility of the process.  *See, e.g.*, *Khaled El Ali*, 473 F. Supp. 3d at 506; *Kovac*, F. Supp. 3d 721 at 746, 756-758; *Latif v. Holder,* 28 F. Supp. 3d 1134, 1161, 1162 (D. Or. 2014); *Mohamed v. Holder,* 995 F. Supp. 2d 520, 538, 539 (E.D. Va. 2014); *Tarhuni v. Holder,* 8 F. Supp. 3d 1253, 1275, 1276 (D. Or. 2014).

Defendants argue, however, that Mr. Moharam's failure to exhaust his administrative remedies renders his claims "unripe" and therefore unsuitable for judicial review under *Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013), in which the Sixth Circuit affirmed the District Court's exercise of its discretion to require plaintiff to raise her placement on the Terrorist Screening Database and government watchlists through the DHS TRIP process.  (Mem. at 17)[8]  But in

---

[8] Defendants also argue that other courts have required exhaustion of the DHS TRIP process, relying on scheduling orders from other cases. (Mem. at 17-18)  But each of these orders directed *the government* to take action, and none dismissed an action for lack of jurisdiction while additional agency review occurred.  Further, all of the orders were issued contemporaneously with or in anticipation of the adoption of revised DHS TRIP procedures in 2015, when, perhaps, there was justified optimism that the updated DHS TRIP process would prove adequate.  *See Fikre v. FBI*, No. 3:13-cv-899, Order, ECF No. 57 (D. Or. Jan. 14, 2015) (denying defendants' motion for a stay and ordering defendants to complete review of plaintiff's DHS TRIP inquiry under the then-newly revised DHS TRIP procedures within approximately eight weeks); *Latif v. Holder*, No. 3:10-cv-750-BR, Case Mgmt. Order, ECF No. 152 (D. Or. Oct 3, 2014) (declining to remand matter to agency, and ordering defendants to identify within one week which plaintiffs were on the No Fly List, to complete an interim substantive review under then-newly revised DHS TRIP procedures within one month, and to complete final substantive reconsideration of all remaining plaintiffs' DHS TRIP inquiries within three months); *Mokdad v.*

*Khaled El Ali*, defendants also asked the court to follow *Shearson*. *Khaled El Ali*, 473 F. Supp. 3d at 506. The court declined to do so, noting that when the Sixth Circuit decided *Shearson* in 2015, it expressed hope that the DHS TRIP process would develop an administrative record and could result in the *Shearson* plaintiff's removal from "the terrorist list" and end her on-going injury. *Id*. The court in *Khaled El Ali* recognized that the plaintiffs before it had "pleaded robustly" that DHS TRIP has historically offered "little redress with no prospects of improvement" and that many No Fly List complaints "fall into a DHS TRIP black hole." *Id*. The court therefore did not "share the *Shearson* Court's optimism that exhaustion will aid the decision-making process." *Id*. Other courts have reached the same conclusion, repeatedly rejecting defendants' attempts to require exhaustion of the DHS TRIP process. *See, e.g.*, *Elhady v. Kable*, 391 F. Supp. 3d 562, 576 (E.D. Va. 2019), *rev'd on other grounds*, 993 F. 3d 208 (4th Cir. 2021); *Crooker v. Transportation Security Admin.*, 323 F. Supp. 3d 148, 158 (D. Mass. 2018); *Mohamed*, 995 F. Supp. at 534; *Kovac*, 363 F. Supp. 3d at 747.

This Court should similarly reject defendants' attempt to require Mr. Moharam to complete what would, in his specific circumstances, be a futile endeavor. Like the plaintiffs in *Khaled El Ali*, Mr. Moharam has "pleaded robustly" that the DHS TRIP procedure has been

---

*Holder*, No. 13-cv-12038, Order, ECF No. 43 (E.D. Mich. Dec. 16, 2015) (on remand from Court of Appeals, ordering that defendant immediately reopen plaintiff's DHS TRIP request and issue a letter to plaintiff and the court within one week stating whether the plaintiff was on the No Fly List); *Tarhuni v. Holder*, No. 3:13-cv-001, Orders, ECF Nos. 79, 86 (D. Or. Oct. 3, 2014 and Dec. 23, 2014) (denying defendants' motion to remand case to agency, ordering defendants to identify within one week whether plaintiff was on the No Fly List, to complete an interim substantive review under then-newly revised DHS TRIP procedures within one month, and to complete final substantive reconsideration of plaintiff's DHS TRIP inquiries within three months). These cases do not support a requirement that Mr. Moharam exhaust his remedies or a holding that those remedies are adequate for him; rather they only require that defendants must provide those remedies.

woefully deficient in the past and continues to be deficient in his case in particular, and that Mr.

Moharam's No Fly List case has fallen into the inevitable gravitational pull of the DHS TRIP

black hole given the vague information provided to him.  (Compl. ¶¶ 34-43, 56-74)[9]

### 2.   DHS TRIP Procedures are Unavailable to Mr. Moharam and Are Inadequate.

As a fallback, defendants argue that "[e]ven if the Court does not require exhaustion on

all claims, at a minimum Count I (Plaintiff's procedural due process claim) should be dismissed

for the closely related reason that Plaintiff has failed to avail himself fully of the procedures

available."  (Mem. at 19)  Defendants suggest that *Alvin v. Suzuki*, 227 F.3d 107, 116 (3rd Cir.

