**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
Fahmi Ahmed MOHARAM,                      )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Case No. 21-cv-2607 (JDB)
                                          )
FEDERAL BUREAU OF INVESTIGATION;          )
TERRORIST SCREENING CENTER; *et al.*,     )
                                          )
                                          )
        Defendants.                       )
_____)

**REPLY MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.      THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS. ..................... 1

    A.      The Court of Appeals has Exclusive Jurisdiction Over Plaintiff's Claims. ........... 1

    B.      Plaintiff's Claims Are Not Ripe. .......................................................................... 6

II.     PLAINTIFF ALSO FAILS TO STATE A CLAIM. .....................................................10

    A.      Count I (Procedural Due Process) Should Be Dismissed. ...................................10

    1.      Plaintiff Has Not Been Deprived of a Protected Liberty Interest. ............10

    2.      DHS TRIP Provides Constitutionally Adequate Process. .......................11

    B.      Count II (Vagueness) Should Be Dismissed. .....................................................15

    C.      Count III (Substantive Due Process) Should Be Dismissed. ...............................18

    D.      Count IV (APA) Should Be Dismissed. .............................................................21

III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS MATTER
    PENDING RESOLUTION OF THE DHS TRIP PROCESS. .......................................24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

underline>Cases

*Albright v. Oliver,*
  510 U.S. 266 (1994) ........................................................................20

*Al Haramain Islamic Found., Inc. v. U. S. Dep't of Treasury,*
  686 F.3d 965 (9th Cir. 2011) *as amended* (Feb. 27, 2012) ...................13

*Am. Bioscience, Inc. v. Thompson,*
  269 F.3d 1077 (D.C. Cir. 2001) ........................................................23

*Americopters, LLC v. FAA,*
  441 F.3d 726 (9th Cir. 2006) ............................................................22

*Amerijet Int'l, Inc. v. DHS,*
  43 F. Supp. 3d 4 (D.D.C. 2014) ......................................................... 2

*Bell v. Ohio State Univ.,*
  351 F.3d 240 (6th Cir. 2003) ............................................................18

*Bennett v. Spear,*
  520 U.S. 154 (1997) ........................................................................21

*Blitz v. Napolitano,*
  700 F.3d 733 (4th Cir. 2012) ............................................................ 3

*Bloch v. Exec. Off. of the President,*
  164 F. Supp. 3d 841 (E.D. Va. 2016) ................................................11

*Block v. North Dakota ex rel. Board of Univ. and Sch. Lands,*
  461 U.S. 273 (1983) ........................................................................23

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996) ........................................................................17

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) ........................................................................23

*Brown v. Cooke,*
  362 F. App'x 897 (10th Cir. 2010) ....................................................18

*Butte Cnty., Cal. v. Hogen,*
  613 F.3d 190 (D.C. Cir. 2010) ..........................................................23

*Califano v. Aznavorian,*
  439 U.S. 170 (1978) ...................................................................10, 19

*Califano v. Torres,*
   435 U.S. 1 (1978) .................................................................................................10

*Camp v. Pitts,*
   411 U.S. 138 (1973) .............................................................................................23

*CIA v. Sims,*
   471 U.S. 159 (1985) .............................................................................................13

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532 (1985) .............................................................................................14

*Coates v. City of Cincinnati,*
   402 U.S. 611 (1971) .......................................................................................15, 16

*Cobell v. Norton,*
   226 F.R.D. 67 (D.D.C. 2005) ...............................................................................14

*Coley v. Comm'r of Soc. Sec.,*
   771 F. App'x 913 (11th Cir. 2019) .......................................................................15

*Cramer v. Skinner,*
   931 F.2d 1020 (5th Cir. 1991) .............................................................................10

*CSX Transp., Inc. v. McBride,*
   131 S. Ct. 2630 (2011) ...........................................................................................2

*Ctr. Art Galleries-Hawaii, Inc. v. United States,*
   875 F.2d 747 (9th Cir. 1989) ...............................................................................14

*Darby v. Cisneros,*
   509 U.S. 137 (1993) ...............................................................................................7

*Dearth v. Lynch,*
   791 F.3d 32 (D.C. Cir. 2015) ...............................................................................20

*Dep't of Navy v. Egan,*
   484 U.S. 518  (1988) .............................................................................................13

*DiCola v. FDA,*
   77 F.3d 504 (D.C. Cir. 1996) ...............................................................................15

*Ege v. DHS,*
   784 F.3d 791 (D.C. Cir. 2015) ...............................................................................5

*El Ali v. Barr,*
   473 F. Supp. 3d 479 (D. Md. 2020) .......................................................................8

*Elhady v. Piehota*,
    303 F. Supp. 3d 453 (E.D.Va. 2017) ...................................................................11

*English v. Dist. of Columbia*,
    815 F. Supp. 2d 254 (D.D.C. 2011) *aff'd*, 717 F.3d 968 (D.C. Cir. 2013) ..............11

*Eunique v. Powell*,
    302 F.3d 971 (9th Cir. 2002) .........................................................................19

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
    244 F.3d 1128 (9th Cir. 2001) ......................................................................14

*Fares v. Smith*,
    901 F.3d 315 (D.C. Cir. 2018) ........................................................................5

*FDIC v. Mallen*,
    486 U.S. 230 (1988) .....................................................................................14

*Freedom to Travel Campaign v. Newcomb*,
    82 F.3d 1431 (9th Cir. 1996) ........................................................................20

*Freeman United Coal Mining. Co v. Fed. Mine Safety & Health Rev. Comm'n*,
    108 F.3d 358 (D.C. Cir. 1997) ......................................................................16

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ......................................................................23

*General Dynamics Corp. v. United States*,
    563 U.S. 478 (2011) .....................................................................................15

*Gilmore v. Gonzales*,
    435 F.3d 1125 ...............................................................................................3

*Gonzalez-Fuentes v. Molina*,
    607 F.3d 864 (1st Cir. 2010) ........................................................................18

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .....................................................................................16

*Haig v. Agee*,
    453 U.S. 280 (1981) .......................................................................10, 19, 20

*Heartwood v. U.S. EPA*,
    Civ. A. No. 05-535(RBW), 2006 WL 8449556 (D.D.C. Mar. 22, 2006) ..............24

*Hulley Enters. Ltd. v. Russian Fed'n.*,
    211 F. Supp. 3d 269 (D.D.C. 2016) ..............................................................24

*Jicarilla Apache Nation v. U.S. Dep't of Interior*,
648 F. Supp. 2d 140 (D.D.C. 2009) ..............................................................21, 22

*Jifry v. FAA*,
370 F.3d 1174 (D.C. Cir. 2004) ..........................................................................13

*John Doe, Inc. v. DEA*,
484 F.3d 561 (D.C. Cir. 2007) ............................................................................ 4

*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) ............................................................................17

*Kashem v. Barr*,
941 F.3d 358 (9th Cir. 2019) ...................................................................3, 13, 16

*Kelley v. Dist. of Columbia*,
893 F. Supp. 2d 115 (D.D.C. 2012) .....................................................................11

*Kent v. Dulles*,
357 U.S. 116 (1958)...........................................................................................11

*Kerry v. Din*,
576 U.S. 86 (2015).............................................................................................10

*Kovac v. Wray*,
363 F. Supp. 3d 721 (N.D. Tex. 2019) ............................................................9, 11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)...........................................................................................24

*Latif v. Lynch*,
Civ. A. No. 3:10-00750-BR,  2016 WL 1239925  (D. Or. Mar. 28, 2016) *aff'd sub nom,*
*Kashem*, 941 F.3d at 358 (9th Cir. 2019)..........................................................16

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857) (9th Cir. 1979) .............................................................................24