2000) supports this position, but their argument depends on omitting a key portion of the

sentence from *Alvin,* which reads in full:  "In order to state a claim for failure to provide due

process, a plaintiff must have taken advantage of the processes that are available to him or her,

***unless those processes are unavailable or patently inadequate***."  *Alvin*, 227 F.3d at 116

(emphasis added).  Thus, as the Court of Appeals explained in another case defendants cite, "we

read [*Alvin*] to say that a party 'waives' a due process claim only if he foregoes *constitutionally*

*adequate* procedures."  *Ralls Corp. v. Comm. on Foreign Investment in U.S.*, 758 F.3d 296, 317

---

[9] Defendants also assert, in conclusory fashion, that Mr. Moharam will not suffer any "material hardship" if the DHS TRIP process is allowed to "play out," because of Mr. Moharam's previous requests for extension to respond to DHS TRIP.  (Mem. at 19)  This argument omits key context. First, it took defendants nearly two years to respond to Mr. Moharam's request for the reasons for his placement on the No Fly List in the first instance.  (Compl. ¶ 65)  Mr. Moharam requested extensions to respond to DHS TRIP in light of the global COVID-19 pandemic and because defendants' failure to provide meaningful information about the basis for his placement on the No Fly List forced him to pursue separate FOIA litigation.  That FOIA litigation—based on requests submitted in April 2019— has resulted only in the production of a handful of highly redacted documents and is still pending; the State Department only recently informed Mr. Moharam that it had referred certain records to "other government agencies for those agencies to provide a direct response to Plaintiff."  *See Moharam v. FBI*, No. 20-2569 (TNM), December 20, 2021 Joint Status Report, ECF No. 30.

n.18 (D.C. Cir. 2014) (emphasis in original).  Here, Mr. Moharam pleaded that although he has

engaged in the DHS TRIP process, it does not afford him constitutionally adequate information

or procedures to challenge his placement on the No Fly List.  (Compl. ¶¶ 61, 64-74)  Forcing Mr.

Moharam to complete that constitutionally inadequate process before being able to challenge it

in court is a Catch-22.[10]

### C.    For The Same Reasons, There is No Basis to Stay This Action.

Rehashing their exhaustion arguments, defendants contend in the alternative that, should

this Court deny its motion to dismiss, this action should be stayed pending exhaustion of the

DHS TRIP process.  But as established above, exhaustion is not required here and the exercise of

sound judicial discretion does not support a stay of proceedings.  Defendants have offered no

---

[10] The additional cases cited by defendants in support of their argument that Mr. Moharam's
procedural due process claim should be dismissed because he has "failed to avail himself fully"
of the any procedures available to him (Mem. at 19-20) are distinguishable on the facts, arise in a
different procedural context, or are inapposite.  In *Carmody v. Bd. of Trustees of Univ. of Ill.*, 747
F.3d 470, 479 (7th Cir 2014), the Seventh Circuit held that a university employee's due process
claim was barred where he "bowed out" of a constitutionally adequate process for determining
whether his termination was justified, which included "an adversarial post-termination hearing
before a neutral hearing officer."  In *Agee v. Baker,* 753 F. Supp. 373 (D.D.C. Cir. 1990) the
plaintiff, unlike Mr. Moharam, failed to meaningfully participate in the hearing granted to him
and refused to submit proof he claimed to have that undermined or refuted the government's
evidence that he had appeared on television and provided interviews revealing the locations of
CIA stations and the identity of CIA agents.  *Farhat v. Jopke,* 370 F.3d 580, 596 (6th Cir. 2004)
was decided on summary judgment, not on a motion to dismiss, and the plaintiff there had
participated in robust procedures, including two pre-termination proceedings and a post-
termination arbitration during which the parties reached a tentative settlement that plaintiff later
rejected.  *Stern v. Regency Towers, LLC,* 886 F. Supp. 2d 317 (S.D.N.Y. 2012) was also decided
on summary judgment and is distinguishable because the plaintiff had participated in years of
litigation contesting the legality of his eviction.  The Supreme Court's holding in *Kremer v.
Chem. Const. Corp.*, 456 U.S. 461 (1982) concerned whether res judicata applied to a state court
judgment that a claim of employment discrimination was not proved, not whether a failure to
exhaust administrative remedies defeated a due process claim.  Finally, in *Medina v. D.C.,* 517 F.
Supp. 2d 272, 281-82 n. 7 (D.D.C. 2007), the plaintiff did not challenge the availability or
adequacy of the available state court litigation procedures.

information (whether to Mr. Moharam or this Court) as to when a final decision from the TSA Administrator may issue.  Further, given the defendants' past actions with respect to Mr. Moharam, there is also no reason to believe that any "final written decision explaining the application of procedures and standards" (Mem. at 33) to Mr. Moharam would create a more complete record for judicial review than the one that currently exists.  At this point, it is undeniable that Mr. Moharam has a strong interest in prompt adjudication of his claims. Inclusion on the No Fly List "is life defining and life restraining across a broad range of constitutionally protected activities and aspirations." *Mohamed,* 995 F. Supp. 2d at 529.  In addition to being forced to respond to allegations of unlawful activities without any details about the suspicions the government may have about him, Mr. Moharam continues to experience the difficulty of long-term separation from his loved ones, the inability to participate in important religious rites, the inability to visit family, and the inability to attend important personal and family events.  (Compl. ¶¶ 53, 54)  Mr. Moharam has suffered long enough from the government's erroneous and unjustified placement of him on the list and the corresponding inadequacy of the DHS TRIP process.  (Compl. ¶ 55)  This Court should decline defendants' request to stay the proceedings.