*Long v. Barr*,
451 F. Supp. 3d 507 (E.D. Va. 2020) .................................................................4, 9

*Magassa v. Wolf*,
545 F. Supp. 3d 898 (W.D. Wash. 2021) *appeal filed*,
Civ. A. No. 21-35700 (9th Cir. 2021) ..................................................................22

*Maniar v. Wolf*,
Civ. A. No. 18-1362 (RDM), 2020 WL 1821113 (D.D.C. Apr. 10, 2020) ............. 5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ................................................................................................22, 23

*Mistretta v. U.S.*,
   488 U.S. 361 (1989) ........................................................................................................11

*Mohamed v. Holder*,
   266 F. Supp. 3d 868 (E.D. Va. 2017) .............................................................................20

*Mokdad v. Lynch*,
   804 F.3d 807 (6th Cir. 2015) ........................................................................................... 4

*Muhammad v. Kelly*,
   2008 WL 4360996 (E.D. Va. Sept. 24, 2008) .................................................................16

*Ohio Ass'n of Cmty. Action Agencies* v. *FERC*,
   654 F.2d 811 (D.C. Cir. 1981) ........................................................................................ 2

*Olenga v. Gacki*,
   507 F. Supp. 3d 260 (D.D.C. 2020) ................................................................................ 5

*Panama Refining Co. v. Ryan*,
   293 U.S. 388(1935) ........................................................................................................11

*Pinnacle Armor, Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011) ..........................................................................................14

*Reno v. Flores*,
   507 U.S. 292, (1993)..................................................................................................18, 19

*Retfalvi v. U.S.*,
   335 F. Supp. 3d 791 (E.D.N.C. 2018) *aff'd* 930 F. 3d 600 (4th Cir. 2019) ..................11

*Schriro v. Landrigan*,
   550 U.S. 465 (2007)........................................................................................................24

*Schweiker v. McClure*,
   456 U.S. 188 (1982)........................................................................................................15

*Shearson v. Holder*,
   725 F.3d 588 (6th Cir. 2013) ........................................................................................... 7

*Slovinec v. Georgetown Univ.*,
   268 F. Supp. 3d 55 (D.D.C. 2017) *aff'd*, Civ. A. No. 17-7122,
   2018 WL 1052650 (D.C. Cir. Jan. 26, 2018) ................................................................11

*Suburban O'Hare Comm'n*,
   787 F.2d 186 (7th Cir. 1986) .......................................................................................... 2

*Sw. Airlines Co. v. U.S. Dep't of Transp.,*
 832 F.3d 270 (D.C. Cir. 2016) .................................................................21

*Sylvia Dev. Corp. v. Calvert Cnty.,*
 48 F.3d 810 (4th Cir. 1995) ....................................................................18

*Tenn. Secondary Sch. Athletic Ass'n v. Brentwood, Acad.,*
 551 U.S. 291 (2007).................................................................................. 7

*Town of Southold v. Town of South Hampton,*
 477 F.3d 38 (2d Cir. 2007) .....................................................................10

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.,*
 758 F.3d 296 (D.C. Cir. 2014) .............................................................9, 13

*United States v. Abdi,*
 498 F. Supp. 2d 1048 (S.D. Ohio 2007) ................................................16

*United States v. Bronstein,*
 849 F.3d 1101 (D.C. Cir. 2017) ..............................................................15

*United States v. Rood,*
 281 F.3d 353 (2d Cir. 2002) .................................................................... 2

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
 455 U.S. 489 (1982)..........................................................................15, 16

*Washington v. Glucksberg,*
 521 U.S. 702 (1997).................................................................................19

*Wayte v. United States,*
 470 U.S. 598 (1985).................................................................................20

*Wells v. Apfel,*
 234 F.3d 1271 (6th Cir. 2000) ................................................................15

*Zinermon v. Burch,*
 494 U.S. 113 (1990).................................................................................18

**Statutes**

5 U.S.C. § 702 ...............................................................................................22

5 U.S.C. § 704 .........................................................................................21, 22

49 U.S.C. § 44903 ......................................................................................... 2

49 U.S.C. § 46110(a) ..................................................................................1, 2

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(5)(A)(ii)....................................................................................13

Fed. R. Civ. P. 12(b)(6) ............................................................................................10

## INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss fails to establish that the Court has jurisdiction over his challenge to either his No Fly List placement, or to the relevant DHS TRIP and TSA policies. Further, to the extent, *arguendo*, that the Court finds that it has jurisdiction, the overwhelming weight of authority in the watchlisting area favors dismissal of his constitutional and statutory challenges. The Court should therefore dismiss Plaintiff's Complaint in its entirety.

Alternatively, the Court should stay this action pending final adjudication of Plaintiff's DHS TRIP application. When Defendants filed their motion to dismiss, Plaintiff had—only six business days prior—submitted a lengthy and substantive supplement to his DHS TRIP application. After having had an opportunity to begin its review of Plaintiff's supplemental materials, TRIP now estimates that the TSA will likely make a final decision to remove Plaintiff from the No Fly List, maintain Plaintiff on that list, or remand the case back to TSC with a request for additional information or clarification within 90 days of this filing—*i.e.*, on or before June 27, 2022. In light of the complexity of the relevant administrative process, the weight of the issues at stake, and Plaintiff's own affirmative role in delaying the ultimate resolution of his DHS TRIP complaint, this amount of time is reasonable, and will not meaningfully delay these proceedings. And, in light of the substantial (and potentially dispositive) impact that TSA's final decision will have on the claims herein presented, a stay of these proceedings pending the imminent final resolution of Plaintiff's DHS TRIP application is amply warranted.

## ARGUMENT

### I.   THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS.

#### A.  The Court of Appeals Has Exclusive Jurisdiction over Plaintiff's Claims.

Section 46110 broadly confers exclusive jurisdiction in the court of appeals over any order issued "in whole *or in part*" by TSA pursuant to its statutory authorities. 49 U.S.C. § 46110(a) (emphasis added). That statutory language is "as broad as could be framed." *CSX*

*Transp., Inc.* v. *McBride*, 131 S. Ct. 2630, 2636 (2011).[1] Plaintiff cannot evade the jurisdictional requirements of Section 46110 by failing to complete the very procedures he purports to challenge and thus avoiding a final agency decision from TSA.

Plaintiff argues primarily that he has not yet received a final order from TSA and therefore cannot bring suit under Section 46110. *See* Plaintiff's Opposition (Opp.), ECF No. 22, 6-8. Plaintiff has not yet received a final order, of course, because he elected to bring this suit prior to completing the DHS TRIP process (and indeed, prior to even responding substantively to the letter providing the basis for his placement). But he does not dispute that the procedures he challenges are TSA procedures; that these procedures are in progress and will culminate in a final TSA order; that this order is reviewable in an appropriate Court of Appeals; or that such judicial review is inclusive of the adequacy of the process provided. And looking to "the gravamen" of Plaintiff's Complaint, *see Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 16 (D.D.C. 2014), this case challenges Plaintiff's "placement on the No Fly List without," allegedly, the provision of "adequate notice and . . . a meaningful opportunity for redress." Compl. ¶ 1. TSA will ultimately makes a final determination as to Plaintiff's *placement*, and Congress also charged TSA with *redress*. *See* 49 U.S.C. § 44903(j)(2)(C)(iii)(I) (directing TSA to establish a redress procedure); *see also id.* §§ 44903(j)(2)(G)(i), 44926(a). Thus, Plaintiff's claims fundamentally challenge a process and a decision over which TSA has ultimate control.[2]

Plaintiff is therefore incorrect that the Court of Appeals would "not be able to provide relief" in an action against TSA. Opp. 7. While Plaintiff's claims are not yet ripe, they soon will

---

[1] *Cf. United States* v. *Rood*, 281 F.3d 353, 356 (2d Cir. 2002) (referring to "broad" language of "in whole or in part"); *Ohio Ass'n of Cmty. Action Agencies* v. *FERC*, 654 F.2d 811, 818 (D.C. Cir. 1981) ("the phrase[] 'in whole or in part'" confers "broad discretion"); *Suburban O'Hare Comm'n*, 787 F.2d 186, 192-93 (7th Cir. 1986) ("If a decision of an administrative agency is based, *in substantial part*, on a statutory provision providing for exclusive review by a court of appeals, then the entire proceeding must be reviewed by a court of appeals.") (emphasis added).