## II.   MR. MOHARAM SUFFICIENTLY ALLEGED VIOLATIONS OF HIS DUE PROCESS RIGHTS.

### A.   Mr. Moharam Sufficiently Pleaded a Procedural Due Process Claim.

"In order to state a procedural due process claim, [plaintiff] must allege a deprivation of life, liberty, or property, without due process of law." *English v. D.C.*, 815 F. Supp. 2d 254, 261 (D.D.C. 2011) *aff'd*, 717 F.3d 968 (D.C. Cir. 2013).  A court must ask two questions in order to determine whether there has been a violation of procedural due process.  First, the court "ask[s]

whether there exists a liberty or property interest of which a person has been deprived."
*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  If such an interest is identified, the court then
asks "whether the procedures followed by the State were constitutionally sufficient."  *Id.* (citing
*Kentucky Dep't of Corrections v. Thompson*, 490 U.S 454, 460 (1989)).  To resolve the latter
question, courts consider:  (1) "the private interest that will be affected by the official action"; (2)
"the risk of an erroneous deprivation of such interest through the procedures used, and the
probable value, if any, of additional or substitute procedural safeguards"; and (3) "the
Government's interest, including the function involved and the fiscal and administrative burdens
that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424
U.S. 319, 335 (1976).  "The fundamental requirement of due process is the opportunity to be
heard at a meaningful time and in a meaningful manner."  *Id*. at 333.

   Here, Mr. Moharam has pleaded that his placement and retention on the No Fly List
violated his liberty interest to travel domestically and internationally and that defendants have
not afforded him a constitutionally adequate process to challenge his placement on the No Fly
List, because they failed to provide him  (1) a full statement of reasons or bases on which
defendants relied to place and maintain him on the No Fly List; (2) any of the information
supporting those bases; (3) the opportunity to challenge his placement in a live hearing before a
neutral decision-maker; and (4) access for security-cleared counsel to any classified information
allegedly supporting his placement.  (Compl. ¶¶ 75-80)  That is sufficient to state a claim.

   Defendants, however, contend that Mr. Moharam's claims should be dismissed because
he has not pleaded the existence of a constitutionally protected liberty interest and because the
DHS TRIP process is "constitutionally adequate."  (Mem. at 20-25)  Both arguments fail.

1.   **Indefinitely Barring a U.S. Citizen, like Mr. Moharam, From Air Travel Infringes on His Liberty Interests.**

"The procedural protections required by the Due Process Clause must be determined with reference to the rights and interests at stake in the particular case." *Washington v. Harper*, 494 U.S. 210, 229 (1990).  "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958).  As the Supreme Court explained in *Kent*:

> [T]he right of exit [from the United States] is a personal right included within the word 'liberty' as used in the Fifth Amendment. If that 'liberty' is to be regulated, it must be pursuant to the lawmaking functions of the Congress.  And if that power is delegated, the standards must be adequate to pass scrutiny by the accepted tests. Where activities or enjoyment, natural and often necessary to the well-being of an American citizen, such as travel, are involved, we will construe narrowly all delegated powers that curtail or dilute them.

*Id*. at 129.

Applying *Kent*, courts have held that citizens like Mr. Moharam "have constitutionally-protected liberty interests in traveling internationally by air," 28 F. Supp. 3d at 1148-1149, and "maintain a clear liberty interest in domestic and international travel." *Khaled El Ali,* 473 F. Supp. 3d at 507-508 (internal citations omitted); *see also Mohamed*, 995 F. Supp. 2d at 532 (emphasizing "the substantial liberty interest in freedom of movement possessed by every citizen").  Numerous courts have held that this liberty interest in travel is "significantly affected by being placed on the No-Fly List." *Latif v. Holder,* 28 F. Supp. 3d at 1149.[11]  That deprivation

---

[11] Other No Fly List cases holding that the right to international travel is a protected liberty interest include *Kovac,* 363 F. Supp. 3d at 751, 757; *Fikre v. Fed. Bureau of Investigation*, 142 F. Supp. 3d 1152, 1162 (D. Or. 2015); *Mohamed,* 995 F. Supp. 2d at 537; *Tarhuni*, 8 F. Supp. 3d at 1271; *Tarhuni v. Sessions*, No. 3:13-CV-00001-BR, 2018 WL 3614192, at *7 (D. Or. 2018); and *Jibreel v. Hock Seng Chin,* No. C 13-03470 LB, 2014 WL 12600278, at *6 (N.D. Cal. 2014), *report and recommendation adopted*, No. 13-CV-03470-JST, 2014 WL 12617420 (N.D. Cal. 2014).

of his liberty interest in international travel is exactly what Mr. Moharam has alleged here.  Due

to his placement on the No Fly List, Mr. Moharam has been denied the ability to travel to see his

family for nearly five years, as there is no other way other than by air for him to make the

journey from the United States to Yemen.  (Compl. ¶ 53)