[2] Defendants have not argued that "any challenge Mr. Moharam brings at any point" is necessarily subject to Section 46110. *See* Opp. 7. But these claims, which focus on the procedural and substantive adequacy of an ongoing TSA process that results in a final decision by TSA, certainly are.

2

be, and the Court of Appeals can order effective relief. For example, when Plaintiff completes the process, the Court of Appeals can order further development of a factual record, *cf. Blitz v. Napolitano*, 700 F.3d 733, 741 (4th Cir. 2012); and review constitutional challenges to the process, *cf. Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n. 9 (9th Cir. 2006) (finding that the plaintiff's constitutional challenges were "inescapably intertwined with a review of the procedures and merits surrounding the ... order"), including consideration of whether any procedural errors were "harmless error" in light of the overall process. Indeed, there is at least one such petition for review of No Fly List placement currently pending in the D.C. Circuit. *See Busic v. TSA*, Case No. 20-1480 (D.C. Cir.) (raising constitutional and statutory claims regarding TSA Administrator decision, including challenges to the process).[3]

This Court, like the Ninth Circuit, should conclude that substantive challenges to No Fly List decisions belong in the Court of Appeals. *Kashem v. Barr*, 941 F.3d 358, 390 (9th Cir. 2019). And while the *Kashem* plaintiffs received final orders of TSA, that is because the district court ordered the Government to apply revised procedures before evaluating the adequacy of those new procedures or considering any substantive challenge on the merits.[4] If the ultimate TSA decision belongs in the Court of Appeals, so too does any interlocutory decision leading up to that process, and Plaintiff cannot evade Section 46110 by pleading only challenges to the interlocutory steps in the process, which are ultimately "inextricably intertwined" with a TSA

---

[3] Plaintiff relies on the unpublished (and therefore non-precedential) Fourth Circuit decision in *Mohamed*. *See* Opp. 7. But that decision predated the revision of the redress process, and thus does not assist his arguments. In any event, unlike Mr. Mohamed, Plaintiff has joined TSA as a party, directly challenges the redress procedures devised and applied by TSA, and has pursued redress through DHS TRIP.

[4] Plaintiff notes that the Government did not dispute district court jurisdiction over the procedural claims in *Kashem*. *See Kashem*, 941 F.3d at 391 n.16. The *Kashem* plaintiffs' original procedural claims originally arose under the prior version of DHS TRIP procedures, and the Ninth Circuit held that such claims belonged in the district court prior to revision. *Id.* at 367-69 (procedural history); *id.* at 390-91 (distinguishing old procedures for jurisdictional purposes). After the district court directed the application of revised procedures to each plaintiff in that case, it reviewed the adequacy of its own procedural remedy. Thus, *Kashem* arose in a unique procedural posture—where new procedures in which TSA was the final decision-maker were developed and tested. The Ninth Circuit thereafter upheld further review of No Fly List placement occurring in the Court of Appeals under Section 46110 as a TSA order.

order. *See* Defs.' Mot. to Dismiss (MTD), ECF No. 20, 13 (collecting cases). Plaintiff's desire to pursue piecemeal challenges to steps in the DHS TRIP process by filing suit before there is a final TSA order is both inconsistent with the intent of a channeling statute and contrary to general principles of administrative law and judicial efficiency. Plaintiff's theory that he can elect district court jurisdiction now despite the fact that his ultimate substantive claim will be resolved in a Court of Appeals "encourages forum shopping and encourages dissatisfied claimants to 'jump the gun' by going directly to the district court to develop their case instead of exhausting their administrative remedies before the agency," a result that the D.C. Circuit has abjured in analogous situations. *Cf. John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007).

Defendants previously explained that challenges to these ongoing TSA procedures belong in a Court of Appeals because Congress statutorily charged TSA with redress, and the procedures are implemented by TSA pursuant to explicit statutory authority. *See* MTD 14-15; *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015). Plaintiff responds, correctly, that *Mokdad* did not resolve the question under Section 46110, instead holding that TSA was a necessary party. Opp. 8-9. But *Mokdad* made clear that such procedural claims are properly claims against TSA, *id.* at 811, and challenges to TSA orders must be brought in the Court of Appeals.[5] Plaintiff offers no substantive rejoinder to either *Mokdad*'s reasoning or the conclusion that jurisdiction therefore necessarily lies in the Court of Appeals. *See also Long v. Barr*, 451 F. Supp. 3d 507, 529 (E.D. Va. 2020) (directing as-applied procedural and substantive challenges to No Fly List claims to the Court of Appeals).

---

[5] In *Mokdad*, the Sixth Circuit distinguished between procedural challenges to redress and substantive challenges to placement. *See generally* 804 F.3d 807. *Mokdad* separately rejected the Government's argument that *substantive* challenges to watchlist placement belonged in the Court of Appeals, on the ground that such claims were claims against TSC. *Id.* at 812-15. But that aspect of the *Mokdad* decision concerned the prior redress process—not the revised No Fly process which, as the Ninth Circuit recognized in *Kashem*, results in a final TSA order. *See also* MTD 16. Thus, *Mokdad* supports the Government's argument that procedural challenges are properly brought in the Court of Appeals, and does not undermine the Government's position that substantive challenges to No Fly List placement— following the revised redress process—are appropriately brought in the Court of Appeals.

Plaintiff argues that *Ege v. DHS*, 784 F.3d 791 (D.C. Cir. 2015) "is fatal to defendants' arguments because the TSC determines what information to provide during the DHS TRIP process and is a key actor in making a determination about a person's continued placement on the No Fly List." Opp. 9-10. Initially, *Ege*, as Plaintiff concedes, was based on the prior version of DHS TRIP. *See* MTD 14. Moreover, as the Acting DHS TRIP Director explains, although TSC "authorizes" the release of information in the course of the redress process, TSA conducts a legal and substantive review of the proposed summary and makes changes, provides the updated version to agencies for review and comment, and prepares the notice letter to the requester. *See* Mungaray Decl. ¶¶ 18-20.[6] Thus, Plaintiff's assertion that only TSC decides what information is released to a requester is incorrect. More fundamentally, Plaintiff is not challenging an agency decision to withhold information in the abstract; Plaintiff is arguing that he has inadequate notice and opportunity to be heard *with respect to his placement on the No Fly List. See* Compl. ¶¶ 79, 84.[7] TSA controls that process, and if an appropriate court finds notice inadequate, it can order TSA to provide additional notice or to de-list the requestor.