Defendants, however, ignore these directly apposite No Fly List cases and argue that "a

traveler does not have a constitutional right to the most convenient form of travel,"  (Mem. at 20-

21), quoting *Haig v. Agee*, 453 U.S. 280,  307 (1981) for the proposition that "the right of

international travel [is] no more than an aspect of the liberty protected by the Due Process Clause

of the Fifth Amendment" and "is subordinate to national security [considerations]."  (internal

quotation marks omitted).  But defendants ignore the critical caveat in *Haig*—that the right to

travel is subject only to "*reasonable* government regulation."  *Id.* at 305 (emphasis added).  And

in other No Fly List cases, courts have repeatedly rejected the same argument that defendants

have advanced here, because a "complete and indefinite" ban on international travel is not

reasonable.  *See Latif*, 28 F. Supp. 3d at 1148.  While placement on the No Fly List would

theoretically allow Mr. Moharam to row or cycle to Yemen, "[d]efendants' contention that

international air travel is a mere convenience in light of the realities of our modern world . . .

ignores the numerous reasons that an individual may have for wanting or needing to travel

overseas quickly such as the birth of a child, the death of a loved one, a business opportunity, or

a religious obligation."  *Id*.  Similarly, in *Mohamed*, the court explained that:

> The impact on a citizen who cannot use a commercial aircraft is profound. He is
> restricted in his practical ability to travel substantial distances within a short period
> of time, and the inability to fly to a significant extent defines the geographical area
> in which he may live his life. As a practical matter, an affected person is restricted
> in his ability to visit family and friends located in relatively distant areas of the
> country or abroad, which through flight can be reached within a matter of hours but
> would otherwise take days, if not weeks, to access.

995 F. Supp. 2d at 528.[12]  Thus, placement on the No Fly List has deprived Mr. Moharam of a

protected liberty interest.[13]

        2.        **The General DHS TRIP Process Cannot Shield Defendants From Claims That Mr. Moharam, Specifically, Was Not Afforded Due Process to Challenge His Placement and Retention on the No Fly List.**

It is well-settled that courts "cannot resolve . . . factual issues on the pleadings."  *See,*

*e.g., Carmody*, 747 F.3d at 477.  Defendants nevertheless argue that the court can rule, as a

matter of law, that the DHS TRIP process is "constitutionally adequate" as to Mr. Moharam

based on declarations and documents that they submitted in connection with their motion

describing how the DHS TRIP process supposedly works in general.  (Mem. at 22-25)  But

defendants' argument necessarily requires that the court decide between competing factual

narratives—those asserted by Mr. Moharam in his complaint and those offered by defendants in

support of their motion, which are based on the Platonic ideal of DHS TRIP procedures rather

than their actual application to Mr. Moharam.  That is inappropriate.  Because Mr. Moharam is

asserting an as-applied challenge, in order to determine whether the DHS TRIP procedures are

sufficient to satisfy procedural due process as to him specifically, "the Court must engage in a

---

[12] Other cases finding plausible plaintiffs' claims that placement on the No Fly List implicated a protected liberty interest include *Ibrahim v. Dep't. of Homeland Security*, No. C 06-00545 WHA, 2012 U.S. Dist. LEXIS 180433, 2012 WL 6652362, at *7 (N.D. Cal. Dec. 20, 2012); *Khaled El Ali*, 473 F. Supp. 3d at 514; and *Kashem*, 941 F.3d at 378.

[13] Cases cited by defendants are distinguishable.  *Gilmore v. Gonzales,* 435 F.3d 1125 (9th Cir. 2006) and *Elhady v. Kable,* 993 F.3d 208, 222 (4th Cir. 2021) concerned nothing more than enhanced passenger screening prior to boarding a flight.  *Miller v. Reed,* 176 F.3d 1202, 1205 (9th Cir. 1999) held that denial of a driver's license was not deprivation of the right to travel in light of the convenient alternatives available, and *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) concerned restrictions related to riding ferries.  *Cramer v. Skinner,* 931 F.2d 1020, 1031 (5th Cir. 1991) concerning restrictions on interstate air service to one airport.  None of these cases involved the complete and indefinite ban on international air travel.

fact-intensive consideration of the personal liberties involved, the government's compelling interest in combating terrorism, the procedures used in connection with the No Fly List, and the use made of the No Fly List." *Mohamed*, 995 F. Supp. 2d at 539.

Given the fact-intensive nature of an as-applied procedural due process challenge, it is unsurprising that defendants primarily rely on *Kashem*, a case that was decided at summary judgment *after* a factual record was developed.  In *Kashem*, the plaintiffs had completed the DHS TRIP process and received a final order regarding their placement on the No Fly List from the TSA Administrator.  The Ninth Circuit held that "individuals challenging their No Fly List designation are presumptively entitled to a full statement of the reasons for their inclusion on the list and to disclosure of the original evidence — inculpatory and exculpatory — upon which the government relied in making the designation."  941 F. 3d. at 380.  Thus, to satisfy procedural due process, the government is "required to provide sufficient material information, whether exculpatory or inculpatory, to [plaintiffs] in order to permit [them] to respond meaningfully to the reasons [they have] been placed on the No Fly List." *Id.* at 387-388.  The government may only withhold a reason for placement if the government proves that "(1) the withheld reason is classified and truly implicates national security; and (2) reasonable mitigation measures are not possible without unduly implicating national security.  Mitigation measures may include, for example, disclosing the classified evidence to cleared counsel subject to a protective order or providing the complainant an unclassified summary of the information." *Id.* at 382-383.