Plaintiff relies heavily on *Maniar v. Wolf*, Civ. A. No. 18-1362 (RDM), 2020 WL 1821113, at *4 (D.D.C. Apr. 10, 2020), where the district court found it could not conclude on the public record to what extent TSA was the relevant decisionmaker. Here, unlike in *Maniar*, the Court has the benefit of the Mungaray Declaration (describing the DHS TRIP process), as well as the Herring Declaration (authenticating the current version of the Watchlisting Overview

---

[6] A process whereby other agencies' information is used in the course of a new agency action and requires authorization from an originating or controlling agency is quite normal in administrative law. In one analogous example, the Office of Foreign Assets Control at the Department of the Treasury routinely relies upon sensitive intelligence and law enforcement information generated by other government agencies when making decisions about targeted economic sanctions, information which may be reviewed ex parte by a court but not disclosed to the plaintiff. *See, e.g., Fares v. Smith*, 901 F.3d 315, 322 (D.C. Cir. 2018); *Olenga v. Gacki*, 507 F. Supp. 3d 260, 276 (D.D.C. 2020). The originating agencies still must authorize OFAC to use or disclose their information, but it does not follow the intelligence agencies therefore must be defendants in order for courts to decide whether OFAC has provided sufficient notice.

[7] The quintessentially as-applied nature of this claim—which lies at the heart of Plaintiff's Complaint— belies his contention that he brings "broad constitutional claims." *See* Opp. 8; Compl. ¶¶ 79, 84.

document). *Compare id.* (noting the absence of a declaration). The Herring Declaration establishes that the Overview Document is the result of an extensive interagency drafting process, and thus accurately reflects TSA's role as the final decisionmaker. Moreover, the Court can consider the Overview Document because it is specifically referenced in the Complaint and is properly the subject of judicial notice. *See* MTD 3 n.3. And independently, the Court can rely on the Mungaray Declaration, which also establishes that TSA has the ultimate relevant decision-making authority. Plaintiff suggests there is something suspect about the fact that TSC can still remove individuals from the No Fly List. There is not, and placement on the No Fly List is not a permanent decision in any event. In addition to the availability of the TSA redress process, the Terrorist Screening Dataset (TSDS) undergoes constant review and revision in response to new information. *See* DEX 1 at 2 ("The TSDB is continuously reviewed and updated."); *id.* at 6-7 (describing additional reviews). That names come off the No Fly List periodically outside the redress process as a result is good reason to think that the constant reviews are effective and meaningful, not proof that TSA is not a final decisionmaker with respect to redress.[8]

Accordingly, for all of these reasons, Plaintiff's claims are subject to review, if at all, in an appropriate Court of Appeals, and the Court should dismiss this action.

## B. Plaintiff's Claims Are Not Ripe.

The Court should also require Plaintiff to exhaust administrative remedies before bringing suit. First, Plaintiff's claims should be dismissed as unripe because he has not exhausted the procedures he purports to challenge. Although Plaintiff alleges that the DHS TRIP process is insufficient, he asks the Court to decide that question while he is *still receiving* the process he claims he is due, including consideration by an unbiased decisionmaker of his recent submissions. The decision to withhold or disclose particular information, for example, is just an interlocutory step in an ongoing process that does not itself determine legal rights or

---

[8] For similar reasons, it is both illogical and incorrect to suggest that the Government "conceded" the *Maniar* case when it removed the plaintiff from the No Fly List. *See* Opp. 9.

responsibilities, and is not currently fit for judicial review. TSA may ultimately maintain Plaintiff on or remove him from the No Fly List, or it may remand the case to TSC for additional information or clarification. If Plaintiff is removed from the No Fly List, all of his substantive and procedural claims are moot. Conversely, if he is maintained on the list, TSA will make a written statement of reasons—which would, necessarily, affect the Court's view of whether the process is sufficient. *See* Mungaray Decl. ¶¶ 7-10. Even if the Court ultimately finds an error, it would also need to evaluate whether any error was harmless in light of the final decision. *See, e.g., Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.,* 551 U.S. 291, 303 (2007). Thus, at a minimum, the procedural claims are unripe.

Second, the Court should require exhaustion as to all claims. Plaintiff concedes that exhaustion may be required as a matter of discretion as it was in *Shearson v. Holder,* 725 F.3d 588 (6th Cir. 2013), but argues that such discretion is not available over his APA claims in light of *Darby v. Cisneros,* 509 U.S. 137 (1993). To begin, *Darby* does not apply to claims brought outside the APA, and Plaintiff has brought both APA and constitutional claims. *See id.* at 153. So, even if Plaintiff were correct that *Darby* governed this case, his claims would be reduced to those he has properly stated under the APA. But *Darby* only holds that absent a separate exhaustion requirement, the APA provides for review of any final agency action, and in that case, agency regulations explicitly indicated that administrative appeals were optional. Here, it is clear that Congress intended for agencies to resolve claims of inappropriate denial of boarding based on one's alleged status on the No Fly List. Congress established and TSA implements an administrative process for the very type of allegations Plaintiff raises regarding the No Fly List, and permits review only of "final" orders. Accordingly, the Court should require exhaustion.

Third, the Court should exercise its discretion to require exhaustion as to all claims. Plaintiff argues that the Court cannot do so because—as of the date when they filed their Motion to Dismiss—Defendants had not provided an estimated date of completion. Opp. 12-13. But at

7

that time, DHS TRIP had just received a lengthy substantive response from Plaintiff, which included a purported expert declaration, and which Defendants explained required additional review and interagency consideration. *See* Mungaray Decl. ¶ 28 & Ex. F. While that process is ongoing, TSA is now able to estimate a likely date of completion—90 days from this filing. Regardless, the absence of a hard regulatory deadline is not a basis for excusing exhaustion.

Plaintiff also argues that exhaustion would be futile in light of Defendants' refusal to provide him more information so far in the ongoing process. *See* Opp. 12-13. It bears repeating that this is not a Freedom of Information Act case about access to information; Plaintiff claims that he has been placed on a list without adequate process. Accordingly, exhaustion is not futile because DHS TRIP proceedings may result in his removal from the list. Plaintiff will also necessarily receive additional process in the coming weeks, including consideration by TSA of his submission and, if he is maintained on the No Fly List, a written notice of the reasons. And to the extent Plaintiff is relying on his demand for access to classified information, it is not evidence of "bias" that the agency properly relied on repeated holdings by the D.C. Circuit that due process does not require such access. *See* § II.A.2, *infra*.

Plaintiff also argues that the Court should not require exhaustion because he is challenging the adequacy of the procedures. Opp. 13. But logically, that claim weighs *in favor of* exhaustion, not against. The Court should see how the procedures are applied before determining if they are fair, as most courts reviewing No Fly List claims have done. *See* MTD 17-18. Plaintiff further cites several cases in which courts found potential flaws in the DHS TRIP process and excused exhaustion, *see* Opp. 14, but most of those cases do not address the 2015 revisions—and the two that do are readily distinguishable. First, *El Ali v. Barr* relied solely on the allegations in the complaint to excuse exhaustion because some No Fly List petitions fall into a "black hole." 473 F. Supp. 3d 479, 506 (D. Md. 2020). Defendants dispute that holding, but in any event this Court has a great deal more information before it, including evidence that Plaintiff's request

was—and still is—moving along. Defendants likewise disagree with the holding in *Kovac v. Wray*, 363 F. Supp. 3d 721, 747 (N.D. Tex. 2019) that exhaustion was not required because it would not address the purported constitutional injuries and would stymie prompt adjudication. On the contrary, DHS TRIP can fully resolve this Plaintiff's claims and serves the goal of prompt adjudication. If this Court were to rule on any of the pending challenges before a final DHS TRIP decision, it would need to evaluate the new agency decision when TSA issues the final order. Plaintiff is also much further along than the No Fly List plaintiff in *Kovac*, who had only been notified that he was on the No Fly List.[9]

Finally, the Court should dismiss a due process challenge to DHS TRIP because Plaintiff has failed to fully avail himself of the procedures available, and he therefore cannot plead deprivation of due process. MTD 19-20. At the time of the Complaint, Plaintiff had not even responded to the notice, and he cannot now do an end-run around the very process he is challenging. Plaintiff argues the rule from *Ralls Corp.* only applies to constitutionally adequate procedures; *See* Opp. 16-17 (discussing *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 n.18 (D.C. Cir. 2014). Defendants maintain that the procedures are constitutionally adequate, *see* § II.A.2, *infra*, but in any event, Plaintiff's reading of *Ralls* would allow the exception to swallow the rule. After all, a plaintiff raising a due process claim always alleges that the process is inadequate, and could thus always skip the procedures before challenging them. Plaintiff has not raised some facial challenge that the procedures are always inadequate; rather, he claims he does not have enough information to respond fully to the reasons for placement. Nor is there a "Catch-22." Going through the process does him no harm, may provide full or partial resolution of his claims, and will illuminate judicial review in an appropriate court.