The Ninth Circuit then applied that standard to the specific facts of that case.  The government had provided three of the plaintiffs with summaries of the reasons for their placement on the No Fly List that included references to specific statements made to FBI agents and third parties, travel to particular countries, and detailed conduct in specific countries (for

example, alleged training with specific groups).  *Id*. at 368.[14]  Furthermore, the District Court

ordered the government to submit for in camera review "(1) a summary of any material

information (including material exculpatory or inculpatory information) that [it] withheld from

the notice letters sent to each Plaintiff and (2) an explanation of the justification for withholding

that information."  *Id*. at 387.  It was only after this in camera review, and on summary

judgment, that the District Court resolved the factual dispute concerning the sufficiency of the

summaries that were provided to the plaintiffs.  *Id*.  The Ninth Circuit affirmed, holding that,

based on the specific facts in that case, the "summaries [at issue] afforded the plaintiffs a

meaningful opportunity to tailor their responses to the subject matter of the government's

concerns."  *Id*. at 368.  In particular, based on the factual record, the Ninth Circuit was able to

conclude that the government had not "withheld the sole or predominant reason for including the

plaintiffs on the No Fly List."  *Id.* at 383.

Mr. Moharam's case, of course, is entirely different, both procedurally and factually.

There has been no factual development about the information that has been withheld from Mr.

Moharam and the court cannot determine whether the two-sentence summary provided to Mr.

Moharam can satisfy procedural due process under the three-factor test set forth in *Matthews*,

424 U.S. 319 without development of the facts behind that inadequate submission, the reasons

for the withholding of more detailed information, the refusal to mitigate the inadequacy, and,

ultimately, the factual basis for Mr. Moharam's placement on the No Fly List.

Defendants incorrectly suggest that *Kashem* "rejected . . . as a matter of law" the type of

---

[14] A fourth plaintiff received a less detailed statement but "[t]he government expanded on the reasons for this plaintiff's inclusion on the No Fly List in classified information filed ex parte and in camera in district court," which allowed the court to make the necessary factual findings to resolve that plaintiff's claims on summary judgment.  *Id*.

safeguards Mr. Moharam alleges would satisfy procedural due process, including an impartial live hearing and access by security cleared counsel to classified material that defendants claim supports their decision to maintain Mr. Moharam on the No Fly List.  (Mem. at 24)  Not so; the Ninth Circuit specifically acknowledged that "[t]here may be No Fly List cases in which due process would require some type of live hearing or some opportunity to cross-examine witnesses." *Kashem,* 941 F. 3d at 389.  But, the court held, determining whether a hearing is required "will require weighing" the particular facts of a case against specific governmental interests and thus "a case-by-case approach is proper." *Id*.  And this case-by-case procedural due process analysis requires weighing whether withholding classified information from security-cleared counsel is warranted under the specific facts of a specific case. *Id*. at 383.  This Court therefore should reject defendants' attempt to avoid any review of these critical factual questions regarding Mr. Moharam's as-applied procedural due process claims at the pleading stage.

### B.    Mr. Moharam Sufficiently Pleaded a Substantive Due Process Claim.

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).  "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Aptheker v. Secretary of State*, 378 U.S. 500, 508 (1964).  "If a fundamental right is implicated and strict scrutiny, therefore, applies, a law will not be upheld unless the government demonstrates that the law is necessary to further a compelling governmental interest and has been narrowly tailored to achieve that interest." *Kovac*, 363 F. Supp. 3d at 750 (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)); *see also Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999).  Strict scrutiny applies to

Mr. Moharam's substantive due process claims because his placement on the No Fly List deprives him of his fundamental right to travel. *See, e.g.*, *Khaled El Ali*, 473 F. Supp. at 514. And the complaint in this case sufficiently alleges that the defendants' decision to place Mr. Moharam on the No Fly List cannot pass strict scrutiny because there is no compelling government interest in keeping him on the list based solely on his travel to Yemen when he is not a threat to national security interest or aviation. (Compl. ¶¶ 85-89)

Defendants contend, however, that Mr. Moharam's substantive due process claims are "coextensive" with his procedural due process claims, and that the substantive due process claims fall along with the procedural due process claims. (*Id*.) But procedural fairness and substantive standards are two distinct requirements of the Due Process Clause, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and defendants cite no cases in which a court has held a substantive due process claim to be subsumed by procedural due process claims. Courts addressing No Fly List claims repeatedly distinguish between the applicable legal standards for procedural and substantive due process claims. *See, e.g. Tarhuni,* 8 F. Supp. 3d at 1271, 1273; *Kovac,* 363 F. Supp. 3d at 751-752, 758; *Khaled El Ali*, 473 F. Supp. 3d at 509, 514; *Mohamed,* 995 F. Supp. 2d at 537, 539. Regardless, defendants' argument impliedly concedes that if Mr. Moharam's procedural due process claim survives dismissal, his substantive due process claims should, as well. And, as demonstrated above, Mr. Moharam has sufficiently pleaded a procedural due process claim. *See* Section II.B., *supra*.