---

[9] Plaintiff attempts to distinguish the numerous cases that have required completion of the DHS TRIP process, on the ground that these orders were directed at the Government. *See* Opp. 14 n.8. But Plaintiff does not contest that these courts did not review the DHS TRIP process until it was complete. *See also Long*, 451 F. Supp. 3d at 530, 542 (noting proceedings were stayed during completion of process).

## II.     PLAINTIFF ALSO FAILS TO STATE A CLAIM.

Alternatively, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6).

### A.  Count I (Procedural Due Process) Should Be Dismissed.

1.  <u>Plaintiff Has Not Been Deprived of a Protected Liberty Interest</u>.

A prerequisite for the advancement of any due process claim is the identification of a qualified protected property or liberty interest. *See Kerry v. Din*, 576 U.S. 86 (2015). Here, Plaintiff's denial of boarding on commercial aircraft does not suffice to allege a deprivation of the right to travel, for two reasons.

First, to the extent that Plaintiff's claim focuses on the right to interstate travel, there can be no plausible deprivation, because a traveler does not have a constitutional right to the most convenient form of travel, such as traveling by airplane as opposed to car. *See Town of Southold v. Town of South Hampton*, 477 F.3d 38, 54 (2d Cir. 2007); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991). And second, to the extent Plaintiff claims that the No Fly List interferes with international travel, the Supreme Court "has made it plain" that "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981) (emphasis in original); *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (emphasizing that the Supreme Court "has often pointed out the crucial difference between the freedom to travel internationally and the right of interstate travel"). Thus, "the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Aznavorian*, 439 U.S. at 176 (quoting *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978)); *see also Haig*, 453 U.S. at 307.

Here, Plaintiff has not alleged an inability to travel from one state to another, nor that he cannot travel internationally using less convenient means than a direct flight from the United States. Accordingly, regardless of whether Plaintiff frames his claim as grounded in the *right* to

interstate travel or in the *liberty interest* in international travel, he has not identified a deprivation of any a liberty interest sufficient to trigger a further procedural due process analysis.[10]

 2. DHS TRIP Provides Constitutionally Adequate Process.

Even assuming, *arguendo*, that Plaintiff has alleged the deprivation of a protected liberty interest, the DHS TRIP process provides constitutionally adequate process. "As courts have acknowledged, although due process … require[s] that the Government provide notice and some kind of opportunity to be heard before final deprivation of a [protected] interest, the nature of that notice and hearing is flexible." *English v. Dist. of Columbia*, 815 F. Supp. 2d 254, 264 (D.D.C. 2011) (Bates, J.), *aff'd*, 717 F.3d 968 (D.C. Cir. 2013) (internal citations omitted).

Plaintiff's primary contention is that the adequacy of the DHS TRIP procedures he has received—or, more accurately, remains in the midst of receiving—is a factual matter that cannot be resolved on a motion to dismiss. *See* Opp. 22. But contrary to Plaintiff's contention, there is nothing "inappropriate" about the resolution of a procedural due process claim at the pleadings stage. *Id.* While it is true that *Kashem* was ultimately resolved on summary judgment, courts routinely apply the *Mathews* framework and dismiss procedural due process claims at the Rule 12 stage,[11] and there is no reason why the Court cannot do the same here. More specifically, it is simply not the case that there are (as Plaintiff contends) "competing factual narratives" at play

---

[10] Plaintiff opaquely quotes *Kent v. Dulles*, 357 U.S. 116, 129 (1958), for the proposition that, where Congress delegates the authority to regulate the international travel of American citizens, "the standards" of the delegation "must be adequate to pass scrutiny by the accepted tests." Opp. 20; *see Kent*, 357 U.S. at 129 (citing, *inter alia, Panama Refining Co. v. Ryan* (1935). Given that Plaintiff does not purport to assert a non-delegation claim, the intended import of this citation is unclear. In any event, the statutory scheme underlying the Government's watchlisting program "'clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta v. U.S.*, 488 U.S. 361, 372-73 (1989); *see also* MTD 2-7 (describing this statutory scheme in detail); *Kovac*, 363 F. Supp. 3d at 761-62 (rejecting non-delegation challenge to this scheme); *Elhady v. Piehota*, 303 F. Supp. 3d 453, 467-68 (E.D. Va. 2017) (same).

[11] To cite but a few recent examples, *see, e.g.*, *English*, 815 F. Supp. 2d at 264 (Bates, J.); *Kelley v. Dist. of Columbia*, 893 F. Supp. 2d 115, 124 (D.D.C. 2012); *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 61 (D.D.C. 2017), *aff'd*, Civ. A. No. 17-7122, 2018 WL 1052650 (D.C. Cir. Jan. 26, 2018) (similar); *Retfalvi v. U.S.*, 335 F. Supp. 3d 791, 801 (E.D.N.C. 2018) *aff'd* 930 F. 3d 600 (4th Cir. 2019) (similar); *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 850 (E.D. Va. 2016) (similar).

here. Opp. 22. To the contrary, Defendants have appropriately submitted documentation demonstrating, in detail, the process that DHS TRIP has afforded Plaintiff to date. Most relevantly, this record includes (1) an unclassified summary informing Plaintiff that his inclusion on the No Fly List is the product of the Government's assessment that, based on his activities during extended and frequent travel to Yemen between 2011 and 2017, he is "an individual who represents a threat of engaging in or conducting a violent act of terrorism and [is] operationally capable of doing so," and (2) Plaintiff's own submissions to DHS TRIP, containing his substantive responses to the Government's confirmation of his No Fly List status, and the unclassified factual basis for the same, DEX 2 Exs. D, E, F. This documentation is properly subject to judicial notice, and thus may be considered by the Court in the instant procedural posture—and Plaintiff does not contend otherwise. *See* MTD n. 3.

As discussed at length in Defendants' opening memorandum, Plaintiff's DHS TRIP record amply demonstrates that Plaintiff does understand the Government's concern—and has availed himself of the opportunity afforded to him by DHS TRIP to be heard. *See* DEX 2, Ex. E (October 19, 2021 letter and accompanying affidavit, describing generally his travel to Yemen during the identified timeframe and denying any involvement with terrorism, including denials of specific types of terrorism involvement); DEX 2, Ex. F (January 7, 2022 letter and three accompanying affidavits: (1) a further affidavit from Plaintiff, describing in greater detail certain of his activities in Yemen during the relevant timeframe; (2) one from Plaintiff's spouse, and (3) one from a purported expert on Yemen). These lengthy and detailed submissions of information that Plaintiff contends should obviate or alleviate the Government's concerns—as communicated to Plaintiff in the unclassified summary—belie Plaintiff's contentions that he has been denied a constitutionally adequate process. And as there is no factual dispute as to the substance of either (1) the notice that Plaintiff has been provided, or the (2) the information he has submitted to

DHS TRIP in return, the record before the Court amply suffices to warrant dismissal of Plaintiff's as-applied procedural due process claim.