Defendants also contend that dismissal is warranted because Mr. Moharam "has not been deprived of a fundamental right." Not so. Even if the right of which plaintiff has been deprived is found not to be "fundamental," dismissal is not required—it just changes the standard of review. *Kovac,* 363 F. Supp. 3d at 750 (noting that deprivations of a fundamental right are

subject to strict scrutiny, whereas non-fundamental rights are subject to rational basis review).
Even under the rational basis standard, defendants' unfounded placement of Mr. Moharam on the
No Fly List cannot pass constitutional muster.  But in any event, courts have applied a strict
scrutiny analysis to substantive due process claims challenging placement on the No Fly List.
*See, e.g.*, *id.*; *Khaled El Ali*, 473 F. Supp. at 514; *Mohamed v. Holder*, 266 F. Supp. 3d 868, 879
(E.D. Va. 2017).

Finally, defendants argue that the court can dismiss Mr. Moharam's substantive due
process claims at the pleading stage because "the Government's actions have not been egregious,
let alone so egregious as to shock the conscience."  (Mem. at 30)  In support of that argument,
defendants cite *Mohamed*, 266 F. Supp. 3d at 872.  But the court in that case did not discuss—let
alone apply—the "shock the conscience" standard.  Further, "[d]efendants omit the crucial
detail" about *Mohamed*—"that the case was decided at the summary judgment stage, after full
development of the factual record." *Kovac*, 363 F. Supp. 3d at 751, n9.  As the court in *Kovac*
noted when it rejected the same argument defendants are making here, "at the motion-to-dismiss
stage, the same District Court [in *Mohamed*] concluded that the plaintiff had adequately alleged
that the No Fly List violated his rights to substantive due process." *Id.*   Defendants' reliance on
*Mohamed* thus underscores that determining whether the non-classified summary provided to
Mr. Moharam—and defendants' repeated refusal to provide any other information—can survive
strict scrutiny "is fact-dependent and inappropriate for complete resolution at this stage." *Khaled*
*El Ali*, 473 F. Supp. 3d at 514; *see also Kovac*, 363 F. Supp. 3d at 751 ("Whether Mr. Kovac's
alleged disabilities as a result of his inclusion on the No Fly List unconstitutionally burden the
exercise of his right to interstate or international travel cannot be decided at this stage as a matter
of law.")

**III.    MR. MOHARAM HAS SUFFICIENTLY ALLEGED THAT, AS APPLIED TO HIM, DEFENDANTS' STATED "JUSTIFICATION" FOR HIS PLACEMENT ON THE NO FLY LIST IS UNCONSTITUTIONALLY VAGUE.**

Essential to the protections provided by the Due Process Clause is a requirement that a person receives fair notice of the conduct that would subject him to punishment and the severity of the penalty the government may impose.  *See Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020).  Where, as here, the potential "penalties threaten to inhibit the exercise of constitutionally protected rights, a more stringent vagueness and fair[]notice test should apply." *Id.*  (internal quotation marks omitted).  "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).  Further, "the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id.*  In the No Fly List context, when the plaintiff alleges that he lacked "fair notice," the court asks "whether a reasonable person would have known that the plaintiffs' alleged conduct fell within the No Fly List." *Kashem*, 841 F.3d at 371.

Mr. Moharam has, at the pleading stage, adequately alleged that he has been deprived of fair notice that his conduct would subject him to the consequences of the No Fly List.  The two-sentence unclassified summary referring to his travels in Yemen over a six-year time period makes it "impossible to ascertain what conduct Mr. Moharam has engaged in that the government considers relevant to the No Fly List criteria."  (Compl. ¶ 84)

The recent decision of the Court of Appeals in *Karem* highlights why it is inappropriate to decide, as a matter of law on a motion to dismiss, whether, as applied to Mr. Moharam, the criteria for inclusion on the No Fly List and the defendants' purported justification that Mr. Moharam should remain thereon are, or are not, unconstitutionally vague.  In *Karem*, a journalist

challenged a 30-day suspension of his "hard pass"—a special press credential that allowed him on-demand access to the White House—after an incident between the journalist and an attendee at a White House event.  The White House Press Secretary suspended Karem's pass for thirty days (which the Court of Appeals characterized as "an eon in today's news business") on the grounds that his conduct violated what was described only as "professional journalistic norms." The Court of Appeals affirmed the district court's grant of a preliminary injunction reinstating Karem's hard pass and ending his suspension.  960 F.3d at 659-660.

The *Karem* court concluded that prior communications from the White House had arguably put the White House press corps on notice of the rules governing their conduct at press conferences and that their access privileges could be suspended or revoked if they violated those rules.  However, the White House had explicitly refused to articulate standards for conduct in open areas of the White House (and outside of press conferences), appealing only to vague journalistic standards of professionalism.  *Id.* at 665.  Thus, "the law expressed prior to Karem's conduct failed to put him on notice" that "irreverent, caustic attempts at humor" in open areas of the White House might result in the magnitude of penalty that was imposed on him.  *Id.* at 665-666  (internal quotation marks omitted).