Beyond his insistence that further factual development is necessary for resolution of this claim, Plaintiff also argues that the DHS TRIP procedures are constitutionally infirm because they neither afforded his counsel with access to classified information supporting his No Fly List placement, nor involved a live hearing. *See* Opp. 24-25. Both of these contentions fail as a matter of law. Initially, under well-established separation of powers principles, decisions about who may access or use classified information and under what circumstances are committed to the Executive Branch and not subject to judicial review. *See Dep't of Navy v. Egan*, 484 U.S. 518 529-30 (1988); *CIA v. Sims*, 471 U.S. 159, 180 (1985) ("[I]t is the responsibility of the [Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether [to disclose sensitive information]."). Consistent with that established precedent, courts have regularly held that an agency's use of undisclosed classified information in the course of an administrative process does not run afoul of due process. *See, e.g., Al Haramain Islamic Found., Inc. v. U. S. Dep't of Treasury*, 686 F.3d 965, 990 (9th Cir. 2011), *as amended* (Feb. 27, 2012) (collecting cases); *Ralls Corp.*, 758 F.3d at 319 ("Due process does not require disclosure of *classified* information supporting official action.") (emphasis in original); *Jifry v. FAA*, 370 F.3d 1174, 1177-78 (D.C. Cir. 2004); *Kashem*, 941 F.3d at 380 (the government may satisfy due process by, for example, "provid[ing] an unclassified summary of the classified information");[12] *cf.* Fed. R. Civ. P. 26(b)(5)(A)(ii) ("privileged" information is not

_____

[12] The Government is not always able to provide unclassified summaries in the course of the enhanced DHS TRIP procedures applicable to U.S. persons who have been denied boarding and subsequently confirmed to be on the No Fly List—and does not concede that, in circumstances where no such summary is possible, due process is violated. *See* DEX 1 at 9 (explaining that when persons who qualify for these enhanced procedures request additional information regarding their status, DHS TRIP will provide them "where possible when [the] national security and law enforcement interests at stake are taken into account, an unclassified summary of information supporting the individual's No Fly List status"). Because Plaintiff was provided with an unclassified summary, the constitutional sufficiency of DHS TRIP in instances where no such summary is possible is not presented here.

generally available even in district-court actions). And again, notwithstanding these well-recognized limitations on the disclosure of classified information, Plaintiff was provided notice that he was considered a security threat and an unclassified summary of the reasons for that determination, and was given an opportunity to respond.

Second, Plaintiff's suggestion that a live hearing may be necessary to satisfy due process see Opp. 25, ignores numerous authorities recognizing that, pursuant to *Mathews* and its progeny, in-person hearings are not required in administrative civil proceedings. In the civil context, due process does not require "the full panoply" of trial-type protections afforded criminal defendants. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 (9th Cir. 2001). In particular, the law does not "require that [an] agency grant a formal hearing." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 717 (9th Cir. 2011); *Ctr. Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 754 (9th Cir. 1989) (finding that an evidentiary hearing was not required absent "a sufficient showing of what issues of fact would be resolved by an evidentiary hearing, and what evidence, in addition to that presented by affidavits, would be adduced by such a hearing"); *Cobell v. Norton,* 226 F.R.D. 67, 90 (D.D.C. 2005) ("The Court has afforded the parties the opportunity to be heard through their written submissions, which is sufficient to satisfy the [opportunity to be heard] requirement of Rule 37."); *cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985) ("The essential requirements of due process … are notice and an opportunity to respond … *either in person or in writing* ….") (emphasis added); *FDIC v. Mallen*, 486 U.S. 230, 247-48 (1988) (rejecting the argument that an agency "violates due process because it does not guarantee an opportunity to present oral testimony"); *see also* MTD 24-25 (collecting additional cases).[13]

---

[13] Although Plaintiff does not develop the argument, his Complaint also alleges that the purported lack of "an impartial arbiter in the DHS TRIP process" further supports his procedural due process claim. Compl. ¶ 72. To the extent that Plaintiff has not waived this argument, it likewise falls flat. "Although due process requires an impartial decision-maker in judicial and quasi-judicial proceedings," it is well-established that "the court must start from the presumption that administrative adjudicators are unbiased,

Indeed, live adversarial hearings would be particularly inappropriate in this context, because cross-examination would risk exposing protected national security information, such as the Government's use of protected sources and confidential informants. *Cf. General Dynamics Corp. v. United States*, 563 U.S. 478, 487 (2011) ("Every . . . question to a witness would risk further disclosure, since both sides have an incentive to probe up to the boundaries of state secrets. State secrets can also be indirectly disclosed."). And any such disclosures made in the course of a live hearing would carry risk compromising protected sources and methods, and thus harm the Government's ability to gather intelligence in the future.

Plaintiff's procedural due process claim should, accordingly, be dismissed.

**B.  Count II (Vagueness) Should Be Dismissed.**

Plaintiff's vagueness claim should also be dismissed because the No Fly List inclusion criteria are sufficiently clear. As Defendants have explained, the degree of precision that the Due Process Clause requires of statutes and regulations "depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "The Constitution is most demanding of a criminal statute that limits First Amendment rights." *DiCola v. FDA*, 77 F.3d 504, 508 (D.C. Cir. 1996). Conversely, courts afford "greater tolerance" to "enactments with civil rather than criminal penalties because the consequences of imprecision are less severe." *Hoffman Estates*, 455 U.S. at 498-99. "When interpreting a statutory [or regulatory] term, [courts] are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (quoting *Coates v. City of Cincinnati*, 402 U.S.

---

and that honesty and integrity exist among them. *Wells v. Apfel*, 234 F.3d 1271 (6th Cir. 2000) (citing, *inter alia*, *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982)). "The claimant may rebut this presumption by a showing of conflict of interest or some other specific reason for disqualification, but generalized assumptions are insufficient"—and "[t]he party asserting a disqualifying interest bears the ultimate burden of establishing that interest." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 920 (11th Cir. 2019). Plaintiff does not even attempt to satisfy this burden. *See* MTD 25.

611, 614 (1971)). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifies' 'no standard of conduct at all.'" *Id.*; *see also Freeman United Coal Mining. Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 108 F.3d 358, 362 (D.C. Cir. 1997) ("[R]egulations need not achieve 'mathematical certainty' or 'meticulous specificity,' and may instead embody 'flexibility and reasonable breadth.'") (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

The inclusion criteria for the No Fly List easily satisfy these standards. Initially, the No Fly List is civil in nature; thus, scrutiny under the vagueness doctrine is not rigorous. *See Hoffman Estates*, 455 U.S. at 498. But, in any event, the No Fly List criteria refer to individuals posing a threat of committing an act of domestic or international terrorism—as defined by federal statute—with respect to aircraft, the homeland, or U.S government facilities or personnel abroad. DEX 1 at 4; *see* MTD 26. As both the district court and the Ninth Circuit correctly recognized in the *Kashem* litigation, these criteria "are sufficiently specific that a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, would have fair warning of what the regulations require." *Freeman United Coal Min. Co.*, 108 F.3d at 362; *see Latif v. Lynch*, Civ. A. No. 3:10-00750-BR, 2016 WL 1239925, at *12 (D. Or. Mar. 28, 2016) (holding that "the violent acts of terrorism that underpin the criteria are well-defined and readily understandable"), *aff'd sub nom, Kashem*, 941 F.3d at 368; *accord United States v. Abdi*, 498 F. Supp. 2d 1048, 1066 (S.D. Ohio 2007) (rejecting vagueness challenge—under the more rigorous standard for criminal laws—to the federal terrorism statute referenced by the No Fly List inclusion criteria); *Muhammad v. Kelly*, 2008 WL 4360996 at *12 (E.D. Va. Sept. 24, 2008) (similar, for analogous state statute).