Here, Mr. Moharam has alleged, as had the plaintiff in *Karem*, that "the law expressed" prior to his conduct failed to put him on notice that his conduct may result in a total ban on air travel.  The only basis that defendants have provided to Mr. Moharam as the purported justification for his placement on the No Fly List is his travel to Yemen—where Mr. Moharam was born, lived during his early life, and still has family—throughout a six-year period from

2011 to 2017, and unidentified "activities" during that time.  (Compl. ¶ 66)[15]  But traveling to

Yemen and engaging in "activities" there do not fall within the scope of any of the criteria that

defendants have articulated as justifying placement on the No Fly List.  (Compl. ¶¶ 22-23)

Accordingly, Mr. Moharam could not have been on notice that as a result of his travel, the

government might completely and indefinitely ban him from traveling by air, essentially making

it impossible for him to travel abroad.

Defendants argue that Mr. Moharam's vagueness claim should be dismissed because the

criteria for inclusion on the No Fly List Criteria, as described in the Watchlisting Overview, "are

not unconstitutionally vague."  (Mem. at 26)  It may be true that the general public is on

reasonable notice that engaging in violent acts of terrorism would result in a person being placed

on the No Fly List.  *See Latif v. Lynch*, No. 3:10-CV-00750-BR, 2016 WL 1239925, at *12 (D.

Or. Mar. 28, 2016).  But, importantly here, the government has not identified any "violent acts of

extremism" by Mr. Moharam or, indeed, any other actions by Mr. Moharam that could fairly be

said to be to fall within the criteria as written.[16]  And Mr. Moharam has specifically pleaded that

---

[15] Defendants, in correspondence to Mr. Moharam, asserted that Mr. Moharam is "an individual who represents a threat of engaging in or conducting a violent act of terrorism and [is] operationally capable of doing so" (Compl. Ex. B) and who "may be a threat to civil aviation or national security" (Compl. Ex. A)  But these are merely the government's *conclusions* that parrot the relevant legal standards.

[16] According to the Watchlisting Overview, in order for a nomination to the No Fly List to be accepted by the TSC, there must be reasonable suspicion that the individual poses a threat of: (1) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft; (2) committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; (3) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations, U.S. ships, U.S aircraft, or other auxiliary craft owned or leased by the U.S. Government.  The Overview also contains a catch-all provision, permitting nomination to the No Fly List when an agency determines an individual

---

he "is not, and has never been, a threat to national security" and "does not pose any threat of committing, engaging in, or conducting any act of terrorism."  (Compl. ¶ 49)  Thus, Mr. Moharam has never received any notice that the only conduct of which he has been informed—travel to Yemen and unspecified "activities"—would subject him to government penalties that infringe upon his fundamental liberty interest in travel.

To the extent that defendants argue that the two-sentence, unclassified summary provided to Mr. Moharam was "constitutionally sufficient" (Mem. at 27), that assertion requires this court to make a factual determination that is not appropriate at the motion to dismiss stage. Defendants assert that because Mr. Moharam "twice submitted substantive responses containing additional information about his travel to Yemen and his experiences at a school in Yemen . . . he comprehends the general topic of the Government's concerns."  (*Id*.)  But the government's assertion about what Mr. Moharam knows is merely an ipse dixit contravention of the allegations in the complaint, which cannot be the basis for a motion to dismiss.  Instead, Mr. Moharam has been attempting to prove a negative—that he never engaged in terrorism—all while defendants have completely withheld from him any meaningful information about why he was placed on the No Fly List.

The Ninth Circuit's analysis in *Kashem* highlights the Kafka-esque situation in which Mr. Moharam is mired and reinforces that it would be inappropriate to dispose of Mr. Moharam's vagueness challenge on a motion to dismiss.  Both the district court and the Ninth Circuit in *Kashem* relied on the defendants' in camera filings to determine on summary judgment that, as

---

poses a threat of engaging in or conducting a violent act of terrorism and is operationally capable of doing so.

applied to each of the plaintiffs, the criteria for inclusion on the No Fly List were not impermissibly vague; the courts were "persuaded that each of *these plaintiffs* had fair notice that *his conduct* would raise suspicion under the criteria."  *Id.* at 373 (emphasis in the original).[17] Defendants here are arguing that not only were they justified in failing to provide any meaningful notice to Mr. Moharam of the reasons for his placement on the No Fly List, but they can hide behind the general No Fly List criteria to escape judicial review of any purportedly sensitive documents or information in camera that provide the actual basis for why defendants placed Mr. Moharam on the List.  The court should reject that ploy.

## IV.   WHETHER DEFENDANTS' ACTIONS WERE ARBITRARY AND CAPRICIOUS IS A QUESTION OF FACT AND CANNOT BE RESOLVED ON A MOTION TO DISMISS.