Plaintiff does not even attempt to elaborate on what, allegedly, is inexplicable about either the inclusion criteria or the federal terrorism statute that they reference—and, indeed, expressly acknowledges that "[i]t may be true that the general public is on reasonable notice that

engaging in violent acts of terrorism would result in a person being placed on the No Fly List." Opp. 30. Instead, Plaintiff misdirects much of his argument regarding the purported vagueness claim to a rehash of his demand—addressed above—that he be provided with more specific information about the *particular facts* supporting the Government's decision to place him on the No Fly List. *See* Opp. 29-30. While, for the reasons set forth at length in Defendants' opening brief, *see* MTD 27-28, as well as *supra* at 11-12, Plaintiff received sufficient factual notice of the specific reasons supporting his designation for the No Fly List, this question is conceptually distinct from the one relevant to the instant claim, *i.e.*, whether the inclusion criteria are, themselves, unconstitutionally vague.

Further, the primary case relied on by Plaintiff, *Karem v. Trump*, 960 F.3d 656 (D.C. Cir. 2020), is easily distinguishable. *Karem* involved a suit brought by a White House reporter whose press credential was revoked for an asserted failure to meet otherwise wholly undefined "professional journalistic norms." *Id.* at 665. Contrary to Plaintiff's synopsis, however, *Karem*'s finding that the reporter was likely to succeed on the merits of his claim was not premised on an actual finding that an expectation of comportment with "professional journalistic norms" was a facially deficient standard. Rather, the D.C. Circuit reasoned that *"[e]ven assuming"* that the plaintiff was on "some notice" of the White House's "behavioral expectations" for its press corps, the White House had "failed to put him on notice of '*the magnitude of the sanction* that [it] might impose' for his purported failure to heed any such expectations." *Id.* (quoting *BWM of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)) (emphases added). Of course, there is no dispute that the "magnitude of the sanction" that follows from placement on the No Fly List is abundantly clear from the name of the list itself. But even if the Court were to go beyond the actual holding of *Karem*, the minimal "standard" there simply bears no reasonable resemblance to the detailed, multi-pronged No Fly List inclusion criteria—which, again, expressly incorporate the federal terrorism statute that has itself survived vagueness challenges.

The vagueness claim should, accordingly, likewise be dismissed.

## C.  Count III (Substantive Due Process) Should Be Dismissed.

Plaintiff's substantive due process claim should also be dismissed. As Defendants have explained, substantive due process is a narrower concept than procedural due process, and thus covers only those actions "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Sylvia Dev. Corp. v. Calvert Cnty.,* 48 F.3d 810, 827 (4th Cir. 1995) (citation omitted); *see also Reno v. Flores*, 507 U.S. 292, 302, (1993) (Substantive due process "forbids the government to infringe certain "fundamental" liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.") (emphasis in original); *compare Zinermon v. Burch,* 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*") (emphasis in original) (citation omitted).

Due to these distinctions, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process," *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)—and it necessarily follows that, where a plaintiff fails to successfully allege a deprivation of a purportedly protected interest for *procedural* due process purpose, he cannot rely on that same interest to allege the deprivation of a fundamental right. *See, e.g., Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (notwithstanding the court's holding that plaintiff had demonstrated "a liberty interest … protected by procedural due process, it does not automatically follow that the same interest will be protected by its substantive sibling."); *Brown v. Cooke*, 362 F. App'x 897, 899 (10th Cir. 2010) (noting the impropriety of "inject[ing] the more demanding 'fundamental rights and liberties' analysis from the substantive due process sphere into the 'liberty interest' analysis that pertains to the

procedural due process inquiry."). Plaintiff's assertion that if his "procedural due process claim survives dismissal, his substantive due process claim[] should, as well," Opp. 26, thus has the analysis exactly backwards—and contrary to his unfounded assertion, Defendants make no such "conce[ssion]," *id*. Rather, where—for all of the reasons set forth in Defendants' opening memorandum, *see* MTD 20-22, and *supra* § II.A.1—Plaintiff has failed to allege any liberty interest protected by procedural due process, it follows, *a fortiori*, that nor can he demonstrate any right implicated by the much narrower doctrine of substantive due process.

But even assuming, *arguendo*, that the procedural due process claim survives, Plaintiff has not met his burden to demonstrate any liberty interest encompassed by substantive due process. Due to the heightened protection afforded substantive due process rights, the Supreme Court has required "a careful description of the asserted fundamental liberty interest," and a demonstration that the interest is "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that 'neither liberty nor justice would exist if [it was] sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *see also, e.g.*, *Reno*, 507 U.S. at 302 (the substantive due process "analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'").

Consistent with these principles—as well as the well-established rule that "the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment," *Aznavorian*, 439 U.S. at 176—courts have broadly rejected the proposition that the liberty interest in international travel is a fundamental right within the meaning of substantive due process. *See, e.g.*, *Eunique v. Powell*, 302 F.3d 971, 974 (9th Cir. 2002) (stating that "[g]iven the lesser importance of this freedom to travel abroad, the Government need only advance a rational, or at most an important, reason" for restricting international travel); *Haig*, 453 U.S. at 307 (holding that the international travel of American

citizens may properly "be regulated within the bounds of due process"); *Dearth v. Lynch*, 791 F.3d 32, 38 n.1 (D.C. Cir. 2015) (claimed violation of right to international travel "trigger[s] nothing more than rational-basis scrutiny"); *cf. Albright v. Oliver*, 510 U.S. 266, 272 (1994) (noting that, "for the most part," "[t]he protections of substantive due process" have been limited "to matters relating to marriage, family, procreation, and the right to bodily integrity.").

Aside from a sole, wholly conclusory assertion that "even under the rational basis standard, [D]efendants' unfounded placement of Mr. Moharam on the No Fly List cannot pass constitutional muster," Opp. 27, Plaintiff offers no argument that, absent the demonstration of a fundamental right—a burden he has not satisfied—his substantive due process claim survives. Rational basis review, of course, requires only that the Government "advance a rational, or at most an important, reason" for imposing the restriction at issue. *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996). That minimal standard is amply met here, where the Government indisputably has a compelling interest in protecting the national security and combatting terrorism—and Plaintiff does not contest that the maintenance and implementation of a No Fly List reasonably furthers that end. *See, e.g., Haig* 453 U.S. at 307 ("[N]o governmental interest is more compelling than the security of the Nation."); *Wayte v. United States*, 470 U.S. 598, 612 (1985) ("Unless a society has the capability and will to defend itself from the aggressions of others, constitutional protections of any sort have little meaning.").

In any event, even if (wholly *arguendo*) the Court were to identify a fundamental right here at stake—and, thus, apply strict scrutiny— Plaintiff's purported substantive due process claim *still* would fail on its face. *See Mohamed v. Holder*, 266 F. Supp. 3d 868, 883 (E.D. Va. 2017) (finding that the No Fly List is "necessary and sufficiently narrowly tailored to achieve a compelling government interest and therefore does not violate Plaintiff's substantive due process rights"). Again, Plaintiff has not alleged an inability to travel from one state to another. His placement on the No Fly List might plausibly be more of an inconvenience to his ability to travel

20

abroad, but any such inconvenience is dramatically outweighed by the harm to public safety that would result from allowing boarding to a person who counterterrorism officials have identified as representing a threat of terrorism. In short, the denial of boarding bears a close relationship to the ends of preventing terrorism, while also protecting valuable intelligence and law enforcement reporting that powers the watchlisting enterprise. For persons who have met the inclusion standard for the No Fly List, no less restrictive means are available to achieve those highly compelling ends (and more specifically, the protection of commercial aviation from potential terrorism)—nor does Plaintiff contend otherwise. His substantive due process claim fails.