Challenges to agency action brought under the APA are reviewed under the "arbitrary and capricious standard."  *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 16 (D.C. Cir. 1998) (internal quotation marks omitted).  The court is to "judge the propriety of [an agency's] actions solely by the grounds invoked by the agency," and may not "accept . . . counsel's *post hoc* rationalizations for agency action."  *AFGE v. Fed. Labor Rels. Auth.*, 2022 U.S. App. LEXIS 2639, at *15 (D.C. Cir. Jan. 28, 2022).  Here, defendants concede that Mr. Moharam's APA claim is "largely coextensive" with his procedural due process claim.  (Mem. at 31)  Thus, "to the extent the procedural due process claim[] survive[s] . . . so too do[es] [his] APA claim[]."  *Khaled El Ali*, 473 F. Supp. 3d at 515; *Kovac*, 363 F. Supp. 3d at 759 ("For the same reasons previously discussed in the court's procedural due process analysis, [the court] concludes that Plaintiffs'

---

[17] *Latif*, NO. 3:10-CV-00750-BR—a decision by district court in proceedings that were ultimately heard by the Ninth Circuit in *Kashem*—also relied on by the government, is also distinguishable because the court there addressed what was essentially a vagueness challenge to the criteria on their face, not as they were applied.

factual allegations make plausible their claim that Defendants' actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law").  Accordingly, the Court should deny defendants' motion to dismiss Mr. Moharam's APA claims.

Defendants separately argue that the Court can dismiss Mr. Moharam's APA claims because "the adequacy of the redress process has a rational basis."  (Mem. at 32)  But in order to survive a challenge under the APA, the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" and the court must consider whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs Assn of U.S. v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 30, 31 (1983). Here, Mr. Moharam sufficiently pleaded that any explanation that any defendant has provided to date is not "satisfactory" (Compl. ¶¶ 66-67) because the government has provided only a cursory and vague explanation for its placement of Mr. Moharam on the No Fly List.  This is not enough for the court to find that there is a "rational connection" between the facts the government purports to have about Mr. Moharam and its choice to place him on the No Fly List.  *See AFGE*, 2022 U.S. App. LEXIS 2639 at *16-21 (challenged three-paragraph policy statement was arbitrary and capricious because, among things, it was produced by agency's "drive-by procedure and conclusory reasoning" and was based on an unsupported factual premise). Regardless, the court must accept Mr. Moharam's allegations as true on a motion to dismiss and should not make a factual determination that there was a "rational basis" for defendants to place him on the No Fly List or that defendants' decision was not clear error.  *See Kovac*, 363 F. Supp. 3d at 759.

Finally, defendants' argument that Mr. Moharam's APA claim should be dismissed

because review of any final order made by the TSA Administrator may be available to Mr. Moharam in the Court of Appeals (Mem. at 32) fails for two reasons.  **First**, defendants have not made the requisite showing of contrary legislative intent to preclude APA review.  When construing the APA, a court is given the APA a "hospitable interpretation such that only upon a showing of clear and convincing evidence of contrary legislative intent should the courts restrict access to judicial review."  *El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).  Defendants cannot make such a showing here because, as set forth above, Section 46110 does not apply to challenges concerning the TSC's role placing citizens on the No Fly List.  *See* Section I, *supra*.

Second, review by a court of appeals pursuant to Section 46110 is not "adequate alternative relief," as that phrase is understood.  Importantly, review pursuant to Section 46110 by a court of appeals is limited.  *See* 49 U.S.C. § 46110(c) (factual findings by the TSA Administrator are "conclusive" if supported by substantial evidence).  In *Garcia v. Vilsack*, relied on by defendants, the D.C. Circuit held that an alternative remedy may be adequate if it offers relief of the "same genre." 563 F.3d 519, 522 (D.C. Cir. 2009).  The Court of Appeals discussed two examples of such adequate alternative relief:  (1) "where the statute itself affords an opportunity for *de novo* district-court review of the agency action" (*id.* at 522-23) and (2) "where there is a private cause of action against a third party otherwise subject to agency action."  *Id.* at 523; *see also El Rio*, 396 F.3d at 1270 (same).  Neither circumstance is present here.  The limited review provided pursuant to Section 46110 is not *de novo*, and dictates that the factual findings of the TSA Administrator are conclusive when supported.  Nor does Section 46110 provide for any "private cause of action against a third party otherwise subject to agency action" that could provide relief.

34

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction or failure to state a claim, or in the alternative, to stay pending resolution of the DHS TRIP process, should be denied in its entirety.

35

Dated:          March 1, 2022                    Respectfully submitted,


By:     */s/Robert S. Litt*
        Robert S. Litt (D.C. Bar No. 312470)
        MORRISON & FOERSTER LLP
        2100 L Street, NW
        Suite 900
        Washington, D.C. 20006
        Telephone: (202) 887-1588
        Email:  rlitt@mofo.com

        Adam J. Hunt (pursuant to LCvR 83.2(g))
        Janie C. Buckley (pursuant to LCvR 83.2(g))
        MORRISON & FOERSTER LLP
        250 W. 55th St.
        New York, NY 10019
        Telephone: (212) 468-8000
        Email:  adamhunt@mofo.com
                jbuckley@mofo.com

        -and-


        **CLEAR PROJECT**
         **MAIN STREET LEGAL SERVICES, INC.**

        */s/ Ramzi Kassem*
        Ramzi Kassem (pursuant to LCvR 83.2(g))
        Naz Ahmad (pursuant to LCvR 83.2(g))
        CUNY School of Law
        2 Court Square
        Long Island City, NY 11101
        T: (718) 340-4558
        F: (718) 340-4478
        Email: ramzi.kassem@law.cuny.edu
                naz.ahmad@law.cuny.edu

        *Counsel for Plaintiff Fahmi Ahmed Moharam*

ny-2322228