### D.  Count IV (APA) Should Be Dismissed.

Finally, Plaintiff's APA claim also fails on its face, for several reasons.

First, as Plaintiff acknowledges, this claim is coextensive with his procedural due process claim. *See* Opp. 32 (confirming this characterization). The APA claim should, accordingly, be dismissed for the same reasons set forth in Section II.A, *supra*.

Second—and as Plaintiff himself has expressly conceded in his Opposition—he cannot satisfy the "finality" prerequisite to state a claim under the APA. 5 U.S.C. § 704. Whether there has been "'final agency action' within the meaning of the APA [is a] threshold question[]; if [this] requirement[ ] [is] not met, the action is not reviewable." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 648 F. Supp. 2d 140, 145 (D.D.C. 2009). Agency actions are final if two independent conditions are met: (1) the action "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature;" and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). "An order must satisfy both prongs of the *Bennett* test to be considered final." *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016). In his Opposition, Plaintiff affirmatively argues that he has not satisfied this test. *See* Opp. 6 (resisting the applicability of Section 46110 on the ground that "the challenged order must possess the

quintessential feature of agency decisionmaking suitable for judicial review: finality"); *cf. Magassa v. Wolf*, 545 F. Supp. 3d 898, 911 (W.D. Wash. 2021), *appeal filed*, Civ. A. No. 21-35700 (9th Cir. 2021) (noting that "courts apply nearly identical tests when analyzing finality under Section 46110 compared to the APA," and collecting cases).

For the reasons explained in detail above, the fact that Plaintiff's DHS TRIP process is ongoing (and thus, presently lacks a final order) does not alter the fact that Section 46110 deprives this Court of jurisdiction to hear his claims: in short, Plaintiff cannot evade the requirements of Section 46110 by failing to complete the very procedures he purports to challenge and thus avoiding a final agency decision from TSA. *See supra* § I.A. However, in the context of Plaintiff's APA claim before this Court—which is concededly coextensive with his procedural due process challenge to the adequacy of the DHS TRIP redress procedures—the lack of finality is, straightforwardly, fatal. *Jicarilla Apache Nation*, 648 F. Supp. 2d at 145; *see Magassa*, 545 F. Supp. 3d at 911 ("To the extent Plaintiff's APA claims survive the Section 46110 jurisdictional bar, this Court lacks jurisdiction for lack of finality."); *cf. Americopters, LLC v. FAA*, 441 F.3d 726, 735 (9th Cir. 2006) (noting that just "because finality is a predicate" to original appellate jurisdiction under Section 46110, it does not follow that "its absence necessarily must confer jurisdiction upon the district court").

Third and finally, Plaintiff cannot invoke the APA here because there is an adequate, alternative remedy for No Fly List challenges: Section 46110. The APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see also* 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court are subject to judicial review" under the APA). This well-established exception to the general presumption of the availability of APA review "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). Thus, "'[w]hen Congress has dealt in particularity with a

claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id.* at 216 (quoting, *inter alia*, *Block v. North Dakota ex rel. Board of Univ. and Sch. Lands,* 461 U.S. 273, 286, n. 22 (1983)); *see also id.* ("[A] plaintiff cannot use the APA to end-run [another statute's] limitations."); *Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988) (explaining that "where the Congress has provided special and adequate review procedures," the APA is not available).

Plaintiff argues that this principle cannot apply here, because direct appellate review under Section 46110 would be pursuant to a deferential "substantial evidence" standard. Opp. 34. But, in the first place, district court review under the APA is equally deferential—and also (in a manner functionally equivalent to appellate court review of district court decisions) limited to the administrative record created by the agency. *See, e.g., Butte Cty., Cal. v. Hogen,* 613 F.3d 190, 194 (D.C. Cir. 2010) (explaining that APA review of agency factual findings is pursuant to the "arbitrary and capricious" standard, but that as a matter of "application to the requirement of factual support," this standard and "the substantial evidence test" "are one and the same." (internal citations omitted); *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (APA review is on "the administrative record already in existence, not some new record made initially in the reviewing court"); *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law.").

Second, and more fundamentally, any differences in the review Plaintiff would obtain in this Court or an appellate court under Section 46110 are not preclusive, where the purpose of the "adequate alternative remedies" rule is to "prevent[] plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians,* 567 U.S. at 215. The alternative remedy need not be identical, only "of the same genre." *Garcia v. Vilsack,* 563 F.3d 519, 522 (D.C. Cir. 2009). For all of the reasons set

forth *supra, see* § I.A, Section 46110 is both the required—and a fully adequate, alternative—remedy to the APA claims that Plaintiff presents here.

### III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS MATTER PENDING RESOLUTION OF THE DHS TRIP PROCESS.

Defendants believe that dismissal is appropriate for all the reasons previously stated, but in the alternative, the Court should stay this action pending resolution of the DHS TRIP process. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether to grant a stay is committed to "the sound discretion" of the district court, *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007), but it is well-established that the "power to issue a stay may be appropriately exercised where a separate proceeding bearing upon the case is pending." *Hulley Enters. Ltd. v. Russian Fed'n.*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64) (9th Cir. 1979). Rather, a court may properly stay a judicial proceeding when awaiting the resolution of an overlapping but separate proceeding would serve the interest of judicial economy by resolving or clarifying the issues presented for judicial review. *See, e.g., Heartwood v. U.S. EPA*, Civ. A. No. 05-535(RBW), 2006 WL 8449556, at *1 (D.D.C. Mar. 22, 2006).

Plaintiff primarily resists the entry of a stay on the ground that "Defendants have offered no information … as to when a final decision from the TSA Administrator may issue," and a related argument that "[a]t this point, it is undeniable that Mr. Moharam has a strong interest in the prompt adjudication of his claims." Opp. 17-18. Initially, these arguments conveniently omit the fact that the DHS TRIP process has reached "this point"—which is to say, taken the amount of time that it has—because Plaintiff himself sought, and obtained, a number of lengthy

extensions cumulatively amounting to *more than twenty months* to respond to the February 20, 2020 DHS TRIP letter that, *inter alia*, provided him with the unclassified summary of the reasons supporting his No Fly List placement. *See* MTD 10-11 (summarizing this portion of the administrative proceedings). More specifically, notwithstanding that the February 20, 2020 DHS TRIP letter afforded Plaintiff 60 days (*i.e.*, until April 20, 2020) to respond, Plaintiff did not fully do so until January 7, 2022—a mere six business days before Defendants' response to this action was due. DEX 2, Ex. F

Given that timing, it is unsurprisingly true that when Defendants filed their opening memorandum, they were unable to provide any estimate of when the DHS TRIP process would culminate with a final order from TSA. However, the undersigned counsel can now report that the interagency consultations are ongoing, and that TSA currently anticipates that it will make a final decision within 90 days of this filing. Given the complexity of the relevant processes, the weight of the issues at stake, and Plaintiff's own affirmative role in delaying the date on which he will receive a final resolution of his DHS TRIP complaint, this additional amount of time is reasonable, and will not meaningfully delay the instant proceedings. Conversely, given the substantial impact that the TSA final order is likely to have on the resolution of the legal issues presented by this case, Defendants respectfully submit that the requested stay will considerably advance the interest of judicial economy, and appropriately conserve the resources of the parties and the Court alike.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action, with prejudice. Alternatively, the Court should stay this action pending conclusion of the ongoing DHS TRIP redress process—or, at minimum, until 90 days from the date of this filing, when TSA presently anticipates this process will conclude.

Dated: March 29, 2022

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 2760
Phone: 919-856-4013
Email: amy.powell@usdoj.gov